—1—

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                        WACO DIVISION

 3   ECOFACTOR, INC.           *
                               *         March 22, 2022
 4   VS.                       *
                               * CIVIL ACTION NO. W-21-CV-428
 5   ECOBEE, INC.              *

 6          BEFORE THE HONORABLE ALAN D ALBRIGHT
                MARKMAN HEARING (via Zoom)
 7
     APPEARANCES:
 8
     For the Plaintiff:   James N. Pickens, Esq.
 9                        Kristopher R. Davis, Esq.
                          Russ August & Kabat
10                        12424 Wilshire Blvd., 12th Floor
                          Los Angeles, CA 90025
11
     For the Defendant:   Daniel A. Apgar, Esq.
12                        Venable LLP
                          1290 Avenue Of The Americas
13                        New York, NY 10104

14                        Steven M. Lubezny, Esq.
                          Timothy J. Carroll, Esq.
15                        Venable LLP
                          227 W. Monroe St., Suite 1900
16                        Chicago, IL 60606

17                        Manny J. Caixeiro, Esq.
                          Venable LLP
18                        2049 Century Park East, Suite 2300
                          Los Angeles, CA 90067
19
     Court Reporter:      Kristie M. Davis, CRR, RMR
20                        PO Box 20994
                          Waco, Texas 76702-0994
21                        (254) 340-6114

22      Proceedings recorded by mechanical stenography,

23   transcript produced by computer-aided transcription.

24

25
```

10:31

2

| 10:31 | 1 | (March 22, 2022, 10:31 a.m.) |

10:31  2          DEPUTY CLERK:  Markman hearing in Civil

10:32  3  Action W-21-CV-428, styled EcoFactor Incorporated

10:32  4  versus ecobee Incorporated.

10:32  5          THE COURT:  If I could have announcements

10:32  6  from counsel, starting with plaintiff, please.

10:32  7          MR. DAVIS:  Good morning, Your Honor.

10:32  8  This is Kris Davis from Russ, August & Kabat on behalf

10:32  9  of plaintiff EcoFactor.  With me are my colleagues

10:32  10 James Pickens and Jason Wietholter.  Mr. Pickens and I

10:32  11 will be arguing the terms today.

10:32  12         THE COURT:  I look forward to it.

10:32  13         And for defendants?

10:32  14         MR. LUBEZNY:  Good morning, Your Honor.

10:32  15 This is Steve Lubezny from Venable on behalf of ecobee.

10:32  16 Joining me on the line is my partners, Manny Caixeiro

10:32  17 and Tim Carroll.  We also have in-house counsel for

10:32  18 ecobee Everitt Long on the line.

10:32  19         I'd also like to introduce the Court to

10:32  20 Daniel Apgar, one of our fantastic associates at

10:32  21 Venable.  He'll be arguing one of the terms today,

10:32  22 specifically the "evaluating limitations."

10:33  23         THE COURT:  Well, I very much look

10:33  24 forward to that.

10:33  25         Mr. Lubezny, I don't remember having you

| | | |
|---|---|---|
| 10:33 | 1 | in my court.  Have you argued before? |
| 10:33 | 2 | MR. LUBEZNY:  I believe I have, Your |
| 10:33 | 3 | Honor.  Probably two or three times over the last |
| 10:33 | 4 | couple of years in a number of different cases. |
| 10:33 | 5 | THE COURT:  Okay.  Well, welcome back. |
| 10:33 | 6 | And we'll take up the first claim term |
| 10:33 | 7 | which is "evaluate one or more parameters" and go from |
| 10:33 | 8 | there.  I'll hear -- who'll be arguing on behalf of |
| 10:33 | 9 | defendant? |
| 10:33 | 10 | MR. LUBEZNY:  So, Your Honor, that, as I |
| 10:33 | 11 | mentioned, will be Mr. Apgar arguing that for ecobee. |
| 10:33 | 12 | THE COURT:  Very good.  I look forward to |
| 10:33 | 13 | it. |
| 10:33 | 14 | MR. APGAR:  Great.  And before I begin, I |
| 10:33 | 15 | just want to make sure, can you all see the slide show? |
| 10:33 | 16 | THE COURT:  I can, yes. |
| 10:33 | 17 | MR. APGAR:  Okay, great.  Thank you. |
| 10:33 | 18 | And so, Your Honor, as you mentioned, the |
| 10:33 | 19 | first term that we'll be addressing today are the |
| 10:33 | 20 | evaluating terms which appear in Claims 1 and 9 of the |
| 10:34 | 21 | '100 patent.  And specifically those terms are |
| 10:34 | 22 | "evaluate one or more parameters" and then also |
| 10:34 | 23 | "evaluating one or more parameters relating to the |
| 10:34 | 24 | operation of the said ventilation system." |
| 10:34 | 25 | And respectfully, Your Honor, we believe |

—4—

| | | |
|---|---|---|
| 10:34 | 1 | that the evaluating terms are indefinite for failing to |
| 10:34 | 2 | inform a person of ordinary skill in the art as to the |
| 10:34 | 3 | scope of the claimed invention with reasonable |
| 10:34 | 4 | certainty. |
| 10:34 | 5 | And what we believe is that the |
| 10:34 | 6 | indefiniteness of the evaluating terms can actually |
| 10:34 | 7 | clearly be seen upon review of an argument that |
| 10:34 | 8 | EcoFactor advanced in its surreply brief, where |
| 10:34 | 9 | EcoFactor argued that, "Critically, a POSITA would |
| 10:34 | 10 | understand the claimed evaluation's inputs, output and |
| 10:34 | 11 | purpose."  However, in making this argument, what |
| 10:34 | 12 | EcoFactor has done is actually highlighted the |
| 10:35 | 13 | indefiniteness of the term by incorrectly identifying |
| 10:35 | 14 | the alleged output of the evaluating step of the |
| 10:35 | 15 | asserted claims by pointing to an entirely separate |
| 10:35 | 16 | limitation of the claim which is the determination |
| 10:35 | 17 | step. |
| 10:35 | 18 | So as you can see upon review of the text |
| 10:35 | 19 | which is highlighted in red in the slides, what |
| 10:35 | 20 | EcoFactor has advanced as the identification of the |
| 10:35 | 21 | output of the evaluating step is "the determination of |
| 10:35 | 22 | whether to adopt the first interval or the second |
| 10:35 | 23 | longer interval prior to allowing the ventilation |
| 10:35 | 24 | system to turn back on." |
| 10:35 | 25 | And in advancing this argument, what |

| 10:35 | 1 | EcoFactor has done is improperly conflated the |
| 10:35 | 2 | evaluating limitation with the separate determining |
| 10:35 | 3 | limitation, which, if anything, only serves to kind of |
| 10:36 | 4 | highlight the indefiniteness of the evaluating step. |
| 10:36 | 5 | For example, looking at Slide 4 of the |
| 10:36 | 6 | slide deck, if you were to review the claim language, |
| 10:36 | 7 | what is clear is that the evaluating and the |
| 10:36 | 8 | determining are two separate limitations required by |
| 10:36 | 9 | the claim.  And as can be seen, the evaluating |
| 10:36 | 10 | limitation requires simply the evaluation of "one or |
| 10:36 | 11 | more parameters including at least the outside |
| 10:36 | 12 | temperature measurements and the predicted rate of |
| 10:36 | 13 | change." |
| 10:36 | 14 | On the other hand, there's the |
| 10:36 | 15 | determining limitation which is determining "whether to |
| 10:36 | 16 | adopt the first or second interval based on the values |
| 10:36 | 17 | of the parameters."  And what's noticeable here is that |
| 10:36 | 18 | the determining step of the claim is not even tied to |
| 10:36 | 19 | the outcome of the evaluation. |
| 10:37 | 20 | For example, the claim does not say |
| 10:37 | 21 | determining whether to adopt the first or second |
| 10:37 | 22 | interval based upon the evaluation or the outcome of |
| 10:37 | 23 | the evaluation.  What the claim is requiring is just |
| 10:37 | 24 | simply that the determining be based on the values of |
| 10:37 | 25 | parameters themselves. |

10:37  1          So what we know from this, upon reviewing

10:37  2   the claim language, is that evaluating is something

10:37  3   different from determining.  We know that the

10:37  4   determination of which interval to adopt is not the

10:37  5   output of the evaluating step, as EcoFactor has

10:37  6   claimed.

10:37  7          But importantly what we don't know is

10:37  8   anything about the evaluation step, what it's referring

10:37  9   to, how it bounds the asserted claims, how it relates

10:37 10   or differs or the relationship between the evaluating

10:37 11   step and the determining step.  And given that -- given

10:38 12   that there's just -- a person of ordinary skill in the

10:38 13   art would not understand the scope of the evaluating

10:38 14   claim term looking at the claim language.

10:38 15          And as seen on Slide 5, this is the

10:38 16   entire text of Claims 1 and 9.  And what can be seen

10:38 17   here is given the knowledge that the evaluating step

10:38 18   and the determining step are different requirements in

10:38 19   the claim, there's just no claim language that would

10:38 20   provide any insight or guidance to a person of ordinary

10:38 21   skill in the art regarding what the evaluating step

10:38 22   requires.

10:38 23          In Claim 1 all that's said is simply that

10:38 24   there is -- "evaluate one or more parameters" with no

10:38 25   guidance regarding what that evaluation entails.

| | | |
|---|---|---|
| 10:38 | 1 | With Claim 9 there is some additional |
| 10:38 | 2 | language regarding evaluating, but it is an entirely |
| 10:39 | 3 | circular definition that simply says "wherein |
| 10:39 | 4 | evaluating...comprises evaluating."  So that disclosure |
| 10:39 | 5 | neither describes any type of evaluation to be |
| 10:39 | 6 | performed, how to perform it, how the evaluation |
| 10:39 | 7 | differs from the determination.  And therefore a person |
| 10:39 | 8 | of ordinary skill in the art would not understand what |
| 10:39 | 9 | the evaluating step requires just looking at the claim |
| 10:39 | 10 | language. |
| 10:39 | 11 | If the person of ordinary skill in the |
| 10:39 | 12 | art were to look at the specification to try and |
| 10:39 | 13 | clarify the uncertainty, there's nothing in the |
| 10:39 | 14 | specification that would provide any further insight |
| 10:39 | 15 | regarding what "evaluating" means. |
| 10:39 | 16 | If you were to look at Figure 7 of the |
| 10:39 | 17 | '100 patent and its accompanying disclosures, what is |
| 10:39 | 18 | shown there is a flowchart that illustrates the steps |
| 10:40 | 19 | required to initiate a compressor delay adjustment |
| 10:40 | 20 | event.  And what the patent is disclosing is that there |
| 10:40 | 21 | are some initial steps which are not shown on this |
| 10:40 | 22 | slide, and those initial steps are just relating to -- |
| 10:40 | 23 | initial determination of whether a home is even |
| 10:40 | 24 | eligible to participate in a compressor delay event in |
| 10:40 | 25 | the first instance. |

```
10:40   1              So the initial steps shown here are not
10:40   2   related to the actual selection of the delay interval.
10:40   3   It's just a determination of eligibility.
10:40   4              After a home is determined to be eligible
10:40   5   to participate in an event, then there are the steps
10:40   6   which are shown on Slide 6 which are relevant to the
10:40   7   selection of the delay interval.
10:40   8              And what the specification discloses is
10:40   9   that, first, there's a Step 1108 which is simply a --
10:40  10   where the server retrieves the parameters needed to
10:41  11   specify the compressor delay routine.  So this is just
10:41  12   a simple retrieval of parameters, and there's no
10:41  13   disclosure in connection with Step 1108 regarding any
10:41  14   evaluation of those parameters.
10:41  15              And notably, what the patent is saying
10:41  16   regarding Step 1108 is that the parameters that are
10:41  17   retrieved, that list of parameters does not even
10:41  18   include the predictive rate of change which is listed
10:41  19   as one of the parameters to be evaluated.  So there's
10:41  20   no connection between Step 1108 and any evaluation of
10:41  21   parameters.
10:41  22              Immediately after Step 1108 there is a
10:41  23   Step 1110 which is a determination of the appropriate
10:41  24   compressor delay settings.  And what is entirely
10:41  25   missing from this disclosure regarding Step 1110 and
```

| | | |
|---|---|---|
| 10:41 | 1 | 1108 is any discussion of an evaluation step, what that |
| 10:42 | 2 | evaluation might entail and how it might differ from |
| 10:42 | 3 | the determination step. |
| 10:42 | 4 | So looking at Figure 7 and its |
| 10:42 | 5 | accompanying disclosures, a person of ordinary skill in |
| 10:42 | 6 | the art would not understand what the claimed |
| 10:42 | 7 | evaluating step of the asserted claims requires. |
| 10:42 | 8 | Now, what EcoFactor, in addition to |
| 10:42 | 9 | Figure 7 -- EcoFactor also relies upon disclosures in |
| 10:42 | 10 | the specification related to Figures 8A through 8C of |
| 10:42 | 11 | the patent to claim that a person of ordinary skill in |
| 10:42 | 12 | the art would understand what the evaluating step |
| 10:42 | 13 | requires. |
| 10:42 | 14 | And what EcoFactor is saying is that a |
| 10:42 | 15 | person of ordinary skill in the art would understand |
| 10:42 | 16 | that there's a relationship between outside temperature |
| 10:42 | 17 | and predicted rate of change inside the house.  That |
| 10:42 | 18 | can be used for the purposes of selecting a delay |
| 10:42 | 19 | interval. |
| 10:42 | 20 | But what EcoFactor's argument fails to |
| 10:43 | 21 | recognize is that Figures 8A through C is showing the |
| 10:43 | 22 | impact that a chosen compressor delay interval has on |
| 10:43 | 23 | HVAC cycling temperature and inside temperature after |
| 10:43 | 24 | that delay interval has already been chosen.  Figures |
| 10:43 | 25 | 8A through 8C are not related to any kind of analysis, |

| | | |
|---|---|---|
| 10:43 | 1 | evaluation, determination, anything prior to the |
| 10:43 | 2 | selection of the delay interval.  These disclosures are |
| 10:43 | 3 | just showing what happens after the delay interval has |
| 10:43 | 4 | already been chosen. |
| 10:43 | 5 | And then secondly, even if there were |
| 10:43 | 6 | some kind of backwards teachings that could be |
| 10:43 | 7 | understood from Figures 8A through 8C, that would not |
| 10:43 | 8 | help a person of ordinary skill in the art understand |
| 10:43 | 9 | the bounds of the claim term evaluation -- the |
| 10:44 | 10 | "evaluating" term, because a person of ordinary skill |
| 10:44 | 11 | in the art wouldn't know if the teachings in Figures 8A |
| 10:44 | 12 | through 8C were related to the evaluating limitation, |
| 10:44 | 13 | the determining limitation, some combination of |
| 10:44 | 14 | evaluating and determining, where certain disclosures |
| 10:44 | 15 | would fit with respect to evaluating or where other |
| 10:44 | 16 | disclosures would fit with respect to determining.  And |
| 10:44 | 17 | accordingly there's just simply no disclosures that |
| 10:44 | 18 | provide any guidance regarding the objective boundaries |
| 10:44 | 19 | of the claims. |
| 10:44 | 20 | So contrary to what EcoFactor is saying, |
| 10:44 | 21 | it's not simply that the "evaluating" term could |
| 10:44 | 22 | potentially be broad, and that there could potentially |
| 10:44 | 23 | be many ways that parameters could be evaluated. |
| 10:44 | 24 | The crux of the argument here is that a |
| 10:45 | 25 | person of ordinary skill in the art just simply would |

| | | |
|---|---|---|
| 10:45 | 1 | not understand what it means to evaluate the parameters |
| 10:45 | 2 | as required by the claim, especially in light of the |
| 10:45 | 3 | fact that there's just no disclosure that teaches a |
| 10:45 | 4 | person of ordinary skill in the art how the evaluation |
| 10:45 | 5 | is different than the determination. |
| 10:45 | 6 | And for at least these reasons, we |
| 10:45 | 7 | believe that the "evaluating" terms are indefinite. |
| 10:45 | 8 | THE COURT:  Thank you.  If y'all will |
| 10:45 | 9 | give me just a second. |
| 10:45 | 10 | (Pause in proceedings.) |
| 10:46 | 11 | THE COURT:  If I could hear a response, |
| 10:46 | 12 | please. |
| 10:46 | 13 | MR. DAVIS:  Thank you, Your Honor.  I |
| 10:46 | 14 | have a few slides as well that I can share. |
| 10:46 | 15 | All right.  Your Honor, just very |
| 10:46 | 16 | briefly, we included a couple of slides up front just |
| 10:46 | 17 | pointing out a couple of legal principles that we think |
| 10:46 | 18 | are relevant, as you know, from our briefing, including |
| 10:46 | 19 | the conflation of definiteness with other 112 |
| 10:46 | 20 | requirements.  And the point that simply having a broad |
| 10:46 | 21 | claim or a claim that, you know, covers multiple |
| 10:46 | 22 | methods, breadth does not mean indefiniteness.  So that |
| 10:46 | 23 | is a separate question. |
| 10:46 | 24 | Now, focusing a little bit more on what |
| 10:46 | 25 | we just heard, I think what I heard Mr. Apgar say is |

10:47  1    that, you know, we're conflating two separate

10:47  2    requirements of the claims.  And I assure you, Your

10:47  3    Honor, that is not what we're doing.  The terms are

10:47  4    related, of course.  I think that much is clear from

10:47  5    the claims.

10:47  6              And what the evaluation step does is it

10:47  7    narrows the claim by requiring the two parameters that

10:47  8    are to be considered together.  And so, you know, why

10:47  9    are those parameters considered together?  Well, it's

10:47  10   because those parameters, as the specification explains

10:47  11   and as a POSITA would understand, impact what amount of

10:47  12   compressor delay would be appropriate for the

10:47  13   circumstances.

10:47  14             For example, if it's extremely hot

10:47  15   outside, that may impact what an appropriate compressor

10:47  16   delay is versus if it is just a mild temperature

10:48  17   outside.  And so, you know, the relationship -- there's

10:48  18   a relationship between the evaluation and the

10:48  19   determination of the specific delay interval that

10:48  20   you're going to use.  The ultimate output that the

10:48  21   claim is generating is what specific delay interval

10:48  22   should we adopt?  And the claimed evaluation is

10:48  23   obviously part of creating that output.

10:48  24             So I think hopefully that clarifies the

10:48  25   issue of, you know, why we said in our briefing that

```
10:48   1    the output is the determination of what the delay
10:48   2    interval is.
10:48   3              And so I think if we look at the
10:48   4    intrinsic evidence, you know, of course we start with
10:48   5    the claim, and that provides reasonable certainty right
10:48   6    there.  But if we go even further into the
10:48   7    specification, you know, we see additional disclosure
10:48   8    making clear what the scope of the claim is.
10:49   9              And so, you know, we have on Slide 6,
10:49   10   similar to the excerpts from Mr. Apgar, a portion of
10:49   11   Figure 7 and the associated description where we're
10:49   12   illustrating, you know, what are the parameters that
10:49   13   are considered?  And the claim -- the claim makes clear
10:49   14   specifically which two need to be considered to fall
10:49   15   within the scope of the claim.  The specification
10:49   16   describes how other parameters may be considered as
10:49   17   well, but the claim narrows the scope of that to just
10:49   18   two specific parameters:  Outside temperature and rate
10:49   19   of change.
10:49   20             We go on to Figures 8A, 8B and 8C, and
10:49   21   what we see in those figures and the associated
10:49   22   description, much like Mr. Apgar said, we see what the
10:49   23   impact is.  This is how the compressor delay is
10:50   24   affected by outside temperature and rate of change.
10:50   25   And so this sort of helps illustrate that those are the
```

| | | |
|---|---|---|
| 10:50 | 1 | related parameters that need to be considered by the |
| 10:50 | 2 | claimed invention in order to ultimately determine what |
| 10:50 | 3 | the appropriate delay interval is. |
| 10:50 | 4 | And so, you know, we have just sort of a |
| 10:50 | 5 | few concluding points on Slide 8, emphasizing that if |
| 10:50 | 6 | you know the outside temperature and the predicted rate |
| 10:50 | 7 | of change, then that allows you to predict the inside |
| 10:50 | 8 | temperature for different circumstances.  Using that |
| 10:50 | 9 | information, you can choose an appropriate delay for |
| 10:50 | 10 | given circumstances, for example, for a given outside |
| 10:50 | 11 | temperature.  You can figure out what would be the |
| 10:50 | 12 | appropriate delay interval in that situation. |
| 10:50 | 13 | And a POSITA would appreciate that the |
| 10:51 | 14 | outside temperature and the rate of change have an |
| 10:51 | 15 | impact on what that delay should be.  And so that's why |
| 10:51 | 16 | the claimed invention in the evaluation step narrows |
| 10:51 | 17 | that inquiry to those parameters. |
| 10:51 | 18 | And so I think that resolves the -- |
| 10:51 | 19 | THE COURT:  I think -- I think I've got |
| 10:51 | 20 | it. |
| 10:51 | 21 | MR. DAVIS:  -- issue and makes clear -- |
| 10:51 | 22 | I'm sorry.  Go ahead, Your Honor. |
| 10:51 | 23 | THE COURT:  I'll hear a rebuttal from |
| 10:51 | 24 | defendant. |
| 10:51 | 25 | MR. APGAR:  Yes, Your Honor. |

| | | |
|---|---|---|
| 10:51 | 1 | And, Kris, if you could stop the share so |
| 10:51 | 2 | I can just pull up the claim language again.  Thank |
| 10:51 | 3 | you. |
| 10:51 | 4 | Your Honor, what Mr. Davis was presenting |
| 10:51 | 5 | in his argument was that the evaluation step is part of |
| 10:52 | 6 | the determination step that results to an in and output |
| 10:52 | 7 | of a selection of a delay interval.  And, you know, |
| 10:52 | 8 | what Mr. Davis was arguing is that there are at least |
| 10:52 | 9 | two parameters, the predicted rate of change and the |
| 10:52 | 10 | outside temperature measurements, which are involved in |
| 10:52 | 11 | this selection of the appropriate delay interval. |
| 10:52 | 12 | And what is just entirely unclear from |
| 10:52 | 13 | looking at the claim language is, one, respectfully -- |
| 10:52 | 14 | with respect to Mr. Davis' argument, whether or not the |
| 10:52 | 15 | evaluating step is even related to the determining |
| 10:52 | 16 | step.  There's -- looking at this claim language, it |
| 10:52 | 17 | simply says "evaluating one or more parameters" and |
| 10:52 | 18 | then it says "determining the interval based upon the |
| 10:53 | 19 | values of the parameters." |
| 10:53 | 20 | So it's entirely unclear where any |
| 10:53 | 21 | evaluation of the parameters may end, where any |
| 10:53 | 22 | determination may pick up.  The relationship, to the |
| 10:53 | 23 | extent there even is one between evaluating and |
| 10:53 | 24 | determining, is completely unclear and does not provide |
| 10:53 | 25 | any objective bounds as to what the claim requires. |

10:53  1   And that's really the key here.

10:53  2              And secondly, with respect to Mr. Davis'

10:53  3   introductory arguments and highlighting that what this

10:53  4   claim also might have is a written description and

10:53  5   enablement problem, we are -- we are in agreement that

10:53  6   this claim has -- and may have a written description

10:53  7   and an enablement problem as well as an indefiniteness

10:54  8   problem.

10:54  9              Just because the claim may be -- may fail

10:54  10  to satisfy the requirements of written description of

10:54  11  enablement does not mean that it is definite.

10:54  12             And for the reasons shown on the -- this

10:54  13  slide and in my earlier arguments, we just believe that

10:54  14  a person of ordinary skill in the art would not

10:54  15  understand the bounds of the claims, specifically given

10:54  16  the entirely unclear relationship between the

10:54  17  evaluating limitations and the determination

10:54  18  limitations.

10:54  19             THE COURT:  Thank you.  I'll be back in a

10:54  20  few seconds.

10:54  21             (Pause in proceedings.)

10:55  22             THE COURT:  The Court is going to

10:55  23  maintain its preliminary construction.

10:55  24             And we'll move to the second claim term,

10:55  25  "predict changes in temperatures."

—17—

| | | |
|---|---|---|
| 10:55 | 1 | And I'll start with plaintiff's counsel |
| 10:55 | 2 | on this one. |
| 10:55 | 3 | MR. PICKENS:  Thank you, Your Honor. |
| 10:55 | 4 | This is James Pickens with EcoFactor.  If I have a |
| 10:55 | 5 | moment, I'll share my slides.  And hopefully everyone |
| 10:55 | 6 | can see that okay. |
| 10:55 | 7 | So, Your Honor, we appreciated your |
| 10:55 | 8 | tentative construction.  And we wanted to begin by |
| 10:56 | 9 | offering a new compromise proposal that we hope would |
| 10:56 | 10 | address one of the two possible issues with the term |
| 10:56 | 11 | that the Court's concerned about. |
| 10:56 | 12 | So EcoFactor's modified proposal is that |
| 10:56 | 13 | we would clarify that in Claim Element 1D the predicted |
| 10:56 | 14 | rate of change is referring to the predicted rate of |
| 10:56 | 15 | change in temperatures inside the structure. |
| 10:56 | 16 | And what we -- what we're hoping to do |
| 10:56 | 17 | through this modification is to address one of the two |
| 10:56 | 18 | concerns that the Court may have, which is that the |
| 10:56 | 19 | jury might be confused about what the predicted rate of |
| 10:56 | 20 | change -- which units is that referring to?  And this |
| 10:56 | 21 | modification clarifies that, you know, consistent with |
| 10:56 | 22 | the understanding of an ordinary artisan, that we're |
| 10:56 | 23 | talking about calculating a schedule of indoor |
| 10:57 | 24 | temperature setpoints based on the predicted rate of |
| 10:57 | 25 | change and how the temperature inside the structure |

```
10:57   1    will change.
10:57   2                    I'm going to move past -- you know, we
10:57   3    have an introductory point here about -- that the
10:57   4    intrinsic evidence is important to look at even when
10:57   5    there's no explicit antecedent basis.
10:57   6                    But I wanted to just sort of pause here
10:57   7    just to sort of give the Court an opportunity if it has
10:57   8    any comments on our modification -- on our modified
10:57   9    proposal, because I know that the Court didn't have a
10:57  10    chance to consider this during the briefing.
10:57  11                    If the Court thinks this resolves some of
10:57  12    the concerns, you know, that was our goal here.  And if
10:57  13    not, I can move on to address the other concerns that
10:57  14    the Court may have.
10:57  15                    THE COURT:  Let me just ask opposing
10:57  16    counsel.  Would it make more sense now for you to
10:57  17    respond to this?  Or would you prefer to take it all up
10:57  18    at once and just -- and have me have Mr. Pickens finish
10:58  19    and then we can take up defense argument?  I'll do it
10:58  20    either way.  Whichever defense counsel prefer to do.
10:58  21                    MR. LUBEZNY:  Your Honor, given the
10:58  22    slides that I've seen, I believe Mr. Pickens' arguments
10:58  23    in the later slides seem to relate to this point too.
10:58  24    Seems to make more sense for me to take everything up
10:58  25    together.
```

| 10:58 | 1 | But, you know, I will note we certainly |
| 10:58 | 2 | don't believe that this clarification resolves the |
| 10:58 | 3 | definiteness issue in any way. |
| 10:58 | 4 | THE COURT:  Well, you know, I didn't ask |
| 10:58 | 5 | you if you thought it did. |
| 10:58 | 6 | (Laughter.) |
| 10:58 | 7 | THE COURT:  I really did anticipate you |
| 10:58 | 8 | saying that it did.  I just figured which was easier |
| 10:58 | 9 | for you to respond to.  So let's go back and have |
| 10:58 | 10 | plaintiff argue -- make their entire argument and then |
| 10:58 | 11 | I'll hear from counsel for defendant. |
| 10:58 | 12 | MR. PICKENS:  Thank you, Your Honor. |
| 10:58 | 13 | So the first part of, you know -- is |
| 10:58 | 14 | really just illustrating that when we get to Claim 9, |
| 10:59 | 15 | Element D and it says "based on the predicted rate of |
| 10:59 | 16 | change," an ordinary artisan is going to see that and |
| 10:59 | 17 | understand that we're talking about a predicted rate of |
| 10:59 | 18 | change in inside temperatures specifically.  Because |
| 10:59 | 19 | that's what we want to predict so that we can calculate |
| 10:59 | 20 | an optimal schedule thermostat setpoints for the |
| 10:59 | 21 | occupants. |
| 10:59 | 22 | Now, the other issue that I think |
| 10:59 | 23 | Mr. Lubezny is going to address as well when he begins, |
| 10:59 | 24 | and what may be really the crux of the problem from the |
| 10:59 | 25 | Court's perspective is, is there antecedent basis for |

| | | |
|---|---|---|
| 10:59 | 1 | Claim 9D, the predicted rate of change?  And we believe |
| 10:59 | 2 | that there is antecedent basis in 9C, and it's the -- |
| 10:59 | 3 | where it says "using the stored data to predict changes |
| 10:59 | 4 | in temperatures."  When it says "the predicted rate of |
| 11:00 | 5 | change," that's referring back to the "predict changes |
| 11:00 | 6 | in temperatures." |
| 11:00 | 7 | Now, the concern that ecobee has raised |
| 11:00 | 8 | is that there are different units between 9C and 9D. |
| 11:00 | 9 | The concern ecobee's saying is that, well, 9C says |
| 11:00 | 10 | we're predicting changes in temperatures.  9D says it's |
| 11:00 | 11 | the predicted rate of change.  And those are different |
| 11:00 | 12 | things. |
| 11:00 | 13 | The problem is that they're actually not. |
| 11:00 | 14 | They're actually the exact same units.  So this is not |
| 11:00 | 15 | a case where claim 9C is talking about units that are |
| 11:00 | 16 | different from 9D. |
| 11:00 | 17 | And I can show you that, Your Honor, with |
| 11:00 | 18 | a couple of these slides.  So on Slide 13 we're looking |
| 11:00 | 19 | at the '597 patent at Column 5, Lines 5 through 16. |
| 11:00 | 20 | And this is about Figure 6A.  And this is a preferred |
| 11:00 | 21 | embodiment of Element 9C. |
| 11:00 | 22 | And what it says is that you can predict |
| 11:00 | 23 | a temperature increase inside the house of 4 degrees, |
| 11:01 | 24 | from 72 to 76 degrees, despite the increase in outside |
| 11:01 | 25 | temperature from 80 to 100.  So what that's showing us |

11:01 1   is this is our "predict changes in temperature."  Here

11:01 2   the change is 4 degrees in response to the change in

11:01 3   outside temperature from 80 to 100.

11:01 4            Now, on the next slide I've illustrated

11:01 5   this with respect to Figure 6A.  And what an ordinary

11:01 6   artisan understands is that when the claim says

11:01 7   "predict changes in temperatures," there are units that

11:01 8   are being claimed.  And the units are that we're

11:01 9   predicting a 4-degree change in temperatures, from 72

11:01 10  to 76, but we're predicting that over a time interval.

11:01 11  It has to be divided by time because it's a predicted

11:01 12  change from one temperature to another.

11:01 13           And this is shown in Figure 6.  So in

11:01 14  Figure 6A what we see is that when the outside

11:01 15  temperature's 80, the inside temperature's 72.  When

11:02 16  the outside temperature goes up to 100 -- this has

11:02 17  actually taken a full day of 15 hours -- the inside

11:02 18  temperature's only risen to 76.

11:02 19           So what an ordinary artisan sees when the

11:02 20  claim says "predict changes in temperatures" is they

11:02 21  see a 4-degree predicted change over a 15-hour

11:02 22  timespan.

11:02 23           On the next slide I'm showing, Slide 15,

11:02 24  that an ordinary artisan is going to read using the

11:02 25  stored data to predict changes in temperatures inside

11:02    1    the structure.  That has to have units and it has to be

11:02    2    4-degree changes.  And to be a change, it has to be

11:02    3    divided by that 15-hour time interval that we saw in

11:02    4    Figure 6A.

11:02    5          So then to kind of wrap up this point,

11:02    6    when we now get to looking at the claim together, 9C

11:02    7    and 9D, the units of Element 9C we're going to predict

11:03    8    4 degrees changes in temperature.  And because it's a

11:03    9    prediction, it has to be over that time interval, the

11:03   10    preferred embodiment's 15 hours.

11:03   11          Then when we get to 9D, now we're looking

11:03   12    at based on the predicted rate of change which is in

11:03   13    the same units.  It's 4 degrees divided by 15 hours.

11:03   14    And the parties agree that a rate of change is the

11:03   15    difference between inside temperature measurements

11:03   16    divided by the span of time between the measurements.

11:03   17    Just like is claimed in 9C, we've got a 4-degree

11:03   18    difference and that has to be divided by that 15-hour

11:03   19    span of time, because we're predicting for a specific

11:03   20    time interval.

11:03   21          And so finally, I -- just some concluding

11:03   22    thoughts on that point and why there really is

11:03   23    antecedent basis here.  And that's because a change in

11:03   24    inside temperature, like is claimed in 9C, has to occur

11:03   25    over time.

| | | |
|---|---|---|
| 11:03 | 1 | We're not claiming in this claim -- it |
| 11:03 | 2 | doesn't say predict, you know, a single value.  It's a |
| 11:04 | 3 | change.  And any prediction is also necessarily a |
| 11:04 | 4 | change over time.  And how much that quantity changes |
| 11:04 | 5 | over time is the rate of change.  And that's why 9D, |
| 11:04 | 6 | the predicted rate of change, has antecedent basis. |
| 11:04 | 7 | And the last point would just be that in |
| 11:04 | 8 | the specification again and again it confirms that when |
| 11:04 | 9 | we're predicting the rate of change, it's an inside |
| 11:04 | 10 | temperature rate of change.  And that was also the |
| 11:04 | 11 | other piece that we wanted to address with our modified |
| 11:04 | 12 | construction. |
| 11:04 | 13 | So with that, Your Honor, I'll pass to |
| 11:04 | 14 | Mr. Lubezny unless you have any questions. |
| 11:04 | 15 | THE COURT:  I don't. |
| 11:04 | 16 | Next? |
| 11:04 | 17 | MR. LUBEZNY:  Thank you, Your Honor.  And |
| 11:04 | 18 | Mr. Apgar, if you could pull up our slides.  In |
| 11:04 | 19 | particular let's start with Slide 9, please. |
| 11:04 | 20 | So, Your Honor, the first thing I'd like |
| 11:05 | 21 | to address, I guess, is Mr. Pickens', at least what he |
| 11:05 | 22 | referred to as kind of a new compromise position.  In |
| 11:05 | 23 | fact, you know, one thing I'll say is in general it's |
| 11:05 | 24 | really the same position that we addressed and argued |
| 11:05 | 25 | in the briefs, in that EcoFactor is trying to rewrite |

11:05   1   these claims.

11:05   2                  As you can see in Claim 9, the claims

11:05   3   have this limitation where they say "calculating

11:05   4   scheduled programming of setpoints in the thermostat or

11:05   5   controller based on the predicted rate of change."

11:05   6   And, you know, that's all it says.  And as we've

11:05   7   explained essentially in the briefing, there's no

11:05   8   antecedent basis for this.  The claims simply fail to

11:05   9   identify what the predicted rate of change is.

11:05   10                  Mr. Pickens suggests now that the Court

11:05   11   should insert the language after the claim -- after

11:05   12   this clause, saying that it's a change in the inside

11:06   13   temperature.  But that's not defining anything.  He's

11:06   14   not -- you know, he's not asking for the Court to

11:06   15   define -- he's not asking for the Court to explain what

11:06   16   the prediction is or what a rate of change is.  What

11:06   17   he's effectively asking the Court to do is rewrite

11:06   18   these claims in a way that would make them definite.

11:06   19                  And as we explained in our brief, and in

11:06   20   particular in our citation to the Chef America case,

11:06   21   the Federal Circuit has been very clear that, you know,

11:06   22   courts cannot rewrite claims to make them operable or

11:06   23   definite.

11:06   24                  And here the claim is simply -- does not

11:06   25   explain or identify what rate is to be predicted and

11:06    1    used for the calculating schedule program.  It's

11:06    2    absolutely silent on that point.

11:06    3                    So, Mr. Apgar, if you can go to the next

11:06    4    slide.

11:06    5                    So to try to get around this, Mr. Pickens

11:07    6    then, you know, suggests that the Court can look to the

11:07    7    prior limitation of predicting changes and just simply

11:07    8    find that that is an antecedent basis.  But that is --

11:07    9    there's simply no basis for that.  These are two very

11:07   10    different things.

11:07   11                    The prior limitation talks about

11:07   12    predicting changes in temperature inside the structure

11:07   13    in response to these changes in outside temperature.

11:07   14    There's no rate discussed there at all.  And there's

11:07   15    absolutely no basis for that to be the antecedent to

11:07   16    the predicted rate.

11:07   17                    And let me address the fact, you know,

11:07   18    Mr. Pickens tried to suggest that these are really the

11:07   19    same thing.  And they're not.  They're very different

11:07   20    concepts and different ideas.  Predicting a change in

11:07   21    temperature's just that.

11:07   22                    If it's in units of anything, it's in

11:07   23    units of temperature.  You can predict a change of 4

11:07   24    degrees and that satisfies that limitation.  It doesn't

11:08   25    mention anything about how fast that temperature change

| | | |
|---|---|---|
| 11:08 | 1 | happens, when it happens or any units of time at all. |
| 11:08 | 2 | That's very different from the concept of |
| 11:08 | 3 | a rate. A rate refers to how fast something is |
| 11:08 | 4 | changing. And here the claim provides no indication of |
| 11:08 | 5 | what rate is to be predicted at all or how to make that |
| 11:08 | 6 | prediction. These are two separate limitations that |
| 11:08 | 7 | are just not related in any way in these claims. |
| 11:08 | 8 | And one can see that, if we go to the |
| 11:08 | 9 | next slide, very clearly by looking at the different |
| 11:08 | 10 | claims in the same patent, the patentee understood that |
| 11:08 | 11 | these were different concepts. |
| 11:08 | 12 | For example, in Claims 1 and 9, the |
| 11:08 | 13 | patentee recited using stored data to predict changes |
| 11:08 | 14 | in temperature inside the structure. In Claim 17 the |
| 11:09 | 15 | patentee recited using the stored data to predict a |
| 11:09 | 16 | rate of change of temperatures inside the structure. |
| 11:09 | 17 | So the patentee understood that these |
| 11:09 | 18 | were different concepts. They had different claims |
| 11:09 | 19 | directed to these different concepts. |
| 11:09 | 20 | And, again, as we have here on the slide, |
| 11:09 | 21 | the SOL IP case which is another case we addressed in |
| 11:09 | 22 | our briefing, you know, antecedent basis cannot be |
| 11:09 | 23 | supported when the terms are just different terms with |
| 11:09 | 24 | different meanings. And so here there's simply no |
| 11:09 | 25 | basis for the change prediction to provide an |

11:09  1   antecedent basis for a rate of change term, especially

11:09  2   when the claim simply provides no indication of what

11:09  3   rate is to be calculated at all.

11:09  4           So with that, Your Honor, I think that

11:10  5   provides my rebuttal, unless you have any further

11:10  6   questions.

11:10  7           THE COURT:  Happy to hear a rebuttal.

11:10  8           MR. PICKENS:  Thank you, Your Honor.

11:10  9           So I apologize.  I'm just -- so I'm

11:10  10  calling up plaintiff's Slide 13 which is from the

11:10  11  intrinsic record.

11:10  12          And, you know, the first point I would

11:10  13  just make in rebuttal, Your Honor, is that an ordinary

11:10  14  artisan is going to read the claims in light of things

11:10  15  like the preferred embodiments in Figure 6.  And I

11:10  16  think they're going to understand that the word

11:10  17  "predict" and the word "changes" absolutely require a

11:11  18  time element.

11:11  19          If it's just changes in temperature, and

11:11  20  that's four degrees, it has to be a change between two

11:11  21  temperature measurements from 72 to 76.  And those two

11:11  22  measurements occur at different times, or are predicted

11:11  23  to occur over a time interval.  And so there has to

11:11  24  be -- from an ordinary artisan's perspective if I'm

11:11  25  predicting a change, it requires some time interval.

11:11  1                    The temperature always changes.  It's

11:11  2  never static.  It's never the same.  And at any given

11:11  3  time there can only be one indoor temperature.  So if

11:11  4  I'm predicting a change, I have to have two

11:11  5  temperatures that occurred at different times.

11:11  6                    And, again, even if the temperatures were

11:11  7  flat, right?  Even if the changes in temperature were

11:11  8  zero, it would still be over a time interval.  We're

11:12  9  predicting that over this time it's going to be flat,

11:12  10  right?  So even if the changes were zero, we're still

11:12  11  dividing by time.

11:12  12                    And that's why the units of the predicted

11:12  13  changes in temperature for 9C, to an ordinary artisan,

11:12  14  have to be in the unit of a rate of change.

11:12  15                    The other point that Mr. Lubezny made was

11:12  16  that -- and I'll just switch to Slide 16 here -- his

11:12  17  point was that, well, if we looked at other claims in

11:12  18  the patent, they suggest that there's a difference in

11:12  19  scope between Claim 9, for example, and Claim 17.  So

11:12  20  he said, well, in Claim 17 the patentee said we use the

11:12  21  stored data to predict the rate of change.  Whereas in

11:12  22  Claim 9 it says we use the stored data to predict

11:12  23  changes.

11:12  24                    And the reason I disagree with

11:12  25  Mr. Lubezny is that I think an ordinary artisan would

| | | |
|---|---|---|
| 11:12 | 1 | look at that and not be able to figure out what the |
| 11:12 | 2 | difference in scope is necessarily because the units |
| 11:13 | 3 | are the same, right? |
| 11:13 | 4 | If we predicted the change of 4 degrees |
| 11:13 | 5 | for a time interval, we've got our temperature change |
| 11:13 | 6 | and it's divided into that time.  And they wouldn't be |
| 11:13 | 7 | able to express it mathematically in such a way that |
| 11:13 | 8 | the scope meaningfully differs.  At least that's our |
| 11:13 | 9 | understanding of what an ordinary artisan would see in |
| 11:13 | 10 | light of the specification, where again and again every |
| 11:13 | 11 | preferred embodiment is that we're predicting rates of |
| 11:13 | 12 | change.  We're predicting rates of change. |
| 11:13 | 13 | And so the -- I just disagree with |
| 11:13 | 14 | Mr. Lubezny that an ordinary artisan would look at this |
| 11:13 | 15 | change, predict the changes and think that that's a |
| 11:13 | 16 | different claim scope, that from all the preferred |
| 11:13 | 17 | embodiments where we're always predicting the rate. |
| 11:13 | 18 | Thank you. |
| 11:13 | 19 | THE COURT:  Anything else from defense |
| 11:13 | 20 | counsel? |
| 11:13 | 21 | MR. LUBEZNY:  Yes, Your Honor. |
| 11:13 | 22 | I would add just to kind of close the |
| 11:13 | 23 | loop on that point, that we certainly very much |
| 11:14 | 24 | disagree with Mr. Pickens and his characterization of |
| 11:14 | 25 | what it means to predict change.  The very |

| | | |
|---|---|---|
| 11:14 | 1 | specification -- part of the specification he points to |
| 11:14 | 2 | talks about simply predicting a change in temperature |
| 11:14 | 3 | of 4 degrees. |
| 11:14 | 4 | There's no indication that it has to be |
| 11:14 | 5 | over time.  In fact, the suggestion that a change must |
| 11:14 | 6 | be over a time interval is, again, rewriting that part |
| 11:14 | 7 | of the claim and trying to change what the claim |
| 11:14 | 8 | actually says. |
| 11:14 | 9 | That part of the claim simply says |
| 11:14 | 10 | predicting change of temperature.  That could be 4 |
| 11:14 | 11 | degrees.  That could be as simple as, you know, it will |
| 11:14 | 12 | change from 72 to 76 degrees at 8:00 p.m. There's no |
| 11:14 | 13 | requirement that you're looking at how fast something |
| 11:14 | 14 | changes, which is the concept of a rate. |
| 11:14 | 15 | So, again, Your Honor, those are two |
| 11:14 | 16 | different issues.  And one does not provide the |
| 11:14 | 17 | antecedent basis for the other. |
| 11:14 | 18 | Thank you. |
| 11:14 | 19 | THE COURT:  Anything else from |
| 11:14 | 20 | Mr. Pickens? |
| 11:14 | 21 | MR. PICKENS:  Thank you, Your Honor. |
| 11:14 | 22 | I would just respond that I think in |
| 11:15 | 23 | Figure 6 when you look at that, together with the |
| 11:15 | 24 | specification, you see that the change of 4 degrees is |
| 11:15 | 25 | over 15 hours.  It always has to be over a time |

| 11:15 | 1 | interval.  It -- and so that's why we think that it |
| 11:15 | 2 | does have the antecedent basis. |
| 11:15 | 3 | THE COURT:  I'll be back in a second. |
| 11:15 | 4 | (Pause in proceedings.) |
| 11:16 | 5 | THE COURT:  If we can go back on the |
| 11:16 | 6 | record. |
| 11:16 | 7 | The Court is going to maintain its |
| 11:16 | 8 | preliminary construction that this claim term is |
| 11:16 | 9 | indefinite. |
| 11:16 | 10 | Is there anything else that we have to |
| 11:16 | 11 | take up this morning? |
| 11:16 | 12 | MR. APGAR:  Not from defendants, Your |
| 11:16 | 13 | Honor. |
| 11:16 | 14 | MR. DAVIS:  And not from plaintiff, Your |
| 11:16 | 15 | Honor. |
| 11:16 | 16 | THE COURT:  Have a good afternoon.  Take |
| 11:16 | 17 | care. |
| 11:16 | 18 | (Hearing adjourned at 11:16 a.m.) |
|  | 19 |  |
|  | 20 |  |
|  | 21 |  |
|  | 22 |  |
|  | 23 |  |
|  | 24 |  |
|  | 25 |  |

1   UNITED STATES DISTRICT COURT )

2   WESTERN DISTRICT OF TEXAS          )

3

4     I, Kristie M. Davis, Official Court Reporter for the

5   United States District Court, Western District of

6   Texas, do certify that the foregoing is a correct

7   transcript from the record of proceedings in the

8   above-entitled matter.

9     I certify that the transcript fees and format comply

10   with those prescribed by the Court and Judicial

11   Conference of the United States.

12     Certified to by me this 30th day of September 2022.

13

14                          /s/ Kristie M. Davis
                            KRISTIE M. DAVIS
15                          Official Court Reporter
                            800 Franklin Avenue
16                          Waco, Texas 76701
                            (254) 340-6114
17                          kmdaviscsr@yahoo.com

18

19

20

21

22

23

24

25

11:17