PUBLIC VERSION

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC., | |
|       Plaintiff, | Case No. 6:20-cv-00078-ADA |
|     v. | **JURY TRIAL DEMANDED** |
| ECOBEE, INC., | |
|       Defendant. | |
| ECOFACTOR, INC., | |
|       Plaintiff, | Case No. 6:20-cv-00428-ADA |
|     v. | **JURY TRIAL DEMANDED** |
| ECOBEE, INC., | **LEAD CASE** |
|       Defendant. | ████████████ |

# PLAINTIFF ECOFACTOR, INC.'S MOTION TO EXCLUDE EXPERT OPINIONS OF ECOBEE'S DAMAGES EXPERT MELISSA BENNIS

## **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT.......................................................................................................... 1

    A.    Ms. Bennis' Affirmative Opinion on a Reasonable Royalty Is Improperly Based on Counting the Number of Patents EcoFactor Has Ever Asserted in Litigation Between EcoFactor and ecobee ............................................................... 2

        1.    Ms. Bennis' reasonable royalty opinion relies on dropped patents and patents asserted in other litigation against ecobee. ......................................... 2

        2.    Ms. Bennis' reliance on previously asserted patents and on patents only asserted in other litigation is highly prejudicial and confusing—such opinions should be excluded under Rule 403................................................................ 2

        3.    Ms. Bennis' assumption that all patents asserted against ecobee have equal value is unfounded and contrary to law........................................................... 6

    B.    Ms. Bennis Relies on ecobee Licenses that She Fails to Establish Are Comparable to the Hypothetical Negotiation ........................................................................ 9

        1.    Ms. Bennis again relies on improper and unsupported patent counting in her opinion on ecobee's license with Stingray. ...................................................... 10

        2.    Ms. Bennis improperly fails to account for extent of use in her opinion on other ecobee patents................................................................................................ 12

    C.    In Comparing the Size of EcoFactor's Licensees to the Size of ecobee, Ms. Riley Improperly Relies on The Licensees' Worldwide Revenues ..................................... 13

    D.    Ms. Bennis Improperly Relies on a Triple Hearsay Reference to a Valuation About Which Nothing Is Known, Including Whether It Even Exists ................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Biscotti Inc. v. Microsoft Corp.*,
   No. 2:13-CV-01015, 2017 WL 2537021 (E.D. Tex. May 30, 2017)........................................ 3

*Cordis Corp. v. Medtronic AVE, Inc.*,
   511 F.3d 1157 (Fed. Cir. 2008)............................................................................................... 5

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010)............................................................................................... 9

*Golden Bridge Tech. v. Apple Inc.*,
   No. 5:12-CV-04882-PSG, 2014 WL 2194501 (N.D. Cal. May 18, 2014) .................... 7, 10, 11

*GPNE Corp. v. Apple, Inc.*,
   No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ................................ 11

LaserDynamics, Inc. v. Quanta Computer, Inc.,
   694 F.3d 51 (Fed. Cir. 2012)............................................................................................. 2, 14

*Linksmart Wireless Tech. LLC v. Gogo, LLC*,
   8:18-CV-00654-JAK (JDEx), Dkt. No. 296 (C.D. Cal. Sept. 3, 2021) .................................. 13

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)............................................................................................. 10

*Mobile Telecomms. LLC v. ZTE (USA) Inc.*,
   No. 2:13-CV-946, 2016 WL 8260584 (E.D. Tex. July 22, 2016) ............................................ 3

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
   No. CV 15-4431 (SRC), 2021 WL 4077563 (D.N.J. Sept. 8, 2021) ........................................ 9

*MV3 Partners LLC v. Roku, Inc.*,
   No. 6:18-cv-00308-ADA, Dkt. No. 332 (W.D. Tex. Sept. 29, 2020)........................................ 3

*PACT XXP Technologies, AG v. Xilinx, Inc.*,
   No. 2:07-CV-563, 2012 WL 2774971 (E.D. Tex. May 13, 2012)............................................ 5

*Pavo Solutions, LLC v. Kingston Tech. Co., Inc.*,
   No. 8:14-cv-01352, 2019 WL 8138163 (C.D. Cal. Nov. 20, 2019) ........................................ 14

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
   No. 2:13-CV-213, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015)............................................... 6

*Swagway, LLC v. Int'l Trade Comm'n*,
   923 F.3d 1349 (Fed. Cir. 2019)............................................................................................... 4

*Tex. Instruments Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996)................................................................................................. 4

*Tex. Instruments Inc. v. Int'l Trade Comm'n*,
   851 F.2d 342 (Fed. Cir. 1988)................................................................................................. 4

*Uniloc U.S.A. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)............................................................................................... 9

*United States v. Brownlee,*
   744 F.3d 479 (7th Cir. 2014) ................................................................... 16

*United States v. Jones,*
   37 F.3d 633 (5th Cir. 1994) ....................................................................... 2

*Videoshare, LLC v. Google LLC,*
   No. 6:19-cv-663-ADA, Dkt. 215 (W.D. Tex. Nov. 15, 2021).................... 7

*VLSI Tech. LLC v. Intel Corp,*
   No. 6:21-cv-0057-ADA, Dkt. No. 508 (W.D. Tex. Feb. 19, 2021)............. 3

*Wordtech Sys., Inc. v. Integrated Network Sols., Inc.,*
   609 F.3d 1308 (Fed. Cir. 2010)................................................................ 13

**Rules**

Fed. R. Evid. 403 ......................................................................... 1, 2, 3, 5

Fed. R. Evid. 702 ................................................................................... 1

Fed. R. Evid. 703 .............................................................................. 1, 16

## I.      INTRODUCTION

Plaintiff EcoFactor, Inc. ("EcoFactor") hereby moves to exclude expert opinions of Defendant ecobee, Inc.'s ("ecobee") damages expert Melissa Bennis, pursuant to Fed. R. Evid. 403, 702, and 703. Ms. Bennis' opinion improperly relies on EcoFactor's other lawsuits against ecobee, as well as patents from this case that are no longer asserted. She asserts that the parties to the hypothetical negotiation would calculate the royalty rate for the patents in this case using the total number of patents (16) that have ever been asserted in EcoFactor lawsuits against ecobee. Ms. Bennis uses this number as one of only two mathematical inputs to calculate her royalty rate. But informing the jury about the other patents EcoFactor has asserted has no probative value, and any is outweighed by the danger of unfair prejudice under Rule 403. The parties cannot examine Ms. Bennis about her royalty rate calculation without disclosing that EcoFactor no longer asserts certain patents in this case or that EcoFactor has asserted other patents in other lawsuits. Such references should be excluded, along with Ms. Bennis' royalty rate calculation.

Ms. Bennis' opinions also suffer additional methodological flaws under Rules 702 and 703. Ms. Bennis devotes much of her analysis to emphasizing negative findings against EcoFactor in other cases, while ignoring findings in EcoFactor's favor. However, besides each patent having a distinct litigation history, when Ms. Bennis calculates her royalty rate for the patents-in-suit, she assumes (without evidence) that each of the 16 patents EcoFactor has ever asserted against ecobee has equal monetary value. This is an improper assumption unsupported by a technical or economic analysis of similarities between the patents and their relevance to ecobee. Her separate reliance on other ecobee licenses or third-party hearsay statements are also unreliable and should be excluded.

## II.     ARGUMENT

1

A.   **Ms. Bennis' Affirmative Opinion on a Reasonable Royalty Is Improperly Based on Counting the Number of Patents EcoFactor Has Ever Asserted in Litigation Between EcoFactor and ecobee**

1.   **Ms. Bennis' reasonable royalty opinion relies on dropped patents and patents asserted in other litigation against ecobee.**

Ms. Bennis' opinion is that the reasonable royalty in this case is a lump sum of  for each asserted patent. To compute this figure, she starts with the ███████████████ ████████████████████████████████, and then divides by 16, which is the number of patents EcoFactor has ever asserted against ecobee across numerous cases. Ex. 1 (Expert Report of Melissa Bennis) ("Bennis Rpt.") at 123-24, n.634. Ms. Bennis' apparent logic is that ████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████ to the portfolio of "16 patents asserted [by EcoFactor] against ecobee across WDTX1, WDTX2, D. Del., and WDTX3." *Id.* at 123-24.

Throughout her report, Ms. Bennis also emphasizes findings against EcoFactor in other litigation, while ignoring all findings in EcoFactor's favor. *See, e.g.*, *id.* at 23-28. She summarizes these other litigation matters in a chart that appears four times in her report, highlighting patents that were dismissed or withdrawn. *See, e.g.*, *id.* at 28, 82, 113, App. C.

2.   **Ms. Bennis' reliance on previously asserted patents and on patents only asserted in other litigation is highly prejudicial and confusing—such opinions should be excluded under Rule 403.**

Ms. Bennis' opinion should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403; *United States v. Jones*, 37 F.3d 633 (5th Cir. 1994) ("*Daubert* did not dispense with the district court's discretion to exclude expert testimony under rule 403"). The Federal Circuit has made clear that an expert's damages opinion should be excluded where the information therein may confuse or mislead the jury.

*LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 67-68 (Fed. Cir. 2012).

Ms. Bennis' royalty rate calculation requires informing the jury that, in addition to the patents-in-suit, EcoFactor has previously asserted 12 other patents *against ecobee* that are not at issue here. This includes one patent that was previously asserted in Case No. 6:21-cv-00428, three patents that were previously asserted in Case No. 6:20-cv-00078, and eight other patents that were previously asserted in ITC proceedings and are currently being asserted in other district court actions against ecobee. Informing the jury about patents not asserted here, including patents with invalidity findings as to certain claims, would cause significant prejudice to EcoFactor. Even informing the jury that EcoFactor has sued ecobee multiple times would cause substantial juror confusion and unfair prejudice (e.g., suggesting that EcoFactor is improperly targeting ecobee or that ecobee is a serial infringer) and, in any event, would serve only to distract from the issues the jury must decide in this case. Courts, including this one, routinely exclude evidence of other litigation and previously asserted patents under Rule 403. *See, e.g.*, *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA, Dkt. 192, at 2 (W.D. Tex. Jan. 31, 2022) (granting motion *in limine* to "exclude references to the parties' other litigations and claims besides EcoFactor's claims against Google in this case"); *VLSI Tech. LLC v. Intel Corp*, No. 6:21-cv-0057-ADA, Dkt. No. 508, at 5 (W.D. Tex. Feb. 19, 2021) (granting motion *in limine* to exclude references to other litigations and proceedings); *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. No. 332, at 4 (W.D. Tex. Sept. 29, 2020) (granting motion *in limine* to exclude references to "[IPR] Concerning the Patent-in-Suit" and to exclude "any references to a parallel proceeding"); *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015, 2017 WL 2537021, at *1 (E.D. Tex. May 30, 2017) (finding probative value in allowing the plaintiff to reference PTAB findings was "substantially outweighed by the danger of the unfair prejudice"); *Mobile Telecomms. LLC v. ZTE (USA) Inc.*, No. 2:13-CV-946,

2016 WL 8260584, at *2 (E.D. Tex. July 22, 2016) (excluding references or evidence "regarding unrelated litigations, investigations, or accusations involving the parties or their affiliates").

12 of the 16 patents on which Ms. Bennis bases her calculation of a reasonable royalty are not at issue here. Several have been dropped from litigation, and several have been subject to adverse infringement or validity rulings by the ITC (e.g., U.S. Patent No. 8,131,497), the PTAB (e.g., U.S. Patent No. 10,534,382), or this Court (e.g., U.S. Patent No. 9,194,597). In some cases, an adverse ruling prompted a dismissal. It is highly likely that discussion of adverse rulings on other EcoFactor patents, including patents in the same family as patents at issue here, would be improperly understood by the jury to be evidence of the validity or infringement of the patents-in-suit. And even if this concern could be addressed, it would require significant trial time to do so.

As an example, any discussion of ITC findings, and what weight may or may not be given in the hypothetical negotiation to such findings, would require discussion of the differences between ITC and district court proceedings in general, and the differences between the specific prior ITC cases between EcoFactor and ecobee and the present case. Parties to the hypothetical negotiation, if they were to weigh ITC litigation outcomes as part of their negotiations, would necessarily consider the fact that such findings would not have preclusive effect. *See Tex. Instruments Inc. v. Cypress Semiconductor Corp*., 90 F.3d 1558, 1569 (Fed. Cir. 1996) ("Congress did not intend decisions of the ITC on patent issues to have preclusive effect."); *Swagway, LLC v. Int'l Trade Comm'n*, 923 F.3d 1349 (Fed. Cir. 2019) (same quotation, vacated in part on other grounds); *see also Tex. Instruments Inc. v. Int'l Trade Comm'n*, 851 F.2d 342, 344 (Fed. Cir. 1988) ("the ITC's determinations regarding patent issues should be given no *res judicata* or collateral estoppel effect"). They would also factor in that certain ITC findings were predicated on claim constructions that have been rejected by district courts, including this one. The parties would

also necessarily consider whether the evidence of infringement at the ITC is the same as the evidence in the present case. For example, the claim term "outside temperature measurements" appears in all three patents previously tried against ecobee at the ITC and in the '186 and '100 patents at issue in Case No. 6:21-cv-00428. In the 1185 and 1258 ITC cases, both ALJ and Commission decisions found in ecobee's favor that this claim limitation was not infringed. But there is significant new documentary evidence and deposition testimony from ecobee's weather data providers in this case that was not available at the ITC. As another example, EcoFactor's case here involves newer product features that were not previously adjudicated in one or both ITC cases. A hypothetical negotiation based on the assertion of patents at the ITC would necessarily have to take such issues into account, and thus these issues would have to be addressed at trial, which would necessitate extensive evidence of confusing matters not directly relevant to the case at hand.

Similarly, dropped patents would also need to be discussed. If the parties at the hypothetical negotiation were assumed to weigh the value of other patents asserted in litigation between the parties, they would necessarily consider whether said patents were eventually dropped from that litigation, as Ms. Bennis does. Ex. 1 at 28 (Summary of EcoFactor and ecobee Litigation History, with grey highlights on dismissed patents). ecobee should be precluded from introducing any evidence or argument concerning patents or claims that were previously asserted but are no longer at issue, products that are no longer accused, and/or non-asserted theories of infringement. Courts routinely exclude evidence of dropped patents under Federal Rule of Evidence 403 because of the high risk of jury confusion. *See*, *e.g.*, *Cordis Corp. v. Medtronic AVE, Inc*., 511 F.3d 1157, 1183-84 (Fed. Cir. 2008) (affirming exclusion of evidence of unasserted patents and claims under FRE 403); *PACT XXP Technologies, AG v. Xilinx, Inc.*, No. 2:07-CV-563, 2012 WL 2774971, at *2 (E.D. Tex. May 13, 2012) ("It is not clear why the Court should permit any party to introduce

patents that are not asserted in this case."); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13-CV-213, 2015 WL 627430, at *1 (E.D. Tex. Jan. 31, 2015) (granting Plaintiff's motion *in limine* to exclude evidence of "litigation brought by [Plaintiff] unrelated to the patents-in-suit").

ecobee may argue that Ms. Bennis' opinion that the parties would divide the Daikin lump sum amount by the 16 patents would not necessarily require discussing the details of the cases involving all of those patents. But that is not what Ms. Bennis says in her report. As noted above, she discusses these other litigation matters in detail throughout her report, and she argues that "using the book of wisdom, the hypothetical negotiators would also recognize that, of the 16 patents asserted against ecobee, at least the '497 patent, the '322 patent, the '382 patent, the '550 patent, U.S. Patent No. 8,886,488, and the '597 patent had all been found invalid and/or noninfringed by ecobee in separate proceedings." Ex. 1 at 90; *see also id.* at 91 ("Mr. Kennedy's damages opinion ignores the reality that many of EcoFactor's patents (other than the three patents-in-suit at issue in this litigation) have been invalidated."). Moreover, as discussed below, any rebuttal of Ms. Bennis' assumption that the parties would treat all 16 patents across many cases as having equal value would need to address the facts showing why this assertion is untrue.

Because Ms. Bennis' calculation of a reasonable royalty is based on the assumption that the parties to the hypothetical negotiation would consider all 16 patents ever asserted by EcoFactor against ecobee—which would necessarily result in great prejudice to EcoFactor and significant juror confusion—her affirmative opinion on the reasonable royalty should be excluded, and all references to EcoFactor's other cases against ecobee should be excluded as well.

> **3.   Ms. Bennis' assumption that all patents asserted against ecobee have equal value is unfounded and contrary to law.**

In dividing the Daikin lump sum payment by the number of patents asserted by EcoFactor against ecobee across several litigations, and then opining that the resulting per-patent rate is the

reasonable royalty for each patent-in-suit, Ms. Bennis expressly assumes that "each of the 16 patents asserted against ecobee across WDTX1, WDTX2, D. Del., and WDTX3 are equally as valuable." Ex. 1 (Bennis Rpt.) at 124. However, "[t]he case law is clear that mere patent counting and dividing is not enough" to satisfy "the fundamental notion that a patent damages methodology must be 'tied to the relevant facts and circumstances of the case at issue.'" *Golden Bridge Tech. v. Apple Inc.*, No. 5:12-CV-04882-PSG, 2014 WL 2194501, at *6 (N.D. Cal. May 18, 2014). And Ms. Bennis' assumption that these 16 patents would have equal value at the hypothetical negotiation is especially flawed, as it ignores the required presumption that the parties to the hypothetical negotiation agree that the patents in this case are valid and infringed—a presumption that does not apply to other patents. *See, e.g.*, *Videoshare, LLC v. Google LLC*, No. 6:19-cv-663-ADA, Dkt. 215 (W.D. Tex. Nov. 15, 2021) (Final Jury Instructions) (explaining that, in determining what the parties would agree to at the hypothetical negotiation, "you must assume that both parties believed the patent was valid and infringed").

Ms. Bennis' assumption that the parties would place equal value on every EcoFactor patent asserted against ecobee is contradicted by the litigation details she repeatedly cites to throughout her report. She provides no reasoned explanation as to why the parties to the hypothetical negotiation would conclude that dropped or invalidated patents have equal value to the patents-in-suit that she must assume are both valid and infringed. Ms. Bennis' own chart summarizing the EcoFactor and ecobee litigation history shows that four of the 16 patents are no longer asserted against ecobee in any litigation. *See, e.g.*, Ex. 1 (Bennis Rpt.) at 113, n.606 ("Cells highlighted in grey represent patents that have been, or were, dismissed from their respective proceedings."). Yet, she still opines that dropped patents have equal value to the patents-in-suit. *Id.* at 124.

Then there is the matter of patents that have been subject to adverse or favorable rulings.

For example, even though she asserts that the negotiators would be aware of adverse findings (*id.* at 90), Ms. Bennis assumes that the parties would choose to ignore such adverse findings and place the same value on patents invalidated in an IPR or found invalid in an ITC proceeding as on the valid and infringed patents-in-suit (*id.* at 123-124). Ms. Bennis also provides no basis for her assumption that the parties would maintain that each patent has equal value despite favorable findings on specific patents, such as where district courts have rejected ecobee's indefiniteness challenges, all of which she ignores in her report.

The only support Ms. Bennis identifies for her assumption that "each of the 16 patents asserted against ecobee across WDTX1, WDTX2, D. Del., and WDTX3 are equally as valuable" is her assertion that EcoFactor's expert, Mr. David Kennedy, allegedly makes the same assumption. Ex. 1 (Bennis Rpt.) at 123-24. But Mr. Kennedy makes no such assumption, and he certainly never opines that the parties to the hypothetical negotiation would agree that the valid and infringed patents-in-suit would have the same value as those whose validity and infringement is disputed, or that ecobee would put the same value on patents asserted against it as on patents asserted and then dropped. In any case, Ms. Bennis rejects every aspect of Mr. Kennedy's opinion except the opinion that EcoFactor's licenses with Daikin, Schneider and Johnson Controls are highly comparable to the hypothetical negotiation. *Id.* at 120 ("I agree [with Mr. Kennedy] that '[e]ach of these three licenses covered the same technology areas that are at issue in this matter, they involved the same licensor, they were executed within one to two years of this Hypothetical Negotiation, . . . and they covered highly comparable products.").[1] She specifically criticizes the alleged assumption by Mr. Kennedy that EcoFactor would license any of its patents at the same rate. *Id.* at 83-84. An expert cannot criticize another expert's methodology in rebuttal, and then

---

[1] It is unclear why Ms. Bennis bases her opinion on the Daikin license alone, despite having concluded that all three of EcoFactor's licenses are highly comparable.

turn around and rely on the same methodology for their affirmative opinion. *See, e.g.*, *Mondis Tech. Ltd. v. LG Elecs., Inc.,* No. CV 15-4431 (SRC), 2021 WL 4077563, at *14 (D.N.J. Sept. 8, 2021) ("Mondis cannot convince this Court that expert testimony that discredits a method, but then relies on that discredited method, is helpful to the trier of fact."). But that is exactly what Ms. Bennis does, and her misrepresentation of Mr. Kennedy's actual opinion does not make her house-of-cards opinion any more logical or supported.

Ms. Bennis also claims that the parties to the hypothetical negotiation necessarily would consider as part of their negotiation every patent that EcoFactor had asserted or in the future would assert against ecobee, in order to avoid "an improper risk of double recovery for licensing of the same patents." Ex. 1 (Bennis Rpt.) at 81. But at the time of the hypothetical negotiation, and indeed today, any other recovery against ecobee for any patents besides the patents-in-suit is entirely speculative. The parties to the hypothetical negotiation would have no idea if ecobee would be required to take a license to any other patent, or what the rate would be. That is, in fact, exactly why Ms. Bennis' assumption that the parties would value those other patents the same as the valid and infringed patents-in-suit is entirely contrary to logic, the facts, and the law.

**B.    Ms. Bennis Relies on ecobee Licenses that She Fails to Establish Are Comparable to the Hypothetical Negotiation**

For a damages expert, such as Ms. Bennis, to present evidence of an agreement as part of her damages opinion, the Federal Circuit requires that "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Uniloc U.S.A. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) ("[U]se of past patent licenses under factors 1 and 2 must account for differences in the … economic circumstances of the contracting parties."). It is Ms. Bennis' (and ecobee's) burden to establish the economic

comparability of the agreements on which she relies. *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1329 (Fed. Cir. 2009).  Ms. Bennis relies on ecobee licenses for which she fails to establish economic comparability, and therefore these opinions should be excluded.

**1.      Ms. Bennis again relies on improper and unsupported patent counting in her opinion on ecobee's license with Stingray.**

Although the calculation dividing the ████ lump sum by 16 patents is the basis of Ms. Bennis' ██████-per-patent reasonable royalty, she opines that "[t]he hypothetical negotiators would also recognize that such a royalty is reasonable in light of ecobee's existing licenses," specifically a license between ecobee and ████████████. Ex. 1 (Bennis Rpt.) at 124-25. ecobee paid ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ *Id*.

However, as discussed above, "assuming all ████████ have equal value" is not sufficiently tied to the facts of the case. *See Golden Bridge*, 2014 WL 2194501, at *6. Ms. Bennis provides no support for assuming all the Stingray patents have equal value to ecobee, nor cites to any technical opinion supporting that assumption. In fact, it is contradicted by the evidence.

First, ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ Ex. 2 (ecobee-WDTXII_00001151) at ecobee-WDTX_00001156-1157; Ex. 3 (claim chart produced as ecobee-WDTXII_00000995-1010); Ex. 4 (claim chart produced as ecobee-WDTXII_00001011-1027); Ex. 5 (claim chart produced as ecobee-WDTXII_00001028-1043).

Moreover, patent counting is particularly problematic where, as here, the patents are alleged to read against a standard. As several courts have noted, "[p]atent counting, or counting the number of patents essential to a standard and determining the value of a single patent by dividing the value of the standard by the number of essential patents, is imprecise because it does not account for the value of the asserted patent relative to the other standard essential patents." *GPNE Corp. v. Apple, Inc.,* No. 12-CV-02885-LHK, 2014 WL 1494247, at *7 (N.D. Cal. Apr. 16, 2014); *see also Golden Bridge*, 2014 WL 2194501, at *6 (there is "no case law supporting the notion that a claimed standard-essential patent gets a free pass on the fundamental notion that a patent damages methodology must be 'tied to the relevant facts and circumstances of the case at issue.' If anything, the case law is clear that mere patent counting and dividing is not enough.").

*GPNE* notes that "[a]lthough patent counting is of limited probative value, as long as the expert adjusts her final royalty figure based on the value of the asserted patent relative to the other standard essential patents," a patent counting approach is not by itself grounds for exclusion. *GPNE*, 2014 WL 1494247, at *7. But Ms. Bennis makes no such adjustment. Her opinion on the Stingray license should therefore be excluded.

2.    **Ms. Bennis improperly fails to account for extent of use in her opinion on other ecobee patents.**

Ms. Bennis appears to rely, to a much lesser extent, on other ecobee licenses with ██████. To the extent Ms. Bennis is relying on these licenses, she fails to establish that they are economically comparable. In her conclusions about the hypothetical negotiation, Ms. Bennis states that:

Ex. 1 (Bennis Rpt.) at 122 (emphasis added).

However, Ms. Bennis fails to address economic comparability for ████████

*Id.*

Moreover, to establish economic comparability with respect to lump sum agreements, an expert must, at a minimum, consider expected or actual extent of use. *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) ("Neither license describes how the parties calculated each lump sum, the licensees' intended products, or how many products each licensee expected to produce … Thus, without additional data, the licenses offered the jury little more than a recitation of royalty numbers."); *see also Linksmart Wireless Tech. LLC v. Gogo, LLC*, 8:18-CV-00654-JAK (JDEx), Dkt. No. 296, at *4-5 (C.D. Cal. Sept. 3, 2021) (explaining and relying on the holding in *Wordtech*). Ms. Bennis does not address whether ecobee ever used, or intended to use, the patented technology licensed in these agreements, let alone whether the extent of that use was comparable to ecobee's alleged infringement in this case.  Ms. Bennis should therefore be precluded from relying on the rates in ███████████████████████████ .

### C.   In Comparing the Size of EcoFactor's Licensees to the Size of ecobee, Ms. Riley Improperly Relies on The Licensees' Worldwide Revenues

The parties agree that EcoFactor's licenses with Daikin, Schneider, and JCI are highly comparable to the license negotiated at the hypothetical negotiation. Ms. Bennis sought to account for economic differences between these existing licenses and the hypothetical license between EcoFactor and ecobee by comparing the total net revenues earned by ecobee to the total worldwide revenues earned by Daikin, Schneider, and JCI. Ex. 1 (Bennis Rpt.) at 122-23. She made this comparison in the context of rebutting Mr. Kennedy's own economic comparability analysis, in which Mr. Kennedy compared the licensees' market share to ecobee's market share in the smart thermostat market, given that EcoFactor has consistently asserted that its patents cover smart thermostat products made by the licensees. Ms. Bennis, however, argues that the better comparison is the "relative size of these overall companies and their presence in the HVAC market," because the EcoFactor licenses ███████████████ , and patents in that portfolio may read on other of the

licensees' products besides smart thermostats.[2] *Id.* at 122-23. Ms. Bennis identifies the relevant

numbers for comparison as being the following worldwide revenue figures:



- For Daikin, ███████████████████████████████████
  ███████████████████████████████████████ *d.* at 87-88,
  123.

- For Schneider, ████████████████████████████████
  ██████████████████████████████████ *Id.* at 88.

- For JCI, █████████████████████████████████████████
  ████████████████████████████████████████████████
  █████████████████████ *Id.* at 88.

Ms. Bennis' comparison of the licensees' worldwide revenues to the total net revenues

earned by ecobee should be excluded. There is no methodological justification for using the

licensees' worldwide revenues. While the licenses at issue granted worldwide rights, the licensed

patents only covered U.S. manufacturing, sales, and imports. Ms. Bennis makes no attempt to

account for this, and instead proposes to use a royalty base of the licensees' worldwide sales

(amounting to tens of billions in global revenue), which would improperly skew the damages

horizon. *LaserDynamics*, 694 F.3d at 67-68 (barring the use of too high a royalty base which

"cannot help but skew the damages horizon for the jury"). There is simply too great an analytical

gap in Ms. Bennis' use of worldwide sales as a stand-in for actual sales covered under the licenses.

*Pavo Solutions, LLC v. Kingston Tech. Co., Inc.*, No. 8:14-cv-01352, 2019 WL 8138163, at *5-6

(C.D. Cal. Nov. 20, 2019) (excluding accused infringer's damages expert for using worldwide

---

[2] Ms. Bennis' reluctance to consider a relevant comparison of market share may be motivated by
the fact that ecobee controls a large portion of the smart thermostat market. *See, e.g.*, Ex. 1 (Bennis
Rpt.) at 87, n.471 █
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

sales as a stand-in for actual licensed sales under an agreement). This is grounds for exclusion. *Id.*

Ms. Bennis also has no basis to assume that the relevant revenue base for comparing Daikin, Schneider, and JCI to ecobee is their total worldwide revenue from business segments that include numerous non-accused products. Ms. Bennis concedes that the business segments include numerous products that have absolutely no relevance to EcoFactor's portfolio, such as JCI's "fire-detection systems and fire-suppressions solutions." Ex. 1 (Bennis Rpt.) at 88. Nonetheless, she makes no attempt to adjust the revenues to exclude products that are not covered under the licenses. Ms. Bennis posits that the licensees would value the freedom to operate in selling their non-accused HVAC products, and simply assumes that EcoFactor's patents could be asserted to cover all those products. Neither Ms. Bennis nor any other ecobee expert provides any analysis supporting this claim. Nor is there any evidence that EcoFactor, in making its claims against these companies' smart thermostats, told the licensees it believed its patents have such wide application. This aspect of Ms. Bennis' opinion is completely speculative and is therefore unreliable. It should be excluded.

### D.   Ms. Bennis Improperly Relies on a Triple Hearsay Reference to a Valuation About Which Nothing Is Known, Including Whether It Even Exists

Ms. Bennis agrees that EcoFactor's Asset Purchase Agreement with Trane is not comparable to the hypothetical negotiation, and she opines that "the rates contemplated [in the Trane Agreement] would not be highly indicative to the outcome of the hypothetical negotiation." Ex. 1 (Bennis Rpt.) at 96-97. However, she nonetheless opines that the hypothetical negotiators would rely on ███████████████████████████████████████████████████████████████ ████████████████████████████████. *Id.* at 97. She opines that "[b]y February 2019, around the time of the Asset Purchase Agreement, ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

applications included in the portfolio, was worth no more than ███████ as of February 2019."
*Id.* at 97 (emphasis added) (citing Ex. 7 (TRANE0000530, Trane email dated Feb. 8, 2019)). In
Ms. Bennis' view, this reference to a purported █████████ valuation would put a hard cap on the
reasonable royalty the parties would agree to at the hypothetical negotiation. *Id.*

      This opinion should be excluded because Ms. Bennis does not know who performed this
valuation, how it was performed, or even *whether* this supposed valuation was performed
according to any discernable and reliable methodology. ██████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████ Ms. Bennis is permitted to rely on hearsay, but there are limits, and this is one of them.
Rule 703 "was never intended to allow oblique evasions of the hearsay rule." *United States v.*
*Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014). Experts can rely on hearsay only "if experts in the
particular field would reasonably rely on those kinds of facts or data in forming an opinion on the
subject." Fed. R. Evid. 703. Experts in Ms. Bennis' field do not reasonably rely on internal email
exchanges referring to earlier conversations in which a valuation of unknown origin or
methodology was referenced as a definitive valuation of a patent portfolio. Given the unknown
methodology used to arrive at this purported valuation, its probative value does not "substantially
outweigh [its] prejudicial effect" under Rule 703. Ms. Bennis' opinions relying upon or referencing
this purported valuation should therefore be excluded.

Date: December 30, 2022          Respectfully submitted,


*/s/ Reza Mirzaie*
Reza Mirzaie
Marc A. Fenster
Kristopher Davis
James Pickens
Minna Chan
Jason Wietholter
**Russ August & Kabat**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474

Matthew D. Aichele
**Russ August & Kabat**
800 Maine Ave SW, Suite 200
Washington, DC. 20024
Telephone: (202) 664-0623

*Attorneys for Plaintiff EcoFactor, Inc.*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that my firm, including James Pickens and Kris Davis, conferred with Defendant's counsel regarding the foregoing Motion on Wednesday, December 28, 2022, following email correspondence identifying the proposed relief.

/s/ *Reza Mirzaie*

## **CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record have been served electronically on December 30, 2022.

/s/ *Reza Mirzaie*