PUBLIC VERSION

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> ECOBEE, INC., <br><br> Defendant. | Case No. 6:20-cv-00078-ADA <br><br> **JURY TRIAL DEMANDED** |
| ECOFACTOR, INC. <br><br> Plaintiff, <br><br> v. <br><br> ECOBEE INC., <br><br> Defendant. | Case No. 6:21-cv-00428-ADA <br><br> **JURY TRIAL DEMANDED** <br><br> **LEAD CASE** |

**PLAINTIFF ECOFACTOR, INC.'S MOTION TO EXCLUDE EXPERT OPINIONS OF BRIAN D'ANDRADE, PH.D. AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 1

    A. Dr. D'Andrade asserts that claim element 1[k]'s "one or more processors configured with electronic circuitry" corresponds to a processor in Benco's thermostat. .......................... 2

    B. Dr. D'Andrade falsely asserts that "Benco expressly discloses that the thermostat therein receives a geolocation of the mobile terminal." ............................................................... 3

    C. Dr. D'Andrade's reliance on Benco for limitation 1[k] should be excluded for multiple reasons. ................................................................................................................................... 6

    D. Dr. D'Andrade's other discussions of Benco do not support his opinion that Benco discloses a thermostat receiving a geolocation of the mobile terminal. .................................... 7

    E. The Court should grant partial summary judgment on Dr. D'Andrade's theory of Benco for limitation 1[k]. ..................................................................................................................... 8

III. CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Comcast Cable Comm'ns, LLC v. Sprint Comm's Co., LP*,
   203 F. Supp. 3d 499 (E.D. Pa. 2016) .................................................................................. 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ............................................................................................................ 7

*Finalrod IP, LLC v. Endurance Lift Solutions, Inc.*,
   No. 2:20-cv-00189, 2021 WL 4943650 (E.D. Tex. Oct. 22, 2021) ......................................... 6

*NantKwest, Inc. v. Lee*,
   686 F. App'x 864 (Fed. Cir. 2017) ........................................................................................ 9

*Scott v. Harris*,
   550 U.S. 372 (2007) ............................................................................................................ 9

**Rules**

Fed. R. Civ. P. § 56 ..................................................................................................................... 1

Fed. R. Evid. § 402 ................................................................................................................. 2, 7

Fed. R. Evid. § 403 ................................................................................................................. 2, 7

Fed. R. Evid. § 702 ......................................................................................................... 1, 2, 6, 7

I.  INTRODUCTION

Plaintiff EcoFactor, Inc. ("EcoFactor") hereby respectfully moves to strike certain opinions from the opening expert report of Defendant ecobee Inc.'s ("ecobee") invalidity expert, Dr. Brian D'Andrade. Specifically, EcoFactor moves to strike Dr. D'Andrade's reliance on one prior art reference, U.S. Patent Application 2011/0153525 ("Benco"), as allegedly meeting claim element 1[k] of U.S. Patent No. 10,584,890 ("the '890 patent"). In his analysis for element 1[k], Dr. D'Andrade asserts that Benco "expressly discloses" a thermostat that receives the geolocation of a mobile terminal. However, Benco contains no such express disclosure. His methodology was not to faithfully analyze what Benco discloses, but rather to create a false narrative about what Benco discloses. This does not qualify as a reliable methodology. Dr. D'Andrade's reliance on Benco for limitation 1[k] should therefore be excluded under Fed. R. Evid. § 702.[1]

Moreover, even if the Court disagrees that *Daubert* provides a basis to exclude Dr. D'Andrade's false assertion, partial summary judgment on this issue should be granted under Fed. R. Civ. P. 56. Because Dr. D'Andrade's assertion is blatantly contradicted by the record, his testimony does not raise a genuine issue of material fact that could preclude summary judgment.

II.  ARGUMENT

Referencing four paragraphs in Benco, Dr. D'Andrade opines that Benco "expressly discloses that the thermostat therein receives a geolocation of the mobile terminal." Ex. 1 (D'Andrade Report), ¶ 830 (citing Ex. 2 (Benco), ¶0022, ¶0040, ¶0042, ¶0046). However, Benco

---

[1] Dr. D'Andrade argues that claim 1 of the '890 patent would be obvious in view of several different combinations of prior art references. Ex. 1 (D'Andrade Report), ¶¶ 76-78 (summarizing obviousness theories for the '890 patent). For example, Dr. D'Andrade presents obviousness theories for claim 1 based on: (i) the combination of U.S. Patent Application 2004/0117330 ("Ehlers '330") and Benco; (ii) the ecobee SMART Thermostat alone; and (iii) the combination of the ecobee SMART Thermostat and Benco. This motion only challenges Dr. D'Andrade's reliance on Benco as to claim limitation 1[k] of the '890 patent. EcoFactor is not requesting to strike Dr. D'Andrade's reliance on other prior art references, such as Ehlers '330 and the ecobee SMART Thermostat, for limitation 1[k].

does not disclose a thermostat that receives a geolocation of a mobile terminal. Ex. 2 (Benco), ¶0022, ¶0040, ¶0042, ¶0046. Dr. D'Andrade's false narrative about Benco was not the product of a reliable methodology. Accordingly, Dr. D'Andrade's reliance on Benco for limitation 1[k] violates Rule 702, lacks any probative value under Rule 402, and will, in the guise of expert opinion, mislead the jury and interfere with the Court's fact-finding mission under Rule 403. Further, as Dr. D'Andrade's assertion is blatantly contradicted by the record, his testimony does not raise a genuine issue of material fact, such that partial summary judgment is warranted.

    **A.    Dr. D'Andrade asserts that claim element 1[k]'s "one or more processors configured with electronic circuitry" corresponds to a processor in Benco's thermostat.**

Claim 1 of the '890 patent recites a "thermostat system" comprising, *inter alia*, "one or more processors configured with electronic circuitry" to perform certain specific functions. One of those functions is recited in element 1[k]: "receive radio frequency signals from the location-aware mobile device."

Throughout his analysis of claim 1, including limitation 1[k], Dr. D'Andrade maps the claimed "one or more processors configured with electronic circuitry" to the processor inside Benco's thermostat. For example, in his discussion of limitation 1[k], Dr. D'Andrade maps the claimed "one or more processors" to the processor in Benco's thermostat. Ex. 1, ¶ 830 ("Benco expressly discloses that the thermostat therein receives a geolocation of the mobile terminal…"). This is consistent with Dr. D'Andrade's opinion on claim element 1[f], which introduces the claimed "one or more processors" and maps them to the processor in Benco's thermostat 255. *See* Ex. 1, ¶¶ 815-816 ("This claim element requires that the claimed thermostat system comprises at least one processor. A POSITA would readily understand that both Ehlers and Benco each describe systems that involve microcontrollers, CPUs, or other processors ***within their respective thermostat devices***, as described throughout this section … the thermostat 255 device depicted

within Benco would be recognized by a POSITA as including a processor for implementing functionality of the integrated display and allowing communication with other devices.").

### B. Dr. D'Andrade falsely asserts that "Benco expressly discloses that the thermostat therein receives a geolocation of the mobile terminal."

In opining that Benco's thermostat processor meets limitation 1[k] (requiring the processor to "receive radio frequency signals from the location-aware mobile device"), Dr. D'Andrade asserts: "Benco expressly discloses that the thermostat therein receives a geolocation of the mobile terminal via a user device, which is either a part of the thermostat or communicates with the thermostat via wired or wireless local-area network (*see, e.g.*, Benco ¶¶0022, 0040, 0042, and 0046)." Ex. 1, ¶ 830.

However, the paragraphs of Benco cited by Dr. D'Andrade do not support his assertion. None describes a thermostat that receives anything from a mobile device. Only one of the cited paragraphs (Benco ¶ 0046) even refers to anything that the thermostat receives "via a user device." Ex. 1, ¶ 830. But that paragraph merely discloses that the thermostat receives a power management protocol via user device 280. Ex. 2 (Benco), ¶0046. Dr. D'Andrade does not assert that this power management protocol includes a geolocation for the mobile terminal, nor would he have been correct had he disclosed such an opinion. Benco describes the power management protocol as something that is defined by a utility company to manage power consumption. Ex. 2 (Benco), ¶¶0044-0045. Benco does not disclose that the power management protocol contains a geolocation of the mobile terminal. Thus, Dr. D'Andrade's statement that Benco expressly discloses a thermostat that receives such a geolocation has no factual basis.

A closer look at each of the four paragraphs confirms that they do not support Dr. D'Andrade's opinion. For example, paragraph 22 of Benco does not reference Benco's thermostat at all. Instead, it only discloses that "[o]ne skilled in the art would understand how to obtain

3

geolocations for mobile terminals 215 over a telecommunications network 220," which is not a disclosure of a *thermostat receiving* a geolocation of a mobile device:

> [0022] One skilled in the art would understand how to obtain geolocations for mobile terminals 215 over a telecommunications network 220 in accordance with step 110. For instance, base station towers 217 of the telecommunications network 220 (e.g., a third or fourth generation of cellular wireless network) can be used to triangulate the mobile transmitter's location using radio communication to facilitate obtaining geolocations in the form of longitudinal and latitudinal coordinates or their equivalent. As a non-limiting example, U.S. Pat. No. 6,650,902, incorporated by reference herein in its entirety, provides an example of obtaining the geolocations of mobile terminals.

Similarly, paragraph 40 of Benco fails to disclose thermostat 255 receiving geolocation of the mobile terminal. The first two sentences in paragraph 40 do not discuss thermostat 255, and instead disclose that *geolocation server 222* can "receive geolocation information from one or more mobile terminals 215." Ex. 2 (Benco), ¶ 0040. The third sentence discloses that the "geolocation server 222" can communicate with "thermostat 255," but this paragraph does not disclose what, if anything, is communicated between the server and the thermostat:

> [0040] For example, some embodiments of the system 200 comprise a geolocation server 222. The geolocation server 222 can be configured to store a virtual representation of a boundary region 205 surrounding a power-consuming structure 210, receive geolocation information from one or more mobile terminals 215, and determine whether or not the one or more mobile terminals 215 are located inside or outside of the boundary region 205. For example, the system 200 can also comprise a power-adjusting device (e.g., a thermostat 255 or a power-management device 265) in communication with the geolocation server 222, and, configured to change a power mode 305 of the power-consuming structure 210. The power-consuming structure's 210 power mode 305 can be changed to a low-power consumption mode 310 when the geolocations of each of the mobile terminals 215 are outside of the boundary region 205. Or, the power-consuming structure's 210 power mode 305 can be changed to a high-power consumption mode 315 when the geolocation of at least one of the mobile terminals 215 is inside the boundary region 205.

Paragraph 42 of Benco (the third paragraph relied upon by Dr. D'Andrade) likewise does not disclose that Benco's thermostat 255 receives the geolocation of the mobile terminal, as Dr. D'Andrade asserts. In fact, it does not reference Benco's thermostat 255 in any way. Ex. 2 (Benco), ¶ 0042. While paragraph 42 discloses that a telecommunications network 220 can carry geolocation information between the mobile terminals 215 and the geolocation *server 222*, this paragraph does not describe any such geolocation data being received at the *thermostat 255*:

> [0042] In some embodiments of the system 200, the means for obtaining the geolocations includes a telecommunications network 220, e.g., comprising one or more base stations 217 in wireless communication with the one or more mobile terminals 215, and, in communication with a geolocation server 222. For example, the system 200 can further include a telecommunications network 220 configured to carry communications (e.g., of geolocation information) between the one or more mobile terminals 215 and the geolocation server 222.

Dr. D'Andrade's fourth cited paragraph similarly fails to support his opinion that the thermostat processor satisfies limitation 1[k] by receiving a geolocation of the mobile terminal via a user device. Ex. 1, ¶ 830. In paragraph 46, Benco describes how the geolocation server 222 can be configured to communicate "power management protocols" with a user-controlled device 280, which can be "part of the thermostat 255" or which can communicate with thermostat 255 "via a wired or wireless local-area network 285." Ex. 2 (Benco), ¶0046. But the only thing the thermostat 255 receives is a "power management protocol," which is not "a geolocation of the mobile terminal":

> [0046] For instance, in some embodiments, the geolocation server 222 can be configured to communicate with a user-controlled device 280. In some cases, the user-controlled device 280 can be a computer located in the vicinity or inside of the power consuming structure 210. For instance, the geolocation server 222 can include a power management protocol downloadable from the geolocation server 222 to the user-controlled computer device 280. For instance, geolocation server 222 can also, or alternatively, include a user-defined power management protocol uploaded from the user-controlled device 280 to the geolocation server 222. The device 280 can be in communication with the geolocation server 222 via wired or wireless communication means 282 (e.g., a modem and internet connection provided by telephone or cable companies, satellite companies or other service providers). In some cases the user-controlled device 280 can be part of the thermostat 255 or power-management device 265. In other cases the user-controlled device 280 can be communication with the thermostat 255 or the power-management device 265 via a wired or wireless local-area network 285 (e.g., a home area network).

  **C.** **Dr. D'Andrade's reliance on Benco for limitation 1[k] should be excluded for multiple reasons.**

As shown above, Dr. D'Andrade's opinion for limitation 1[k] that Benco "expressly discloses that the thermostat therein receives a geolocation of the mobile terminal" lacks any support in the paragraphs of Benco upon which he relies. Ex. 1, ¶ 830. His methodology was therefore to create a false narrative about what Benco discloses. This is unreliable under Rule 702, as no principled invalidity expert would make up facts that are plainly contradicted by the prior art. Dr. D'Andrade's supposition is akin to filling in a gap in a prior art reference's disclosure by drawing in the missing parts by hand. *See Finalrod IP, LLC v. Endurance Lift Solutions, Inc.*, No. 2:20-cv-00189, 2021 WL 4943650 at *2 (E.D. Tex. Oct. 22, 2021) (excluding as unreliable an invalidity expert's methodology of asserting that a prior art patent figure expressly disclosed certain measurements that were, in fact, only drawn by hand by the expert). It is also analogous to supposing that the examiner considered specific prior art references in the absence of any

evidence that he did. *See Comcast Cable Comm'ns, LLC v. Sprint Comm's Co., LP*, 203 F. Supp. 3d 499, 546-47 (E.D. Pa. 2016) (excluding expert testimony that the examiner must have considered specific prior art references that were not, in fact, cited in the patent or its file wrapper, and where there was no evidence that they had actually been considered).

If ecobee claims that Dr. D'Andrade simply made an error, then Dr. D'Andrade did not review the Benco reference carefully enough to offer a reliable opinion about this aspect of it. Skimming the prior art and jumping to conclusions that lack sufficient factual basis is indicative of a flawed methodology under Rule 702. Further, ecobee also bears the burden to establish that Dr. D'Andrade's opinions will assist the trier of fact. Fed. R. Evid. § 702. Allowing an expert to give false testimony about what prior art "expressly discloses" does not assist the trier of fact. Rule 702 was designed to promote the "quest for truth in the courtroom," and false testimony does not do so. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596-97 (1993).

False testimony about what Benco "expressly discloses" is also irrelevant under Rule 402 and unfairly prejudices EcoFactor, confuses the issues, has the potential to mislead the jury, and wastes considerable time, all of which warrants exclusion under Rule 403. While cross-examination provides an avenue for exposing flawed expert opinions, outright falsehoods should be excluded under Rule 403. Forcing EcoFactor to prove through a lengthy cross-examination that Benco does ***not*** expressly disclose what Dr. D'Andrade asserts that it does would waste considerable time and unfairly prejudice EcoFactor, as it requires much more time to prove that each paragraph of Benco does not support Dr. D'Andrade's opinion than it would take for Dr. D'Andrade to utter his false statement in the first instance.

### D. Dr. D'Andrade's other discussions of Benco do not support his opinion that Benco discloses a thermostat receiving a geolocation of the mobile terminal.

To the extent ecobee argues that Dr. D'Andrade's opinions elsewhere in his report provide

the necessary support for his analysis of claim element 1[k], that is also not true. For example, Dr. D'Andrade discusses Benco in the section of his report addressing limitation 1[d], but that discussion fails to identify any support in Benco for his opinion that Benco's thermostat receives a geolocation of the mobile terminal. *See* Ex. 1, ¶¶ 805-808. In fact, throughout his discussion of claim element 1[d], Dr. D'Andrade never discusses Benco's thermostat, nor does he allege that it can receive a geolocation of the mobile terminal. *Id.*

Nor can Dr. D'Andrade's discussion in element 1[d] be relied upon to satisfy limitation 1[k], given the omission in his discussion of element 1[d] of any mapping of the elements from limitation 1[k]. In discussing claim element 1[d], Dr. D'Andrade does not map the "one or more processors configured with electronic circuitry" to anything in Benco, and he never discusses the requirement to "receive radio frequency signals." *Id.*

For similar reasons, to the extent ecobee argues that Dr. D'Andrade's opinion for limitation 1[k] is one of obviousness rather than anticipation, that argument is irrelevant and ignores the language of Dr. D'Andrade's report. *See* Ex. 1 (D'Andrade Rpt.), ¶¶ 829-831. Dr. D'Andrade asserts that Benco "expressly discloses that the thermostat receives a geolocation of the mobile terminal." *Id.* Both here and in the other sections of his report addressing Benco, Dr. D'Andrade did not argue that it would have been obvious to modify Benco's thermostat 255 to receive geolocation data of the mobile terminal 255 via user device 280. *Id.*; *see also* Ex. 1, ¶¶ 805-808. Instead, Dr. D'Andrade argued that Benco "expressly discloses" this feature. Ex. 1, ¶ 830. That statement is plainly false, and he should not be permitted to offer that opinion at trial.

  **E.**   **Even if Dr. D'Andrade's opinion is not excluded under Rule 702, the Court should grant partial summary judgment on Dr. D'Andrade's theory of Benco for limitation 1[k].**

Regardless of whether the Court excludes Dr. D'Andrade's opinion under *Daubert*, summary judgment is appropriate under these circumstances. As shown above, there can be no

genuine dispute of fact that Benco ***does not*** expressly disclose a thermostat that receives a geolocation of the mobile terminal, which blatantly contradicts Dr. D'Andrade's only theory of Benco for limitation 1[k]. Ex. 1, ¶ 830. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, … a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007). For example, when an expert's "reading of the prior art is contradicted by the art itself," then the expert's "testimony thus does not raise genuine issues of material fact." *NantKwest, Inc. v. Lee,* 686 F. App'x 864, 874 (Fed. Cir. 2017) (affirming grant of summary judgment).

The facts at hand warrant summary judgment under the standard articulated in *NantKwest.* Here, Dr. D'Andrade's assertion that Benco "expressly discloses that the thermostat therein receives a geolocation of the mobile terminal via a user device" is contradicted by Benco itself. *See, e.g.*, Ex. 2 (Benco), ¶¶0020, 0040, 0042, 0046. Accordingly, his testimony "does not raise genuine issues of material fact." *NantKwest,* 686 F. App'x at 874. While ecobee may argue that there is a factual dispute about what Benco discloses, that is simply incorrect. There can be no *genuine* dispute of fact because Dr. D'Andrade's theory is directly contradicted by Benco. The Court should therefore grant partial summary judgment that limitation 1[k] of the '890 patent is not disclosed under Dr. D'Andrade's theory of Benco as articulated in paragraph 830 of his report.

### III.  CONCLUSION

For the foregoing reasons, EcoFactor respectfully requests that the Court (1) issue an Order striking the portion of Dr. D'Andrade's report that relies on Benco to show limitation 1[k] of the '890 patent, which appears in paragraph 830 of his expert report, and (2) issue an Order granting partial summary judgment that limitation 1[k] of the '890 patent is not disclosed under Dr. D'Andrade's theory of Benco as articulated in paragraph 830 of his report.

Date: December 30, 2022                    Respectfully submitted,

/s/ Reza Mirzaie
Reza Mirzaie
Marc A. Fenster
Kristopher Davis
James Pickens
Minna Chan
Jason Wietholter
**Russ August & Kabat**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474

Matthew D. Aichele
**Russ August & Kabat**
800 Maine Ave SW, Suite 200
Washington, DC. 20024
Telephone: (202) 664-0623

*Attorneys for Plaintiff EcoFactor, Inc.*

## CERTIFICATE OF CONFERENCE

I certify that my firm, including my colleagues James Pickens and Kris Davis, conferred with Defendant's counsel regarding the foregoing Motion on Wednesday, December 28, 2022, following email correspondence identifying the proposed relief. Defendant's counsel confirmed that their client opposes the requested relief.

/s/ Reza Mirzaie

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on December 30, 2022, with a copy of this document via the Court's CM/ECF.

/s/ Reza Mirzaie