PUBLIC VERSION

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC., | |
| Plaintiff, | Case No. 6:20-cv-00078-ADA |
| v. | **JURY TRIAL DEMANDED** |
| ECOBEE, INC., | |
| Defendant. | |
| ECOFACTOR, INC., | |
| Plaintiff, | Case No. 6:21-cv-00428-ADA |
| v. | **JURY TRIAL DEMANDED** |
| ECOBEE, INC., | **LEAD CASE** |
| Defendant. | ████████████ |

**PLAINTIFF ECOFACTOR, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE EXPERT OPINIONS CONCERNING INFRINGEMENT AND VALIDITY**

## TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 1

A.   ecobee Had Sufficient Notice Of EcoFactor's Infringement Theory Regarding
     Autopilot—Mr. de la Iglesia's Opinions Should Not Be Struck. ................................ 1

     1.   EcoFactor consistently accused Autopilot of infringing claim element 1[l], by
          accusing ecobee's geofencing capabilities for controlling thermostat settings
          and by including specific references to Autopilot. ............................................ 1

     2.   Discovery between the parties made clear that Autopilot is accused. ................ 3

     3.   ecobee attempts to mislead the Court by arguing that Autopilot is not a
          thermostat feature. ........................................................................................ 8

     4.   The *Biscotti* factors do not support ecobee's motion to strike. ......................... 9

B.   ecobee Had Sufficient Notice Of EcoFactor's Doctrine Of Equivalents Theories—Mr.
     Zeidman's Opinions Should Not Be Struck. ............................................................ 10

C.   ecobee Had Sufficient Notice Of EcoFactor's Objective Indicia Of Non-Obviousness
     Theories—Dr. Palmer's Opinions Should Not Be Struck. ......................................... 11

     1.   EcoFactor's interrogatory response disclosed its contentions regarding
          secondary considerations, and its rebuttal expert's opinions are consistent with
          those contentions. ......................................................................................... 12

     2.   ecobee never requested that EcoFactor identify specific documents or evidence
          in support of its contentions, and EcoFactor was not required to do so, as noted
          in *Pisony*. ................................................................................................... 14

     3.   Under the *Biscotti* Factors, the sanction of striking Dr. Palmer's opinions is not
          warranted. ................................................................................................... 16

          a.   EcoFactor did not fail to supplement its responses, but in any event,
               ecobee's failures necessitated Dr. Palmer's opinions. .............................. 16

          b.   Secondary considerations evidence is of paramount importance and must
               be considered. ....................................................................................... 17

          c.   ecobee suffered no prejudice. .................................................................. 18

          d.   The fourth *Biscotti* factor does not weigh in ecobee's favor. ..................... 19

D.   ecobee Had Sufficient Notice Of EcoFactor's Infringement Theory Regarding HVAC
     Minimum Off Times—Mr. De La Iglesia's Opinions Should Not Be Struck. ............... 19

III. CONCLUSION ................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010).................................................................................. 1

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997)...................................................................................................... 4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)........................................................................................ 2

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)................................................................................ 2, 4

*Mformation Techs., Inc. v. Rsch. in Motion Ltd.*,
  No. C 08-04990 JW, 2012 WL 2339762 (N.D. Cal. June 7, 2012)............................ 6

*ProTradeNet, LLC v. Predictive Profiles, Inc.*,
  No. 6:18-CV-00038-ADA, 2019 WL 6499488 (W.D. Tex. Oct. 11, 2019)............... 4

*Uniloc U.S.A. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011).................................................................................... 1

**Rules**

Federal Rule of Evidence 702.......................................................................................... 1

## I.     INTRODUCTION

ecobee asks the Court to strike the opinions of EcoFactor's experts, but the infringement and validity theories it challenges were properly disclosed in EcoFactor's contentions. As detailed below, the facts show that ecobee had more than adequate notice of these positions and suffered no prejudice whatsoever. ecobee's motion to strike should be denied in its entirety.

## II.    ARGUMENT

### A.     ecobee Had Sufficient Notice Of EcoFactor's Infringement Theory Regarding Autopilot—Mr. de la Iglesia's Opinions Should Not Be Struck.

ecobee's motion targeting Autopilot is a dishonest attempt to strike a properly disclosed infringement theory. Each of the below facts alone, but especially together, show ecobee is wrong:

- EcoFactor has consistently accused ecobee's geofencing capabilities that control thermostat settings, an example of which is Autopilot;

- EcoFactor's infringement contentions and even its complaint specifically reference Autopilot in the context of claim element 1[l] of the '890 patent;

- EcoFactor's first requests for production served months before the close of fact discovery specifically included Autopilot in the definition of "Accused Feature or Functionality";

- ecobee provided discovery responses, source code, and deposition testimony specifically about Autopilot because it was within the scope of EcoFactor's infringement case; and

- ecobee even tried to convince EcoFactor to settle out the '890 patent by assuming that *only* Autopilot was accused of infringement.

ecobee is feigning ignorance, and its arguments are belied by the facts. Its motion should be denied.

### 1.     EcoFactor consistently accused Autopilot of infringing claim element 1[l], by accusing ecobee's geofencing capabilities for controlling thermostat settings and by including specific references to Autopilot.

The record shows that EcoFactor has consistently accused of infringement ecobee's geofencing capabilities that are used to control thermostat settings.[1] ecobee provides such

---

[1] Geofencing generally involves (1) creating a "virtual perimeter for a real-world geographic area,"

geofencing functionality in various ways, one example of which is Autopilot. Some of ecobee's geofencing features can only be used to control a thermostat, but Autopilot can be used to control both the user's thermostat and the user's home security system provided by ecobee. ecobee attempts to mislead the Court by recasting Autopilot as being limited to home security and having nothing to do with thermostat control, but that is plainly wrong, as explained further below.

In EcoFactor's April 28, 2021 complaint, EcoFactor alleged for claim element 1[l] of the '890 patent that ecobee "receive[s] geo-positioning data from customer mobile devices to provide **geofencing capabilities**, which include automatically adjusting temperature values (e.g., inside temperature setpoint for the customer's home) by initiating heating or cooling cycles for the HVAC system when the geo-positioning data indicates that the customer is away from the home." Dkt. No. 1-8 at 56. EcoFactor did not limit the scope of the accused geofencing capabilities to exclude Autopilot. In fact, the third item of exemplary evidence that EcoFactor pointed to specifically referred to "the Autopilot option" for geofencing:

**How to Enable Geofencing:**

**NOTE:** You will not see a "Thermostat Geofence" option in the app if you have any of the following:

- A Haven subscription and/or a SmartCamera with voice control
  - (In these instances, the Autopilot option is available via the ecobee app)
- An iOS device
  - (Geofencing via iOS is done via HomeKit and requires a HomeKit hub)

*Id.* at 59 (annotated) (excerpting ecobee webpage on geofencing).

In its final infringement contentions (served May 10, 2022), EcoFactor maintained these same allegations for claim 1[l], included the same evidence referring to Autopilot, and cited

---

(2) using "a location-aware device" (e.g., a mobile phone with location awareness) to identify when the "user [is] entering or exiting a geofence," and (3) initiating some type of action based on that geofence entrance or exit. *See* Ex. A (https://en.wikipedia.org/wiki/Geo-fence). Geofencing is commonly used to provide various "smart home" capabilities based on occupancy detection, such as location-based triggering of thermostats, security systems, and lighting.

additional evidence referring to Autopilot and how it relates to control features for ecobee thermostats (e.g., Smart Home/Away, Smart Recovery):

**Does the camera work with existing smart features (Smart Home/Away, Smart Recovery, etc)**

The SmartCamera with voice control improves the **Autopilot** feature, further enhancing the eco+ experience.

Ex. B at 118, 121, 180 (annotated) (excerpting ecobee webpage discussing Autopilot). In addition, EcoFactor cited evidence referring to Autopilot with respect to claim element 1[d] and dependent claim 4 (omitted from ecobee's excerpted exhibit), only further demonstrating that Autopilot was well within the scope of EcoFactor's infringement case. *Id.* at 16 (claim 1[d]), 265 (claim 4).

EcoFactor's complaint and infringement contentions made clear that EcoFactor is accusing geofencing-based control of thermostat settings. It is immaterial that ecobee also uses Autopilot for geofencing-based control of home security systems—because this does not change the fact that ecobee also uses Autopilot for geofencing-based control of thermostat settings (as accused). And, as explained above, EcoFactor has cited evidence specifically referencing Autopilot in every claim chart it produced in this case, including with the complaint and including specifically as to claim element 1[l] (among others). This alone is dispositive.

       **2.**    **Discovery between the parties made clear that Autopilot is accused.**

Even setting aside EcoFactor's complaint and infringement contentions, discovery between the parties also plainly showed that both sides understood Autopilot to be accused of infringement, providing objective evidence that EcoFactor's contentions were not deficient.

For example, EcoFactor's first set of requests for production ***specifically listed "AutoPilot" in EcoFactor's definition of "Accused Feature or Functionality"*** and characterized it as a feature "identified by EcoFactor during this action through discovery or correspondence (including but

not limited to EcoFactor's Infringement Contentions)." Ex. C (First RFPs) ¶ 13.[2] ecobee did not respond by objecting that Autopilot was not an accused feature—neither formally in its RFP objections and responses, nor informally by email or any other communication to EcoFactor. *See* Ex. D (ecobee Resp. to First RFPs). Similarly, ecobee did not object to this same definition in EcoFactor's second and third sets of RFPs. *See* Ex. E (Second RFPs) ¶ 13; Ex. F (ecobee Resp. to Second RFPs); Ex. G (Third RFPs) ¶ 13; Ex. H (ecobee Resp. to Third RFPs). As another example, RFP No. 74 specifically addressed Autopilot as follows:

> **REQUEST NO. 74**
>
> For each Accused Product, produce all technical documents, Source Code, software algorithms, software design documents, state diagrams, circuit diagrams, specifications, service manuals, user manuals, website instructions, help articles, and troubleshooting guides relating to how ecobee's Autopilot feature interacts with ecobee's Smart Home/Smart Away features, including but not limited to how Autopilot relates to geofencing as part of Smart Home/Smart Away.

Ex. G (Third RFPs) at 13 (annotated). ecobee responded only with boilerplate—not an assertion that Autopilot had not been accused of infringement. Ex. H (ecobee Resp. to Third RFPs).

Even more stark is ecobee's conduct with respect to **Interrogatory No. 22**, which plainly shows that ecobee understood Autopilot to be within the scope of the accused geofencing capabilities. ecobee responded to that interrogatory, which was not limited to Autopilot and did not even mention it, by providing Autopilot-specific usage data.[3] The interrogatory requested "the

---

[2] All emphasis in quoted material has been added unless otherwise noted.

[3] EcoFactor's interrogatories did not specifically call out Autopilot in the definition of Accused Feature or Instrumentality, which only further illustrates that ecobee rightly understood that the definition's references to "geofencing" and "occupancy detection" encompassed Autopilot. Again, ecobee uses geofencing as a way to detect home occupancy, and Autopilot is one form of this that ecobee uses to control thermostat settings (e.g., by switching to a more energy-efficient setpoint temperature when the user's location-aware mobile device is outside the geofence).

number of ecobee customers in the United States since six years prior to the filing of the Complaint who have had any Smart Home / Smart Away features enabled … such that the features could be used by the customer's ecobee thermostat, including but not limited to the number of ecobee customers who have had *geofencing for Smart Home/Away* enabled." Ex. I (ecobee Verified Resp. to First ROGs) at 43. After initially providing no substantive response to this or any other interrogatory, ecobee supplemented its response with a number of customers who "have enabled Smart Home/Smart Away," ignoring that the interrogatory included a specific request for the number of customers who have enabled "geofencing for Smart Home/Away.". After EcoFactor pointed out this deficiency by letter, ecobee provided a second supplemental response stating that

" ███████████████████████████████████████████████." *See id.*

at 44; Ex. J (EcoFactor Ltr.) at 2. In fact, ecobee suggested to EcoFactor in a September 26, 2022, teleconference that EcoFactor should *settle the '890 patent out of the case* because ████████████

████████████████████████████. Davis Decl. ¶ 2.

Three days later, ecobee 30(b)(6) Kevin Banderk was questioned at deposition about how this number was determined and stated that it referred to customers who had "*autopilot* enabled":

> Q. Okay. In -- on Page 43, there's a heading "Second Supplemental Response to Interrogatory No. 22." Do you see that?
>
> A. Yes.
>
> Q. And then starting the last word in Page 43 and running over to Page 44, it says " ███████████████████████████████████████████ Do you know how that number, was determined?
>
> A. I spoke to a colleague who explained it was pulled from ████████ ██████████████████████.[4]

---

[4] Mr. Banderk was also asked about an email he wrote that used the phrase "Autopilot/geo-fencing" and stated that "[his] understanding is geofencing is a component of autopilot." *Id.* at 42:5-16.

Ex. K (Banderk Tr. at 51:9-24). After Mr. Banderk's deposition, EcoFactor wrote to ecobee to point out that Interrogatory No. 22 was not limited to Autopilot only, such that ecobee should provide additional usage data for other forms of geofencing. Ex. L (10/3/2022 EcoFactor Email). This prompted ecobee's third supplemental response, in which ecobee represented that "



" and modified its prior response to state that "

." Ex. I (ecobee Verified Resp. to First ROGs) at 44 (emphasis in original).

Even if the Court were to consider only the facts on Interrogatory No. 22, ecobee's filing of this motion is beyond absurd. Not only did EcoFactor respond to EcoFactor's discovery request with Autopilot usage data, ecobee then contacted EcoFactor to discuss settling out the '890 patent based on the (false) presumption that EcoFactor's infringement assertions were limited to **Autopilot only**. In other words, EcoFactor tried to mislead EcoFactor into dropping the '890 patent by wrongly assuming that EcoFactor was *only* accusing Autopilot and is now trying to mislead this Court into thinking that Autopilot was *never* part of EcoFactor's infringement case. Denial of ecobee's motion is the minimum sanction warranted for such conduct.

ecobee's response to **Request for Admission No. 31** also shows ecobee understood Autopilot to be within the scope of EcoFactor's infringement case. EcoFactor requested that ecobee "[a]dmit that ecobee's Enhanced Smart Away feature utilizes geolocation information." Ex. M (ecobee Resp. to First RFAs, served without page numbers). ecobee responded by

████████████████████████████████████████████████████████████

███████████████████████████████. The relationship between Enhanced Smart Away and Autopilot is further discussed in the next section.

As yet another example, ecobee permitted **hours of deposition questioning on Autopilot** without asserting that Autopilot had not been accused of infringement—and such testimony further confirmed that ecobee produced and EcoFactor's expert printed **numerous source code files related to Autopilot**. *See, e.g.*, Ex. N (10/5/2022 Malchiondo Tr.) at 78:18-79:21 (in response to EcoFactor raising concerns about ecobee's thermostat firmware source code 30(b)(6), Mark Malchiondo, obfuscating as to Autopilot, ecobee's counsel asserted that Autopilot questions about server source code would be handled by another witness and stated that "if you want to ask in firmware what the specific variables that refer to autopilot -- you know, what they are, you can ask [Mr. Malchiondo] that"); *id.* at 58:14-59:8, 74:17-76:10, 83:19-84:11 (testifying about ████████████ source code file and its use of the "████████" variable, as well as Mr. Malchiondo's understanding of how Autopilot relates to Enhanced Smart Away, which he agrees is implemented in that same source code file); Ex. O at index (showing "Autopilot" being explicitly referenced several dozen times throughout deposition of ecobee's 30(b)(6) on server-side source code, Alan Hietala); *id.* at 106:17-107:5 (confirming that source code file produced by ecobee and printed by EcoFactor's infringement expert ██████████████████████████████████████ ██████████████████); *id.* at 108:7-13 (confirming that another such file "is specific to the autopilot implementation"). If ecobee truly thought that Autopilot was outside the scope of EcoFactor's infringement case—as its motion asserts—it is hard to understand why ecobee produced numerous source code files that are specific to Autopilot geofencing and prepared multiple source code witnesses to testify for hours about Autopilot functionality.

   **3.     ecobee attempts to mislead the Court by arguing that Autopilot is not
            a thermostat feature.**

ecobee's repeated assertions that Autopilot is not a thermostat feature are, if not outright

false, extremely misleading. *See* Mot. at 7, 15. For example, the following screenshots of ecobee's

mobile app explain how Autopilot geofencing enhances the ability of a customer's thermostat to

switch to a more energy-efficient temperature setting when the customer is outside the geofence:



Mot. Ex. 5 (Iglesia Rpt.) at 480. If Autopilot geofencing indicates the customer is away, it runs

███████████████████████ what ecobee calls "Enhanced Smart Away," which—consistent

with the mobile app description—plainly relates to thermostat control. Mr. Hietala explained:

   Q. Is there a relationship between Enhanced Smart Away and autopilot?

   A. Yes.

   Q. What is that?

   A. If autopilot receives confirmation from the user, then it will disarm the system
   **and** then run other automation such as **Enhanced Smart Home and Away**.

   Q. And so if a user confirms with autopilot that they are away from the home, will
   Enhanced Smart Away **change the temperature setting** of the customer's home
   to an away setting?

        MR. LUBEZNY: Objection. Form. Foundation. Incomplete hypothetical.

THE WITNESS: If the autopilot confirms with the user, then **yes**, it can change the Smart Home and Away setting. Enhanced Smart Home and Away.

Ex. O (Hietala Tr.) at 95:23-96:13; *see also id.* at 129:25-130:8 (to Mr. Hietala's knowledge,

██████████████████████████████████████████████); Ex. N (10/5/2022 Malchiondo

Tr.) at 105:10-107:5, 116:18-118:15 (███████████████████████████████████

██████████████████████████████); Ex. P (9/9/2021 Malchiondo Tr.) at

302:2-17 ("enhanced" aspect of "enhanced smart away" refers to "██████████████████

████████████████"); Ex. Q (Meeting Notes) at ecobee-WDTXII_00001561 (referring

to "██████████████████████████" as "█████████████████████████").

### 4.     The *Biscotti* factors do not support ecobee's motion to strike.

The *Biscotti* factors also do not support ecobee's motion. *See Biscotti, Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 WL 2267283, at *2 (E.D. Tex. May 24, 2017) ("*Biscotti*"). As to the first factor, there was no untimeliness in EcoFactor's expert opinion, as detailed above. As to the second factor, Mr. de la Iglesia's opinion on Autopilot is very important, as it bears directly on the issue of infringement, a burden issue for EcoFactor.

As to the third factor (prejudice), ecobee asserts that it was deprived of "the opportunity to conduct discovery into this infringement theory" (Mot. at 16-17) but that is plainly wrong for the reasons described above. ecobee's conduct throughout discovery—including its source code production, witness preparation, and discovery responses—is consistent with Autopilot being within the scope of EcoFactor's infringement case. Indeed, as detailed above, ecobee tried to convince EcoFactor to settle out the '890 patent under the assumption that *only* Autopilot geofencing was accused. ecobee further argues that it could have searched for additional prior art related to "smart security technologies." Mot. at 17. Nothing prevented ecobee from doing so from the outset of the case. ecobee knew that geofencing capabilities were accused since the filing of

the complaint, and it was free to raise any geofencing-related prior art in support of its invalidity case. ecobee presumably chose to focus its efforts on thermostat art because, after all, the asserted claims are directed to smart thermostat technologies.

Moreover, ecobee's failures in discovery forced EcoFactor to raise these issues with the Court in the lead-up to expert reports, which ultimately resulted in the opening expert report deadline being postponed by 20 days (Oct. 18 to Nov. 7). At no point before, during, or after that period has ecobee ever raised any supposed need or desire to search for smart security prior art. If ecobee thought it had been ambushed by a late-disclosed infringement theory, surely that 20-day period (if not earlier) would have been a natural time to raise this issue. ecobee's failure to do so is telling and belies its false narrative.

As to the fourth factor, there was no prejudice to ecobee and, if there were any, it was self-inflicted. Thus, a continuance is not warranted and this factor does not weigh in ecobee's favor.

ecobee had ample notice of EcoFactor's infringement theories; its motion should be denied.

## B.   ecobee Had Sufficient Notice Of EcoFactor's Doctrine Of Equivalents Theories—Mr. Zeidman's Opinions Should Not Be Struck.

ecobee also argues certain of Mr. Zeidman's Doctrine of Equivalents ("DOE") opinions must be struck. Mot. at 17-18. These arguments are similarly unsupported.

It is undisputed that EcoFactor's contentions provided notice that EcoFactor contended DOE infringement for all claim elements. *See* Mot. Ex. B at 4 ("To the extent literal infringement of a claim element is not found, EcoFactor also contends that the claim element is infringed or has been infringed under the Doctrine of Equivalents."). While ecobee characterizes this as improper "boilerplate," it cites no authority from this District establishing that such a disclosure is improper. *See* Mot. at 9. Instead, ecobee points exclusively to cases from the Eastern District of Texas, which requires a specific identification of "[w]hether each element of each asserted claim is claimed to

be literally present or present under the doctrine of equivalents in the Accused Instrumentality." *See* E.D. Tex. P.L.R. 3-1. This is not a rule of this District, nor is it a requirement of the Court's Standing Order Governing Proceedings in Patent Cases.

Given ecobee's vague (and at times inaccurate) response to EcoFactor's Interrogatory No. 3 seeking ecobee's non-infringement contentions, it would be unreasonable to expect EcoFactor to head off all possible non-infringement arguments ecobee might raise with detailed DOE counterarguments. ecobee identifies no law or rule imposing such a requirement, nor does ecobee specify legitimate prejudice resulting from the timing of Mr. Zeidman's opinions—only vague assertions about how it "would have conducted additional prior art searches" on unspecified topics. Mot. at 18. These arguments cannot support the relief ecobee seeks, given that the purpose of contentions is to streamline discovery and EcoFactor disclosed its intent to rely upon the Doctrine of Equivalents. *See, e.g.*, *Pisony v. Commando Constructions, Inc.*, Case No. 6:17-cv-00055-ADA, 2020 WL 4934463, at *4 (W.D. Tex. Aug. 24, 2020) ("*Pisony*").

### C.   ecobee Had Sufficient Notice Of EcoFactor's Objective Indicia Of Non-Obviousness Theories—Dr. Palmer's Opinions Should Not Be Struck.

ecobee argues that Dr. Palmer's "opinions regarding the secondary considerations of long-felt need, failure by others, and industry skepticism for the '890 Patent … should be stricken as unjustifiable and prejudicial" because Dr. Palmer's report contained purportedly "new and untimely opinions" that were not contained in EcoFactor's response to ecobee's Interrogatory Number 17. Mot. at 12-13, 18-19. However, this is incorrect because (1) this Court's precedent makes clear that EcoFactor *surpassed* its disclosure obligations regarding EcoFactor's theories of secondary considerations, (2) the purported issues ecobee raises in its motion are ***directly contrary*** to very case law ecobee relies upon, and, (3) ecobee's failure to crystallize its theories of invalidity

and belated complaints about purported deficiencies with EcoFactor's interrogatory response and expert report do not justify striking EcoFactor's expert's rebuttal opinions.

> 1.   **EcoFactor's interrogatory response disclosed its contentions regarding secondary considerations, and its rebuttal expert's opinions are consistent with those contentions.**

This Court has explained: "For interrogatories typically answered in expert reports, the Court's usual practice is to ***allow a party to defer answering*** the interrogatory ***until the corresponding expert report is due***." *StratosAudio, Inc. v. Volvo Cars USA, LLC*, No. 6:20-CV-1129-ADA, 2022 WL 1261651, at *3 (W.D. Tex. Apr. 28, 2022). EcoFactor's interrogatory response explained as much to ecobee, both by objecting to the interrogatory as seeking premature disclosure of rebuttal expert opinions and by disclosing that EcoFactor would supplement with expert opinions. Mot., Ex. 16 (EcoFactor's Interrogatory Responses) at 36. Moreover, ecobee never complained about EcoFactor's stated intention to follow the Court's usual practice of deferring to disclose expert opinions on secondary indicia of non-obviousness until the expert report deadline.

Even so, EcoFactor ***surpassed*** this usual practice by providing a substantive and timely response to ecobee's Interrogatory Number 17. Indeed, ecobee admits that EcoFactor answered ecobee's contention interrogatory regarding secondary considerations well in advance of when EcoFactor's expert's report was due. *Compare* Mot., Ex. 16 at 45 (indicating service of responses to interrogatories occurred on September 9, 2022) *with* Mot. at 3 (indicating "[o]n October 4 and 7, 2022, EcoFactor served supplemental responses to ecobee's first set of interrogatories," and later "on December 6, 2022, EcoFactor served the Palmer Report"). Moreover, ecobee acknowledges that EcoFactor's interrogatory response disclosed its theories contending that each of the *Graham* factors relating to secondary considerations of non-obviousness applied to the '890 Patent, including industry praise, long-felt need, failure by others, industry skepticism, commercial

success, and copying. *See* Mot. at 8-10 (quoting ecobee's Interrogatory No. 17 and block-quoting a portion of EcoFactor's response specifically address long-felt need, failure by others, and industry skepticism); *see also* Mot., Ex. 16 at 36-40 (containing the full scope of EcoFactor's response). Notably, ecobee ***never*** raised issues with EcoFactor's interrogatory response during discovery. *See* Ex. R (Sept. 9, 2022 Letter from ecobee's Counsel) (failing to identify purported deficiencies regarding secondary considerations).

Dr. Palmer's rebuttal expert report includes opinions supporting the same theories disclosed in EcoFactor's interrogatory response. As ecobee notes, "Ultimately, '[t]he critical question in deciding whether to strike portions of an expert report ... ***is whether the expert has permissibly specified the application of a disclosed theory*** or impermissibly substituted a new theory altogether.'" Mot. at 13 (quoting *Pisony*, at *1 (internal citations omitted)). In *Pisony*, this Court denied a motion to strike because the same theories identified in the contentions were discussed in the expert report "regardless of if more specific evidence was introduced at a later point." *Pisony* at *4. Likewise here, ecobee was on notice that EcoFactor contends that the secondary considerations of long-felt need, failure by others, commercial success, and industry skepticism applied in connection with the validity of the '890 Patent, irrespective of the particular evidence relied upon.

Contrary to ecobee's assertion that "EcoFactor's response fails to disclose any theories of long-felt need, failure of others, or industry skepticism related to occupancy detection, geo-fencing, or even the '890 Patent at large" (Mot. at 12-13, 18), EcoFactor's response specifically refers ecobee to the "background sections of the Asserted Patents," and the background section of the '890 Patent discusses problems related to occupancy detection and geo-fencing. *See* Mot. at 11 (EcoFactor's response); '890 patent at 1:14-3:57 (Background section describing the problems

with using motion sensors to detect occupancy in single family homes, which requires the "installation of additional hardware" and involves "considerable expense" or "cannot reliably detect presence," and proposing as a solution to this long-felt need harnessing the "ability to geolocate the device" and use of "geospatial information in order to detect and predict occupancy"). Consistent with this response, Dr. Palmer opines that the '890 patent "describes long-felt needs as follows," quoting the background of the specification of the '890 Patent, just as EcoFactor identified in its response to ecobee's interrogatory. Ex. S (Palmer Rpt.) ¶¶ 800-802.

As another example, EcoFactor's response contends that "various experts and persons of ordinary (or extraordinary) skill were still trying to solve these problems years after the respective priority dates of the claimed invention." Repeating the same contention, Dr. Palmer's report discusses ecobee's own documents which indicate that "various experts and persons of ordinary (or even extraordinary) skill"—such as ecobee's own employees—"were still trying to solve [the problems identified in the '890 Patent] years after the respective priority dates of the claimed inventions at issue here." *See* Ex. S (Palmer Rpt.) ¶¶ 803-813. Dr. Palmer also provided opinions consistent with EcoFactor's interrogatory responses discussing the theories of commercial success and industry skepticism. *See generally id*. Dr. Palmer's opinions are thus entirely consistent with the contentions disclosed in EcoFactor's interrogatory response.

> ### 2.  ecobee never requested that EcoFactor identify specific documents or evidence in support of its contentions, and EcoFactor was not required to do so, as noted in *Pisony*.

ecobee asserts that Dr. Palmer's opinions should be stricken because EcoFactor's interrogatory response allegedly "did not cite any specific documents or evidence." Mot. at 18-19. Not so. ecobee conveniently chooses to ignore the plain text of the interrogatory, EcoFactor's objections, and this Court's precedent in *Pisony*. As an initial matter, ecobee's Interrogatory No. 17 did not request "documents or evidence," nor the factual bases for EcoFactor's contentions.

Mot. at 9-10. Rather, the interrogatory was limited to requesting that EcoFactor "identify each such secondary consideration and describe in detail EcoFactor's contentions with respect to each such secondary consideration." EcoFactor was under no obligation to disclose all documents or evidence that may support those contentions, including because ecobee did not ask for them.

Further, ecobee never took issue with EcoFactor's objections, including its objection that the interrogatory is "overbroad" and that it purports to require EcoFactor to "marshal all of its proof or any proof it intends to rely on at any hearing [or] trial." EcoFactor also specifically informed ecobee that it would be supplementing the interrogatory through its rebuttal expert opinions. EcoFactor explained that, "[t]hough the issue of obviousness is not EcoFactor's burden to carry, in the interest of full disclosure, it now provides its contentions regarding secondary considerations applicable to this case," and expressly reserved its rights to supplement with additional information and to "supplement these points with expert opinions." Mot., Ex. 16 at 36-37. ecobee ***never*** took issue with EcoFactor's objections and did not complain about EcoFactor's response. *See* Ex. R (Sept. 9, 2022, Letter from ecobee's Counsel) (failing to identify purported deficiencies regarding EcoFactor's response to Interrogatory Number 17).

Even if ecobee's interrogatory had requested documents or evidence, this Court noted in *Pisony* that "contentions '***need not disclose "specific evidence***.""" *Pisony* at *1. In analyzing the arguments in *Pisony*, this Court explicitly stated, "[i]nvalidity ***contentions do not need to disclose specific evidence*** as the invalidity contentions 'are not meant to provide a forum for litigation of the substantive issues.'" *Id.* at *4 (internal citations omitted). "Moreover, ***expert reports may contain information not found within the invalidity contentions without changing the disclosed theories of invalidity***." *Id.* As ecobee admits, Dr. Palmer's expert report included the same theories disclosed in EcoFactor's interrogatory response. This Court ultimately denied Plaintiff's motion

to strike in *Pisony*, holding "***Plaintiff was on notice***" about defendants' theories, "***regardless of if more specific evidence was introduced at a later point***." *Id.* So too here did EcoFactor's interrogatory response place ecobee on notice of its theories, regardless of the evidence later raised in support. The Court should therefore deny ecobee's motion because EcoFactor exceeded its disclosure requirements and ecobee's motion is directly contrary to this Court's precedent.

### 3.   Under the *Biscotti* Factors, the sanction of striking Dr. Palmer's opinions is not warranted.

None of the *Biscotti* factors demand the extreme sanction of striking Dr. Palmer's rebuttal opinions regarding secondary considerations of non-obviousness, especially in light of ecobee's failure to crystallize its theories of invalidity and its delay in raising any purported deficiencies.

### a.   EcoFactor did not fail to supplement its responses, but in any event, ecobee's failures necessitated Dr. Palmer's opinions.

The first *Biscotti* factor relates to "the offending party's explanation for the untimeliness." *Biscotti* at *2. As discussed above, EcoFactor's interrogatory responses are not deficient (they surpass this Court's usual practices). But even if they were deficient, any such deficiency (which ecobee never complained of) was caused by ecobee's failure to identify its obviousness theories.

Indeed, ecobee failed to identify any specific obviousness theories that it now relies upon in its invalidity contentions. Instead, ecobee provided only boilerplate assertions that "it would have been obvious to combine ***any*** of the prior art in Exhibits A-1 to A-47 and B-1 to B-17." Ex. T (ecobee's Final Invalidity Contentions) at 12.[5] Considering only ecobee's claim-by-claim charts (the "A" exhibits) related to the '890 patent, ecobee purported to assert more than 100 two-reference combinations and more than 450 three-reference combinations. Each combination would

---

[5] While ecobee argues that its claim-by-claim charts indicate that claims "of the '890 patent are anticipated and/or rendered obvious by the [reference] alone or in combination with any of the other references identified in these contentions," this same, boilerplate language appears in each and every one of ecobee's claim-by-claim charts.

result in unique secondary considerations based on each reference's discrete disclosures and alleged priority date. For example, combining ecobee's reference in A-36 with the alleged priority date of 1984 with ecobee's reference in A-43 with the alleged priority date of 2015—a gap of more than 30 years—would result in a very different analysis than analyzing a single-reference obviousness theory. ecobee's "B" charts provide no additional clarity. While ecobee contends that "each ['B' chart is] *specific to a limitation* in one or more of the asserted claims," none of those charts allege how an entire claim is invalid based on a particular combination of the references.

It was not until November 7, 2022, that ecobee identified obviousness combinations in the expert report of Dr. D'Andrade. Mot. at 11. In response, and in accordance with this Court's practices, EcoFactor served Dr. Palmer's rebuttal report, which rebutted the obviousness opinions first identified in Dr. D'Andrade's expert report. Thus, any purported untimeliness was necessitated by ecobee's own delay in crystallizing its invalidity theories. *See* Mot. at 12 (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, Inc., 467 F.3d 1355, 1364 (Fed. Cir. 2006)).

### b.  Secondary considerations evidence is of paramount importance and must be considered.

Factor two relates to "importance of the … evidence that might be excluded." *Biscotti* at *2. Evidence of secondary considerations is of paramount importance to the public's interest in the validity of a patent. "It is the secondary considerations that are often the ***most probative and determinative*** of the ultimate conclusion of obviousness or nonobviousness." *Pro-Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996). The Federal Circuit has "repeatedly held that evidence relating to all four Graham factors—including objective evidence of secondary considerations—***must be considered*** before determining whether the claimed invention would have been obvious to one of skill in the art at the time of invention." *Apple Inc. v. Int'l Trade Comm'n*, 725 F. 3d 1356, 1365 (Fed. Cir. 2013). Indeed, a "determination

of whether a patent claim is invalid as obvious under § 103 ***requires consideration of all four Graham factors***, and it is error to reach a conclusion of obviousness until all those factors are considered." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1048 (Fed. Cir. 2016) (*en banc*).

Other courts have stated: "It bears emphasis that exclusion of 'critical evidence,' such as an expert report on infringement, is an 'extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.'" *Abbott Labs. v. Lupin Ltd.*, No. CIV.A. 09-152-LPS, 2011 WL 1897322, at *3 (D. Del. May 19, 2011) (internal citations omitted). Thus, the importance of the evidence is of paramount importance to the issues here and the critical evidence should not be excluded here because ecobee points to no egregious conduct such as that found in *Abbott Laboratories*.

### c. ecobee suffered no prejudice.

As to the third *Biscotti* factor, ecobee fails to show it has suffered any prejudice. *Innovation Scis., LLC v. Amazon.com, Inc*., No. 4:18-CV-474, 2020 WL 4201860, at *2 (E.D. Tex. July 22, 2020) (denying motion to strike where movant failed to show prejudice). Indeed, ecobee's actions prior to bringing this motion suggested that it was content with EcoFactor's interrogatory response and validity expert report, because ecobee never complained until now. *See* Section II.C.2. ecobee also never sought leave to submit a reply expert report. *See Sanofi-Aventis v. Barr Labs., Inc.*, 598 F. Supp. 2d 632, 637-38 (D.N.J. 2009). And while ecobee cites *Semcon* in support , the interrogatory in *Semcon* called for the "factual" basis for secondary considerations, while the interrogatory here did not. *Semcon IP Inc. v. MediaTek Inc.*, No. 2:16-cv-00437-JRG-RSP, 2018 WL 4501871, at *4 (E.D. Tex. Feb. 28, 2018)). Additionally, the Plaintiff in *Semcon* did not even indicate whether it "would rely on secondary considerations at all." *Id.* It also dealt with facts that the party "already had knowledge of." ecobee's reliance on *Pavo Solutions LLC* is also misplaced. *See* Mot. at 19. Here, EcoFactor surpassed its disclosure requirements by identifying its theories

18

in its interrogatory response. And, as discussed above, ecobee did not identify any obviousness combinations until its invalidity expert report. Only then was EcoFactor able to know which evidence to marshal to rebut ecobee's particular obviousness theories. *See* Section II.C.3.a. And, in any event, many of those documents include ecobee's ***own*** documents. *Id.* Thus, any prejudice suffered by ecobee was self-inflicted.

> ### d.   The fourth *Biscotti* factor does not weigh in ecobee's favor.

The fourth factor concerns "the availability of a continuance to cure any prejudice." *Biscotti* at *2. As discussed in connection with factor 3, to the extent ecobee suffered any prejudice, it was self-inflicted. Thus, a continuance is not warranted.

> ### D.   ecobee Had Sufficient Notice Of EcoFactor's Infringement Theory Regarding HVAC Minimum Off Times—Mr. De La Iglesia's Opinions Should Not Be Struck.

ecobee's motion targeting the '100 patent should be denied. Mr. de la Iglesia has presented opinions of infringement on the exact same products and features charted in EcoFactor's infringement contentions. ecobee has known throughout discovery which products are accused and which features are at issue. ecobee can articulate no prejudice from receiving Mr. de la Iglesia's report, which addresses the same infringement theories for the same products and features charted in EcoFactor's contentions. Of course, Mr. de la Iglesia's report is more detailed than the contentions, but that is no basis for wholesale exclusion of his opinions.

EcoFactor's contentions detailed how each asserted claim limitation maps to the accused features. There can be no dispute that the contentions accuse the same ecobee products and features addressed in Mr. de la Iglesia's report. The '100 patent claims recite a system with at least two compressor delay intervals, wherein a processor calculates a predicted rate of change in inside temperature in response to outside temperature, and selects one of the compressor settings based on evaluating the predicted rate of change in response to the outside temperature. EcoFactor's

contentions accuse ecobee's smart thermostats, and their "eco+" features, of infringement because these features select compressor delay settings based on a predicted rate of change in inside temperature in response to outside temperature. "eco+" refers to a specific subset of smart thermostat features that includes "Community Energy Savings" and "Time of Use." These features change compressor settings to provide additional energy savings to customers via customized settings that are based on what ecobee learns about a customer's specific home and HVAC system. Mr. de la Iglesia accuses the same products and the same eco+ features, specifically Time of Use optimization and Community Energy Savings optimization. Ex. U (de la Iglesia Rpt.) ¶¶ 91, 473-474, 605, 611.

The details of Mr. de la Iglesia's mappings also match EcoFactor's contentions. The contentions clearly map the "predicted rate of change" to ecobee's ███████████████ used for the Time of Use and Community Energy Savings features, which ██████████████████████████████████████████████████. And they clearly accuse the compressor settings that change during the period of time when these features are implementing customized programming for users based on ████████████████████████████████████████████████████████. *See, e.g.*, Ex. V (EcoFactor's Preliminary Infringement Contentions regarding the '100 Patent); *see also, e.g.*, Ex. W (EcoFactor's Final Infringement Contentions regarding the '100 Patent). Accordingly, ecobee's motion as to the '100 patent should be denied.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny ecobee's motion in its entirety. The opinions of Mr. de la Iglesia, Mr. Zeidman, and Dr. Palmer should not be struck.+

Date: January 13, 2023                    Respectfully submitted,


                                          */s/ Reza Mirzaie*
                                          Reza Mirzaie
                                          Marc A. Fenster
                                          Kristopher Davis
                                          James Pickens
                                          Minna Chan
                                          Jason Wietholter
                                          **Russ August & Kabat**
                                          12424 Wilshire Boulevard, 12th Floor
                                          Los Angeles, CA 90025
                                          Telephone: (310) 826-7474

                                          Matthew D. Aichele
                                          **Russ August & Kabat**
                                          800 Maine Ave SW, Suite 200
                                          Washington, DC. 20024
                                          Telephone: (202) 664-0623


                                          *Attorneys for Plaintiff EcoFactor, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on January 13, 2023, with a copy of this document via the Court's CM/ECF.

*/s/ Kristopher R. Davis*
Kristopher R. Davis