# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ECOBEE, INC.,<br><br>　　　　Defendant. | Case No. 6:20-cv-00078-ADA<br><br>**JURY TRIAL DEMANDED** |
| ECOFACTOR, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ECOBEE, INC.,<br><br>　　　　Defendant. | Case No. 6:21-cv-00428-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>**LEAD CASE** |

**DEFENDANT'S OPPOSITION TO PLAINTIFF ECOFACTOR, INC.'S MOTION FOR SUMMARY JUDGMENT OF DEFENDANT ECOBEE, INC'S AFFIRMATIVE DEFENSES**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

    A. EcoFactor's Motion for Summary Judgment on the Issue of Enablement Under 35 U.S.C. § 112 Should Be Denied ............................................................ 2

    B. EcoFactor's Motion for Summary Judgment on Invalidity Under 35 U.S.C. § 101 Should Be Denied ............................................................................ 4

    C. EcoFactor's Motion for Summary Judgment on Laches and Waiver Should Be Denied ............................................................................................... 5

    D. EcoFactor's Motion for Summary Judgment on Unclean Hands and Patent Misuse Should Be Denied ..................................................................................... 8

    E. ecobee Maintains Its Right to Appeal This Court's Determinations as to Indefiniteness ..................................................................................................... 13

    F. ecobee Maintains Its Right to Raise Issues of Estoppel and Preclusion ............. 13

II. CONCLUSION ............................................................................................................. 14

I. INTRODUCTION ........................................................................................................... 1

    A. EcoFactor's Motion for Summary Judgment on the Issue of Enablement Under 35 U.S.C. § 112 Should Be Denied ............................................................ 2

    B. EcoFactor's Motion for Summary Judgment on Invalidity Under 35 U.S.C. § 101 Should Be Denied ............................................................................ 4

    C. EcoFactor's Motion for Summary Judgment on Laches and Waiver Should Be Denied ............................................................................................... 5

    D. EcoFactor's Motion for Summary Judgment on Unclean Hands and Patent Misuse Should Be Denied ..................................................................................... 8

    E. ecobee Maintains Its Right to Appeal This Court's Determinations as to Indefiniteness ..................................................................................................... 13

    F. ecobee Maintains Its Right to Raise Issues of Estoppel and Preclusion ............. 13

II. CONCLUSION ............................................................................................................. 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
  No. CV-08-S-543-NE, 2012 WL 12897957 (N.D. Ala. Feb. 9, 2012) ...................................... 8

*ALZA Corp. v. Andrx Pharms.*,
  LLC, 603 F.3d 935 (Fed. Cir. 2010) ...................................................................................... 3

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
  No. 14-CV-6544(KAM)(GRB), 2018 WL 1525686 (E.D.N.Y. Mar. 27, 2018) ...................... 6

*Amgen Inc. v. Sanofi, Aventisub LLC*,
  987 F.3d 1080 (Fed. Cir. 2021) ............................................................................................. 2

*Bridgestone/Firestone Rsch., Inc. v. Auto. Club De L'Quest De La France*,
  245 F.3d 1359 (Fed. Cir. 2001) ............................................................................................. 7

*Edge Systems LLC v. Cartessa Aesthetics, LLC*,
  571 F. Supp. 3d 13 (E.D.N.Y. 2021) ..................................................................................... 8

*Gilead Sciences, Inc. v. Merck & Co., Inc.*,
  888 F.3d 1231 (Fed. Cir. 2018) ............................................................................................. 8

*Leviton Manufacturing Co., Inc. v. Pass & Seymour, Inc.*,
  264 F.Supp.3d 421 (E.D.N.Y. 2017) ................................................................................... 12

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
  No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) ....................................... 12

*Medinol Ltd. v. Cordis Corp.*,
  817 F. App'x 973 (Fed. Cir. 2020) ........................................................................................ 5

*MEGA Brands Inc. v. Amloid Corp.*,
  No. SACV 13-00108-CJC(MLGx), 2013 WL 12138683 (C.D. Cal. May 14, 2013) ............................................................................................................................ 9

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
  324 U.S. 806 (1945) .............................................................................................................. 8

*Qualcomm Inc. v. Broadcom Corp.*,
  548 F.3d 1004 (Fed. Cir. 2008) ............................................................................................. 7

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*,
  137 S. Ct. 954 (2017) ................................................................................................... 2, 5, 6

-iii-

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*,
   807 F.3d 1311 (Fed. Cir. 2015) (en banc), *vacated on other grounds*, 137 S.
   Ct. 954 (2017) ...................................................................................................................5

*Scooter Store, Inc. v. SpinLife.com, LLC*,
   777 F. Supp. 2d 1102 (S.D. Ohio 2011) ............................................................................9

*Scott v. Harris*,
   550 U.S. 372 (2007)............................................................................................................8

*In re Wands*,
   858 F.2d 731 (Fed. Cir. 1988)............................................................................................2

*Wanlass v. Gen. Elec. Co.*,
   148 F.3d 1334 (Fed. Cir. 1998).......................................................................................5, 7

**Statutes**

35 U.S.C. § 101..................................................................................................................1, 4, 5

35 U.S.C. § 112...........................................................................................................................2

35 U.S.C. § 116...........................................................................................................................1

## I. INTRODUCTION

Defendant ("ecobee") respectfully submits this opposition to Plaintiff EcoFactor, Inc.'s ("EcoFactor") Motion for Summary Judgment of Defendant ecobee, Inc.'s Affirmative Defenses.

EcoFactor's motion should be denied because EcoFactor has failed to carry its burden to show that ecobee's affirmative defenses are insufficient to present to the jury. As detailed below, there are material disputes relating to ecobee's defenses of invalidity based on lack of enablement, invalidity under 35 U.S.C. § 101, indefiniteness, laches, waiver, unclean hands, patent misuse and preclusion/estoppel.[1] For instance, with regard to ecobee's invalidity defenses, ecobee presented the expert report and testimony of David Williams, who provided detailed opinions explaining why the '327 claims are invalid both for lack of enablement and under Section 101. EcoFactor does not even purport to challenge the sufficiency of those opinions. As to invalidity based on indefiniteness, ecobee timely raised this issue during claim construction and maintains that it has a viable appeal on the indefiniteness of claims 1 and 9 of the '100 patent and claims 1 and 17 of the '890 patent.

There is also evidence to support ecobee's equitable defenses. With regard to laches, the evidence shows that EcoFactor has forfeited, at minimum, its claim to an injunction because it waited years to file suit against ecobee despite having knowledge of ecobee's products. The same evidence also supports a finding of waiver. As to unclean hands and patent misuse, EcoFactor has engaged in a pattern of bad faith litigation, including the assertion of numerous patents that

---

[1] EcoFactor also moves for summary judgment on the following affirmative defenses: invalidity due to obviousness-type double patenting, unenforceability under 35 U.S.C. § 116, prosecution history estoppel and disclaimer, lack of standing, estoppel, disclaimer, Kessler doctrine and prosecution laches. Solely with respect to the issues as presented in this case, and with respect to the asserted patents in this case, ecobee does not oppose EcoFactor's motion as to these defenses. ecobee expressly reserves, and does not waive, the right to raise and/or pursue these defenses in other litigations or with respect to other patents EcoFactor asserts against ecobee.

EcoFactor knows are not practiced by ecobee, that gives rise to these defenses. EcoFactor does not even attempt to challenge the factual evidence on these issues, so its motion for summary judgment on these defenses fails.

Summary judgment at this juncture on issues of preclusion and estoppel is inappropriate at least because there are ten other EcoFactor cases pending in district Court (including two other cases against ecobee) and two pending IPRs involving the asserted patents. ecobee maintains the right to raise issues of preclusion and/or estoppel that may arise in these other matters prior to trial.

### A. EcoFactor's Motion for Summary Judgment on the Issue of Enablement Under 35 U.S.C. § 112 Should Be Denied

EcoFactor argues that it is entitled to summary judgment on ecobee's lack of enablement defense because one expert, Dr. D'Andrade, did not opine about enablement in his expert report. But EcoFactor ignores the fact that ecobee also submitted the expert report of David Williams, who opined that the asserted claims of the '327 patent are not enabled. Ex. 1 (Williams Rep.) at ¶¶ 695-701; 1120-1122. As explained below, Mr. William's opinions—which EcoFactor does not even purport to challenge in its motion—are more than sufficient to establish a lack of enablement.

To meet the enablement requirement of 35 U.S.C. § 112, a patent specification must enable a PHOSITA "to practice the claimed invention without undue experimentation," *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)), to "[t]he full scope of the claim," *Amgen Inc. v. Sanofi, Aventisub LLC*, 987 F.3d 1080, 1086 (Fed. Cir. 2021). As Mr. Williams explains, the claims of the '327 patent fail to meet the enablement requirement for two reasons. *First*, the patent fails to enable to the claim limitation requiring the claimed system "to derive an estimation for the rate of change in inside temperature." Mr. Williams explains that the patent specification does not provide any direction or guidance, and lacks any working examples, regarding the techniques or calculations that would have been conducted "to derive an estimation for the rate of change in inside

temperature" as claimed. Ex. 1 (Williams Rep.) at ¶¶ 699-701, 1120. Mr. Williams further explains that "a high degree of undue experimentation would be required for a POSITA to practice the full scope of the claimed invention."

Mr. Williams' opinions in this regard are not speculative. Mr. Hublou, one of the listed inventors of the '327 patent, conceded that the '327 patent did not provide the algorithms for practicing the claims. Ex. 2 (Hublou 8-10-21 Tr.) at 180:20-25. Mr. Hublou also testified that it took two Ph.D. students close to a year of iterative work, and a "trial and error process" in "advanced mathematics," to put the claimed invention into practice. *See, e.g.* Ex. 3 (Hublou 4-17-21 Tr.) at 46:19-21, 138:1-21, 200:19-201:1. Accordingly, the record contains ample evidence to support a finding of invalidity based on a lack of enablement. *See, e.g., ALZA Corp. v. Andrx Pharms.*, LLC, 603 F.3d 935, 941 (Fed. Cir. 2010) (A specification is not enabling where it "provides only a starting point, a direction for further research," with a PHOSITA "required to engage in an iterative, trial-and-error process to practice the claimed invention even with the help of the . . . specification.").

The '327 claims also fail to meet the enablement requirement for a second reason: they do not enable the limitation of "receiv[e/ing] a demand reduction request and ***determin[e/ing] whether the structure is associated with demand rejection request.***" Ex. 1 (Williams Rep.) at ¶¶ 1120-1122. Other than in the claims, there is no "demand *rejection* request" described anywhere else in the '327 patent specification. In fact, the concept of "demand rejection" is not found anywhere in the '327 patent. *Id.* Even Mr. Hublou, a listed inventor of the patent, has no understanding of what a "demand rejection request" is. Ex. 2 (Hublou 8-10-21 Tr.) at 123:2-124:14. When asked at his deposition, "Do you have an understanding of what is a demand rejection request," Mr. Hublou responded, "I don't know what that's actually referring to." *Id.*

Consequently, as Mr. Williams explains, the patent specification fails to "teach one of ordinary skill in the art how to determine whether the structure is associated with a 'demand rejection request' in any way, let alone enable one of ordinary skill in the art to practice the full scope of such a claimed invention." Ex. 1 (Williams Rep.) at ¶ 1122.

      **B.**      **EcoFactor's Motion for Summary Judgment on Invalidity Under 35 U.S.C. § 101 Should Be Denied**

EcoFactor's assertion that ecobee has not presented evidence regarding invalidity under 35 U.S.C. § 101 is false. Indeed, ecobee filed motions for partial summary judgment on this very issue. *See* WDTX-00428 Dkt. No. 71; *see also* WDTX-00078 Dkt. No. 88 (mooted in view of the motion for summary judgment filed in the -000428 matter). As set forth in ecobee's motions for partial summary judgment, the asserted claims of the '327 patent recite functions that reflect nothing more than the abstract idea of telling the thermostat to turn off the HVAC system in response to a request from a utility to reduce energy usage. *See* WDTX-00428 Dkt. No. 71 at 33-35; *see also* Ex. 1 (Williams Rep.) at ¶¶ 1111-1117. The claims also lack an inventive concept because they merely provide a wholly generic computer implementation. *See* WDTX-00428 Dkt. No. 71 at 35-36; *see also* Ex. 1 (Williams Rep.) at ¶ 1118.

ecobee's motion for partial summary judgment identifies extensive evidence that supports a finding that the claims of the '327 patent are directed to patent-ineligible subject matter. *See, e.g.*, WDTX-00428 Dkt. No. 71 at SUF 71 (the '327 patent acknowledges that the claimed inventions are carried out with "conventional" components); *Id.* (Scott Hublou, a named inventor on the '327 patent, acknowledged that he did not invent any of the hardware components recited in the patents, including the HVAC unit, the thermostat, the gateway, the computer, the laptop, a network, a utility server, a database, the hardware behind the demand reduction service server, and the hardware behind a database connected to the demand reduction server); *Id.* at SUF 73 (Mr.

Hublou testified that he could perform the "rate of change" calculation recited in the '327 patent "in his head."); *Id.* (EcoFactor's expert, Erik de la Iglesia, described the material in column 7 of the '327 patent as being an application of Newton's law of heating and cooling); *Id.* at SUF 74 (Mr. Hublou stated that the data and calculations in the provisional applications to which EcoFactor's patents claims priority involved "rudimentary math on Excel spreadsheets and graphing"); *Id.* at SUF 75 (EcoFactor's expert, Dr. Palmer, testified that a human could "sit there with a pencil and paper and write down a whole bunch of temperatures and times" and "then tak[e] that data and analyz[e] it" to "compar[e] inside and outside temperatures over time and develop[] from that an estimated rate of change," as recited by the claims of the '327 patent.).

Accordingly, not only has ecobee presented sufficient evidence to support a finding of invalidity under 35 U.S.C. § 101, but the undisputed evidence should cause the Court to find that ecobee is entitled to summary judgment on this issue.

### C. EcoFactor's Motion for Summary Judgment on Laches and Waiver Should Be Denied

A defendant can establish laches by showing that the plaintiff delayed filing suit for an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant, and the delay resulted in material prejudice or injury to the defendant. *See Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998). Although laches is not a defense to infringement claims brought within the Patent Act's statute of limitations, *see SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 137 S. Ct. 954, 967 (2017), laches may still bar injunctive relief. *See SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 807 F.3d 1311, 1332–33 (Fed. Cir. 2015) (en banc), *vacated on other grounds*, 137 S. Ct. 954 (2017). Indeed, courts have endorsed applying evidence of undue delay in the post-infringement equitable analysis. *See e.g.*, *Medinol Ltd. v. Cordis Corp.*, 817 F. App'x

973, 977 (Fed. Cir. 2020) (holding that reliance on a "factual finding of delay the district court was not resurrecting the laches defense in contravention of *SCA Hygiene*."); *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544(KAM)(GRB), 2018 WL 1525686, at *23 (E.D.N.Y. Mar. 27, 2018) ("Should this action reach the remedial stage, however, defendant may assert laches, or 'undue delay,' as against an award of an ongoing royalty or injunctive relief.").

EcoFactor's conclusory assertion that there are "no facts or evidence" to support a laches defense in this case is demonstrably false. The asserted '100 and '186 patents both issued in 2014. ecobee thermostats were already on the market at that time (and for many years prior). The evidence shows that, at that time, EcoFactor was well-aware of ecobee thermostats. *See* Ex. 4 (Carradine 8-20-21 Tr.) at 56:1-58:2 (explaining that the CEO of EcoFactor, Matt Plante communicated his interest in ecobee thermostat at a conference); Ex. 5 (Plante LinkedIn page) at 1 (showing that Mr. Plante was CEO of EcoFactor between Sep. 2014 and Dec. 2015). EcoFactor's witnesses, Shayan Habib and Glenn Okita, also testified that they had knowledge of ecobee thermostats long before the instant litigation was filed and, in fact, had worked with and tested ecobee thermostats. *See, e.g.,* Ex. 6 (Habib 5-14-20 Tr.) at 275:12-20; Ex. 7 (Habib 9-15-21 Tr.) at 118:2-6; Ex. 8 (Okita 9-1-21 Tr.) at 242:6-17, 244:11-20; Ex. 9 (Okita 5-20-20 Tr.) at 83:9-16.

EcoFactor did not bring any infringement suit against ecobee, however, until October 2019 when it filed a Complaint with the ITC. Ex. 10 (1185 Complaint). And even then, EcoFactor did not assert the '100 and '186 patents against ecobee. Instead, EcoFactor has engaged in a pattern of asserting four patents at a time against ecobee, inexplicably splitting the 16 patents it has asserted in total against ecobee into four district court litigations (and two ITC Investigations), each covering four patents. The '100 and '186 patents were only asserted against ecobee for the first time in the -000428 action, which was filed on April 28, 2021, approximately seven years

after EcoFactor's patents issued. *See* WDTX-00428 Dkt. No. 1. As the Federal Circuit has held, delays in bringing a lawsuit, like EcoFactor's delay of around seven years here, creates a presumption of laches. *See Wanlass,* 148 F.3d at 1337 ("A delay of more than six years raises a presumption that it is unreasonable, inexcusable, and prejudicial.")

EcoFactor's delay has substantially prejudiced ecobee. The Federal Circuit has recognized that a defendant can show "economic prejudice based on loss of time or money or foregone opportunity." *Bridgestone/Firestone Rsch., Inc. v. Auto. Club De L'Quest De La France*, 245 F.3d 1359, 1362 (Fed. Cir. 2001). The facts, at minimum, permit a finding that ecobee meets that threshold. During the years that EcoFactor waited to prosecute this case, ecobee invested in, worked on, improved and used the accused technology. Indeed, the evidence shows—and ecobee's witnesses will testify—that ecobee invested in, developed and released multiple versions of accused thermostats, and sold millions of accused products, all while EcoFactor delayed the prosecution of its claims for patent infringement. *See, e.g.,* Ex. 11 (ecobee's Responses to Plaintiff's First Set of Interrogatories) at Responses to Interrogatories 3-5, 7, 8 and 10. Indeed, ecobee played a leading role in creating the market for smart thermostats while EcoFactor sat back and waited for ecobee to develop a mature market before asserting its patents. EcoFactor's motion challenges none of the above facts. Accordingly, the Court should deny EcoFactor's motion for summary judgment as to laches.

The Court should also deny EcoFactor's motion for summary judgment on the issue of waiver. To establish waiver, a defendant must show either that the plaintiff, "with full knowledge of the material facts, intentionally relinquished its rights to enforce" the asserted patents or "that its conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020

(Fed. Cir. 2008). As discussed above, EcoFactor knew of ecobee and its thermostat products for more than seven years before filing suit. They worked with and tested ecobee thermostats. And EcoFactor's CEO even communicated his interest in ecobee thermostats to ecobee. Consequently, a fact finder could reasonably conclude that EcoFactor's conduct was so inconsistent with an intent to enforce its patent rights against ecobee as to induce a reasonable belief that such right had been relinquished by EcoFactor.

The evidence thus calls for denying EcoFactor's summary judgment motion as to both laches and waiver, especially when the record evidence is viewed in a light most favorable to ecobee as required for purposes of this motion. *See Scott v. Harris,* 550 U.S. 372, 380 (2007).

### D. EcoFactor's Motion for Summary Judgment on Unclean Hands and Patent Misuse Should Be Denied

Unclean hands is an equitable defense that applies when a party seeking relief has committed misconduct that "has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation[.]" *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018). The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). It is a broad, equitable doctrine, "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Id*. District courts have permitted the unclean hands defense where the defendant alleges that the plaintiff has brought an objectively baseless lawsuit in bad faith. *See Edge Systems LLC v. Cartessa Aesthetics, LLC*, 571 F. Supp. 3d 13, 21-22 (E.D.N.Y. 2021) (refusing to strike affirmative defense of unclean hands based partially upon "creating mass patent assertions" and asserting positions in litigation that are "inconsistent with [the] meanings of terms as expressed within the patent specification, inconsistent with their plain and ordinary meaning,

and inconsistent with the meaning as understood by an ordinarily skilled artisan."); *see also Abbott Point of Care, Inc. v. Epocal, Inc.*, No. CV-08-S-543-NE, 2012 WL 12897957, at *9 (N.D. Ala. Feb. 9, 2012) (denying motion for summary judgment on affirmative defense of unclean hands premised on filing of lawsuit "as a business strategy to drain Epocal's resources and scare away potential customers, and not because it had a good faith basis to believe that Epocal was infringing the patents-in-suit.") (citations omitted); *see also MEGA Brands Inc. v. Amloid Corp.*, No. SACV 13-00108-CJC(MLGx), 2013 WL 12138683, at * 2 (C.D. Cal. May 14, 2013); *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1113 (S.D. Ohio 2011).

Here, EcoFactor's filing and continuing prosecution of litigation in bad faith presents issues of material fact that preclude the entry of summary judgment dismissing ecobee's affirmative defense of unclean hands. EcoFactor has been asserting patents from its portfolio against ecobee products for three years, in batches of four, across two ITC actions and at least four district court actions. When EcoFactor filed the complaint initiating the -00428 action on April 28, 2021, EcoFactor had already filed two separate ITC investigations (the *1185* Investigation and the *1258* Investigation) against ecobee, as well as multiple co-pending district court litigations.

In the first ITC litigation—the *1185* Investigation—EcoFactor asserted four of its patents against the same ecobee products at issue here. After EcoFactor took extensive fact discovery related to ecobee's products, however, EcoFactor was forced to withdraw its infringement allegations against ecobee as to two of the four originally asserted patents (despite continuing to assert those patents against other respondents), and moved to dismiss a third patent as to all respondents. See Ex. 12 (1185 Order No. 27). Thus, at trial in the *1185* Investigation, the only patent that EcoFactor alleged against ecobee was U.S. Patent No. 8,131,497 ("the '497 Patent").

Following a several day hearing and extensive post-hearing briefing, the ALJ issued his Initial Determination for the *1185* Investigation on April 20, 2021, finding that ecobee's products did not infringe any of the claims of the '497 patent asserted against it. *See* Ex. 13 [1185 ID] at 110-153. Among the many reasons that the ecobee products were found not to infringe, the ALJ found that ecobee's products neither received "outside temperature measurements from at least one source other than said HVAC system," nor calculated "one or more rates of change in temperature." *Id.* at 124-153.

Just eight days after the Initial Determination in the *1185* Investigation, however, EcoFactor filed its complaint initiating the instant litigation against the very same ecobee products that were found not to infringe in the *1185* Investigation. And EcoFactor did so despite the fact that the '100 and '186 patents at issue here contain the ***same limitations*** that ecobee was found not to infringe days before in the *1185* Investigation. *See, e.g.*, Ex. 14 ('100 patent) at claims 1, 9 (requiring stored data that includes "outside temperature measurements" and using "the stored data to predict a rate of change of temperatures inside the structure"); Ex. 15 ('186 patent) at claims 1, 8 (requiring receiving "outside temperature measurements" and calculating "one or more predicted rate of change in temperature.")

Subsequent to the filing of the complaint initiating this litigation, the Commission determined not to review the *1185* Initial Determination's findings of non-infringement as to ecobee, and EcoFactor filed, but then withdrew, an appeal of the *1185* Investigation to the Federal Circuit. Additionally, EcoFactor's second ITC Investigation against ecobee—the *1258* Investigation (which was filed just two months before EcoFactor filed its complaint here)—also went to trial and once again resulted in a finding of non-infringement as to all claims asserted against ecobee. *See* Ex. 16 (1258 ID) at 36-45, 89-92. Similar to the *1185* Investigation, the *1258*

Initial Determination found that, among other reasons, ecobee's products neither receive "outside temperature measurements," nor predict "rates of change" in temperature. *Id*. at 37-41, 91-92.[2]

Despite these findings, and despite the fact that the accused functionality in the ecobee products has not materially changed since the *1185* and *1258* Investigations, EcoFactor continues to litigate patents against ecobee that it knows are based upon meritless infringement arguments that are unsupported by the facts or the law. Indeed, EcoFactor has repeatedly switched infringement experts against ecobee across the *1185* Investigation, *1258* Investigation, and here to try its luck that a new presentation of old facts will wind up in a different result, all while increasing litigation costs to ecobee.

Notably, EcoFactor's bad faith litigation tactics extend beyond the instant case. EcoFactor continues to assert not only patents that were already found to be invalid and not infringed, but also patents that EcoFactor was forced to withdraw during the ITC Investigations because EcoFactor had no good-faith basis to even assert them against ecobee. *See* Ex. 18(Complaint in WDTX Case No. 6:22-cv-000333) (asserting infringement of the '497 patent (which was found to be both invalid and not infringed by ecobee in the *1185* Investigation) as well as the '322, '753 and '371 patents (for which EcoFactor had withdrawn its allegations as to ecobee in the *1185* Investigation)); Ex. 19 (EcoFactor Counterclaims in D. Del Case No. 1:21-cv-00323) (asserting infringement of the '550 and '488 patents (which were found both invalid and not infringed by ecobee in the *1258* Investigation) as well as the '983 patent (for which EcoFactor had withdrawn its allegations as to ecobee in the *1258* Investigation).

---

[2] On June 22, 2022, the Commission affirmed that ecobee's products do not infringe either the '488 or '550 Patent, once again finding that, among other reasons, ecobee's products do not receive outside temperature measurements or calculate predicted rates of change in temperature. Ex. 17 (1258 Comm'n Op.) at 7-8, 33-35, 37-40, 68-69.

EcoFactor hides behind the lack of preclusive effect to ITC decisions, but that is beside the point on an unclean hands motion. The issue is not whether EcoFactor is pursuing this case despite a legal prohibition from doing so. Rather, the issue is whether EcoFactor's pursuit of this case— and the larger campaign against ecobee—is baseless, improperly motivated and inequitable in view of the substance of the ITC's findings. Indeed, regardless of whether the ITC's findings are binding on a district court, EcoFactor "was not free to pursue another case targeting the same technology with impunity." *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 4616847, at *3 (N.D. Cal. Sept. 15, 2014). The above facts, especially when viewed in a light most favorable to ecobee, establish that EcoFactor has engaged in a pattern of litigation misconduct through asserting bad faith allegations against ecobee. EcoFactor's bad faith litigation conduct thus presents genuine issues of material fact preventing EcoFactor's requested summary judgment as to ecobee's unclean hands defense.

For similar reasons, the Court should also deny summary judgment as to ecobee's defense of patent misuse. It has been recognized that "[i]f a patentee knows his patent will not survive a validity challenge—for whatever reason—and nevertheless uses it to leverage licenses under threat or actual use of cripplingly expensive litigation, then that may constitute patent misuse." *Leviton Manufacturing Co., Inc. v. Pass & Seymour, Inc.*, 264 F.Supp.3d 421, 428 (E.D.N.Y. 2017). "And if a closely related patent is used for that purpose when its cousin has in fact been declared invalid, then that could also be patent misuse." *Id.* ecobee submits that the same reasoning applies when a patentee attempts to leverage licenses by asserting numerous patents that the patentee knows are not infringed across multiple cases and multiple jurisdictions, as EcoFactor has done here and in other co-pending district court actions.

Accordingly, for all the reasons above, the Court should deny EcoFactor's motion for summary judgment as to unclean hands and patent misuse.

### E. ecobee Maintains Its Right to Appeal This Court's Determinations as to Indefiniteness

Although EcoFactor contends that the Court previously adjudicated ecobee's indefiniteness arguments as to the asserted patents in the -00428 action during claim construction, ecobee still maintains a right to appeal these issues. Moreover, ecobee respectfully disagrees with the Court's conclusions on indefiniteness and maintains that the following terms in the '100 and '890 patents are indefinite for the reasons set for in ecobee's claim construction briefs:

(i) "evaluate one or more parameters"/"evaluating … one or more parameters relating to the operation of the said ventilation system" ('100 Patent, Claims 1, 9)

(ii) "protect the compressor from rapid cycling" ('890 Patent, Claim 1)

(iii) "performance characteristic" ('890 Patent, Claim 17)

Accordingly, while ecobee does not intend to re-raise these issues at trial, ecobee has not, and does not, forfeit its defense of indefiniteness.

### F. ecobee Maintains Its Right to Raise Issues of Estoppel and Preclusion

ecobee does not dispute that the ITC's findings in Investigation Nos. 337-TA-1185 and 337-TA-1258 do not technically have a "preclusive effect" on the issues in this case. As such, ecobee does not intend to argue issues of collateral estoppel, issue preclusion, res judicata, or claim preclusion based on the ITC's findings in this matter. But the 1185 and 1258 Investigations are not the only other EcoFactor cases. There are currently at least 10 other EcoFactor cases pending in district Courts, including multiple other cases against ecobee. *See, e.g., ecobee Inc. v. EcoFactor, Inc.*, D. Del. Case No. 1:21-cv-00323; *EcoFactor Inc. v. ecobee Inc*, WDTX Case No. 6:22-cv-00033; *EcoFactor, Inc. v. Resideo Technologies, Inc.*, WDTX Case No. 6:22-00069;

*Google LLC v. EcoFactor, Inc.*, N.D. Cal Case No. 4:22-cv-00162; *EcoFactor, Inc. v. Google LLC*, N.D. Cal Case No. 4:22-cv-07661; *EcoFactor, Inc. v. Pointcentral, LLC* et al, D. Or. Case No. 6:22-cv-00055; EcoFactor, Inc. v. Vivint, Inc., WDTX Case No. 6:20-cv-00080; *EcoFactor, Inc. v. Vivint, Inc.*, WDTX Case No. 6:22-cv-00034; *EcoFactor, Inc. v. Google LLC*, WDTX Case No. 6:22-cv-00032*; EcoFactor, Inc. v. Amazon.Com, Inc.*, WDTX Case No. 6:22-cv-00068. *Inter Partes* Review proceedings are also pending for the asserted '100 and '186 patents. *See* IPR2022-00475 and IPR2022-00473.

In light of these pending actions, it is very likely that issues giving rise to collateral estoppel, issue preclusion, res judicata, or claim preclusion may result from these matters before the scheduled trial in this case. For this reason, ecobee respectfully submits that summary judgment on these issues is inappropriate at this time. At a minimum, ecobee should be permitted to raise any new preclusion or estoppel issues that may arise prior to trial.

## II.     CONCLUSION

For the above reasons, ecobee respectfully requests that the Court deny EcoFactor's motion for summary judgment.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇-15-▇▇▇▇▇▇▇

Dated: January 13, 2023  Respectfully submitted,

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
Texas State Bar No. 00784720
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
Tyler, Texas 75701
Telephone: (903) 509-5000
Fax: (903) 509-5092
jainsworth@wilsonlawfirm.com


Timothy J. Carroll
Steven M. Lubezny
VENABLE LLP
227 West Monroe Street, Suite 3950
Chicago, IL 60606
Telephone: (312) 820-3400
Fax: (312) 820-3401
TJCarroll@Venable.com
SMLubezny@Venable.com


Manny J. Caixeiro
VENABLE LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Fax: (310) 229-9901
MJCaixeiro@Venable.com


Megan S. Woodworth
VENABLE LLP
600 Massachusetts Ave NW
Washington, DC 20001
Telephone: (202) 344-4507
Fax: (202) 344-8300
MSWoodworth@Venable.com

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓ -16- ▓▓▓▓▓▓▓▓▓

                Daniel A. Apgar
                VENABLE LLP
                1290 Avenue Of The Americas
                New York, NY 10104
                Telephone:  (212) 218-2209
                Fax: (212) 218-2100
                DApgar@Venable.com

                *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically UNDER SEAL and served by e-mail on January 13, 2023, to all counsel of record.

                */s/ Jennifer P. Ainsworth*
                Jennifer P. Ainsworth