PUBLIC VERSION

**RESTRICTED – ATTORNEYS' EYES ONLY**

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**WACO DIVISION**

| | |
|---|---|
| ECOFACTOR, INC., | |
| Plaintiff, | Case No. 6:20-cv-00078-ADA |
| v. | **JURY TRIAL DEMANDED** |
| ECOBEE, INC., | |
| Defendant. | |
| ECOFACTOR, INC., | |
| Plaintiff, | Case No. 6:21-cv-00428-ADA |
| v. | **JURY TRIAL DEMANDED** |
| ECOBEE, INC., | **LEAD CASE** |
| Defendant. | ██████████████ |

**PLAINTIFF ECOFACTOR, INC.'S OPPOSED MOTIONS *IN LIMINE***

## **TABLE OF CONTENTS**

I.   **MIL NO. 1:** To Preclude References To Litigation Involving Ecofactor And Ecobee Other Than Ecofactor's Claims Against Ecobee At Issue In This Trial, And To Preclude References To Ecofactor's Litigation Matters Against Other Parties Except For Those Settled By Licenses ........................................................................................................................ 1

II.  **MIL NO. 2:** To Preclude Evidence Or Argument Regarding *Inter Partes* Reviews, *Ex Parte* Reexaminations, Or Other Post-Grant Proceedings ............................................................ 3

III. **MIL NO. 3:** The Parties Shall Not Offer Evidence Or Argument Regarding No-Longer Asserted Patents, Dropped Patent Claims, Non-Asserted Infringement Theories, No-Longer Asserted Non-Infringement Theories, And No-Longer Asserted Invalidity Theories .......... 4

IV.  **MIL NO. 4:** To Preclude Evidence Or Argument Regarding Prior Art Not Elected By Ecobee For Trial, Including Evidence Or Argument About How Any Such Non-Asserted Prior Art Indicates That A Claim Element Was Known In The Prior Art............................. 5

V.   **MIL NO. 5:** To Preclude Fact Witnesses From Offering Expert Evidence Construing Claim Language Or Comparing It To Ecobee Products, Ecofactor Products, Or Prior Art............. 6

VI.  **MIL NO. 6:** To Preclude Evidence Or Argument Regarding Comparisons Of Accused Products To Prior Art........................................................................................................ 9

VII. **MIL NO. 7:** To Preclude Evidence Or Argument Regarding Equitable Defenses Not Being Decided By The Jury ........................................................................................................ 10

VIII. **MIL NO. 8:** To Preclude Evidence Or Argument That Is Derogatory Of The Uspto Or Its Examiners, Such As That They Are Mistake-Prone Or Prone To Error ............................. 11

IX.  **MIL NO. 9:** To Preclude Evidence Or Argument That If The Jury Were To Award Ecofactor The Damages That It Is Seeking, This Would Increase The Price Of Ecobee's Products, Put Ecobee's Manufacturers Or Partners Out Of Business, Or Lead To Lost Jobs................... 12

X.   **MIL NO. 10:** To Preclude Evidence Or Argument Regarding Ecofactor's Attorney Fee Agreements Or Payments To Ecofactor's Litigation Counsel, Russ August & Kabat........ 13

XI.  **MIL NO. 11:** To Preclude Evidence Or Argument Regarding How Often A Party's Experts Have Worked With The Party's Counsel Outside The Context Of This Action................. 14

XII. **MIL NO. 12:** To Preclude References To Ecofactor As "Litigious," "Troll," "Pirate," "Profiteer," "Extortionist," "Shell-Company," "Engaging In A Shakedown," "In The Business Of Filing Lawsuits," "Stick Up," "Hold Up," Or Like Terms ............................. 15

i

# TABLE OF AUTHORITIES

CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   2011 WL 7036048 (E.D. Va. July 5, 2011) ............................................................. 1

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
   166 F.3d 772 (5th Cir. 1999) ................................................................................... 4

*Appliance Computing III, Inc. v. Redfin Corp.*,
   Dkt. No. 196 (W.D. Tex. May 2, 2022) .................................................................. 14

*Bailey v. Bailey*,
   731 F. App'x 272 (5th Cir. 2018 ............................................................................... 4

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
   49 F.3d 1575 (Fed. Cir. 1995) .................................................................................. 8

*Biscotti Inc. v. Microsoft Corp.*,
   No. 2:13-CV-01015, 2017 WL 2537021 (E.D. Tex. May 30, 2017) ....................... 1

*Caddo Sys., Inc. v. Microchip Tech. Inc.*,
   No. 6:20-cv-00245, Dkt. No. 230 (W.D. Tex. June 9, 2022) ................................... 6

*CloudofChange, LLC v. NCR Corp.*,
   No. 6:19-cv-513-ADA, Dkt. No. 204 (W.D. Tex. Nov. 8, 2021) ................... passim

*Cordis Corp. v. Boston Sci. Corp.*,
   561 F. 3d 1319 (Fed. Cir. 2009) ............................................................................... 6

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   No. 2:14-cv-911, 2016 WL 4718963 (E.D. Tex. July 12, 2016) .................... 3, 9, 16

*Emerald City Mgmt., LLC v. Kahn*,
   No. 4:14-CV-00358, 2016 WL 3770960 (E.D. Tex. Jan. 14, 2016) ......................... 3

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
   Case No. 2:15-cv-1202-WCB, 2017 WL 959592 (E.D. Tex. Mar. 13, 2017) .......... 7

*ESW Holdings, Inc. v. Roku, Inc.*,
   No. 6:19-cv-44-ADA, Dkt. 149 (W.D. Tex. March 23, 2021) ............................... 15

*eTool Dev., Inc. v. Nat'l Semiconductor Corp.*,
   No. 2:08-cv-196-WCB, 2011 WL 12677158 (E.D. Tex. Dec. 12, 2011) ................. 4

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l., Inc.*,
   No. C 03-1431 SBA, 2006 WL 1330002 (N.D. Cal. May 15, 2006) ....................... 6

*HVLPO2, LLC v. Oxygen Frog, LLC*,
   949 F.3d 685 (Fed. Cir. 2020) .................................................................................. 6

*Ikorongo Technology LLC v. Bumble Trading LLC*,
   Case No. 6:20-cv-256-ADA, Dkt. No 180 (W.D. Tex. Feb. 14, 2022) .................. 14

*Image Processing Tech., LLC v. Samsung Electronics Co., Ltd.*,
 No. 2:20-cv-00050-JRG-RSP, Dkt. 171 (E.D. Tex. June 8, 2020) ............................................ 3

*In re Omeprazole Patent Litig.*,
 536 F.3d 1361 (Fed. Cir. 2008) ................................................................................................ 8

*Intellectual Ventures II LLC v. FedEx Corp.*,
 No. 2:16-CV-00980-JRG, 2018 WL 10638138 (E.D. Tex. Apr. 26, 2018) .............................. 9

*Internet Machines v. Alienware Corp.*,
 6:10-cv-00023, Dkt. No. 423 (E.D. Tex. Feb. 7, 2012) ........................................................... 15

*IPCom GmbH & Co. KG v. AT&T Inc., et. al.*,
 No. 2:20-cv-00322-JRG, Dkt. 307 (E.D. Tex. March 15, 2022) .............................................. 14

*Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*,
 No. 6:20-cv-00018, Dkt. No. 226 (W.D. Tex. Nov. 4, 2021) .............................................. 6, 8

*Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*,
 2016 WL 4238769 (W.D. Mich. Jan. 28, 2016) ...................................................................... 1

*Mars, Inc. v. TruRX LLC*,
 2016 WL 4055675 (E.D. Tex. Apr. 29, 2016) .......................................................................... 1

*Mendenhall v. Cedarapids, Inc.*,
 5 F.3d 1557 (Fed. Cir. 1993) .................................................................................................... 1

*Metaswitch Networks Ltd. v. Genband US LLC*,
 Case No. 2:14-cv-744, 2016 WL 3618831 (E.D. Tex. Mar. 1, 2016) ...................................... 9

*Mobile Telecomms. LLC v. ZTE (USA) Inc.*,
 No. 2:13-CV-946, 2016 WL 8260584 (E.D. Tex. July 22, 2016) ............................................. 1

*MV3 Partners LLC v. Roku, Inc.*,
 No. 6:18-cv-00308-ADA, Dkt. No. 332 (W.D. Tex. Sept. 29, 2020).............................. passim

*Nobelbiz, Inc. v. Global Connect, L.L.C.*,
 No. 6:12-cv-244, 2015 WL 11072170 (E.D. Tex. Sept. 2, 2015).............................................. 9

*Parthenon Unified Memory Architecture LLC v. Apple Inc.*,
 No. 2:15-CV-621-JRG-RSP, 2016 WL 7743510 (E.D. Tex. Sept. 21, 2016) ........................ 16

*Personalized Media Commc'ns, LLC v. Zynga, Inc.*,
 No. 2:12-CV- 00068-JRG, 2013 WL 10253110 (E.D. Tex. Oct. 30, 2013)............................. 4

*QPSX Devs. 5 Pty Ltd. v. Nortel Networks, Inc.*,
 Case No. 2:05-cv-268, 2008 WL 728201 (E.D. Tex. Mar. 18, 2008) ...................................... 6

*Ravgen, Inc. v. Lab. Corp. of Am. Holdings*,
 No. 6:20-cv-00969-ADA, Dkt. No. 215 (W.D. Tex. Sept. 23, 2022)........................................ 6

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
 No. 2:13-CV-213, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015).......................................... 3, 12

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
 550 F.3d 1356 (Fed. Cir. 2008).................................................................................................. 6

*Sunstone Information Defense, Inc., v. IBM,*
   Case No. 6:20-cv-01033-ADA, Dkt. No 141 (W.D. Tex. Aug. 15, 2022) ........................ 14, 15

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,*
   279 F.3d 1357 (Fed. Cir. 2020) .................................................................................. 8

*VLSI Tech. LLC v. Intel Corp,*
   No. 6:21-cv-0057-ADA, Dkt. No. 508 (W.D. Tex. Feb. 19, 2021) ............................ 1

*Whirlpool Corp. v. TST Water, LLC,*
   No. 2:15-CV-1528-JRG, 2017 WL 2931403 (E.D. Tex. Mar. 3, 2017) ..................... 4

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.,*
   19 F.3d 1418 (Fed. Cir. 1994) ................................................................................... 5

RULES

Fed. R. Evid. 401 ................................................................................................... 3, 14

Fed. R. Evid. 402 ................................................................................................. passim

Fed. R. Evid. 403 ................................................................................................. passim

Plaintiff EcoFactor, Inc., ("EcoFactor") hereby respectfully submits the following motions *in limine* ("MILs"). Defendant ecobee, Inc. ("ecobee") opposes each motion, several of which were stipulated to in *EcoFactor, Inc. v. Google LLC,* No. 6:20-cv-00075-ADA (W.D. Tex. Jan. 31, 2022) ("*Google*"), which involved one patent asserted here and multiple experts testifying here. ecobee opposes numerous motions that are routinely agreed to by parties and, if even opposed, are routinely granted by this and other courts. Many of ecobee's disagreements appear intended to waste EcoFactor's limited briefing pages on opposed motions that ecobee may later agree to.

## I.    MIL No. 1: To preclude references to litigation involving EcoFactor and ecobee other than EcoFactor's claims against ecobee at issue in this trial, and to preclude references to EcoFactor's litigation matters against other parties except for those settled by licenses

The Court should follow its standard practice and exclude references to adverse rulings or other litigation between EcoFactor and ecobee. *See, e.g.*, *Google*, Dkt. No. 160 at 8-9, Dkt. No. 192 at 2 (granting Google's MIL #5 to exclude references to other litigation between the parties). Courts overwhelmingly exclude such references, and this case should be no exception.[1]

Here, ecobee seeks to introduce the outcomes from prior litigation between EcoFactor and

---

[1] *VLSI Tech. LLC v. Intel Corp*, No. 6:21-cv-0057-ADA, Dkt. No. 508, at 5 (W.D. Tex. Feb. 19, 2021) (granting MIL to exclude references to other litigations and proceedings); *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. No. 332, at 4 (W.D. Tex. Sept. 29, 2020) ("*MV3*") (granting MIL to exclude references to "[IPR] Concerning the Patent-in-Suit" and to exclude "any references to a parallel proceeding"); *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015, 2017 WL 2537021, at *1 (E.D. Tex. May 30, 2017) (finding any probative value in allowing plaintiff to reference PTAB findings was "substantially outweighed by the danger of the unfair prejudice"); *Mobile Telecomms. LLC v. ZTE (USA) Inc.*, No. 2:13-CV-946, 2016 WL 8260584, at *2 (E.D. Tex. July 22, 2016) (excluding references or evidence "regarding unrelated litigations, investigations, or accusations involving the parties or their affiliates"); *Mars, Inc. v. TruRX LLC*, 2016 WL 4055675 at *2-3 (E.D. Tex. Apr. 29, 2016) (precluding references to "any pending or prior litigation other than this case involving either of the parties"); *Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, 2016 WL 4238769, at *3 (W.D. Mich. Jan. 28, 2016) (introducing outcome of ITC proceedings would "needlessly cause jury confusion and waste time"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 2011 WL 7036048, at *2 (E.D. Va. July 5, 2011) (introducing ITC outcome "would be unduly prejudicial" and "confuse the jury") (citing *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1572-85 (Fed. Cir. 1993)).

ecobee, such as the outcomes of ITC Investigation Nos. 337-TA-1185 and 337-TA-1258, where ecobee was found not to infringe patents not at issue in this case, including EcoFactor's '497, '550, and '6488 patents. For example, ecobee's damages expert, Melissa Bennis, intends to describe these ITC outcomes to the jury. *See* Dkt. No. 73 at 2-5, Dkt. 111 at 1-2 (moving to exclude Ms. Bennis' references to invalidity or non-infringement outcomes at pp. 25-28, 82-84, 90-92, 100, 113, 123-125). But informing the jury about adverse rulings on other EcoFactor patents would cause irreparable prejudice and confusion. Indeed, such evidence or argument would improperly suggest that the jury should consider the outcomes from the ITC as evidence of the validity or infringement of the patents-in-suit, even though those proceedings involved different claims, different patents, and different legal questions that have no bearing on this case.

Further, if ecobee is permitted to disclose the ITC litigation outcomes to the jury, then EcoFactor would need to be permitted rebuttal. But such rebuttal would create a trial within a trial, needlessly confusing the issues. To place *adverse* rulings against EcoFactor on *non-asserted patents* into proper context, EcoFactor would need to reference *favorable* rulings involving *asserted* patents, such as the favorable verdict on the asserted '327 Patent in the *Google* case and the PTAB's denial of institution of the IPR petition Google filed against the asserted '890 patent. EcoFactor would also need to explain critical *distinctions* between the litigation with adverse outcomes and the present suit. Unless this MIL is granted, much of the trial will be wasted focusing on the outcomes from different trials and on similarities and differences between those cases and the present one, including with respect to the asserted patents, the evidence in the record, and the applicable claim constructions. Thus, such references to other litigation should be excluded.

There is a narrow exception to the general rule against referencing other litigation, which permits the parties to introduce evidence of lawsuits that resulted in patent license agreements that

are relevant to damages here. *See, e.g.*, *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13-CV-213, 2015 WL 627430, at *1, *7-8 (E.D. Tex. Jan. 31, 2015) ("*Rembrandt*") (excluding references to other litigation brought by plaintiff, except "matters that relate to licenses that become involved in the case."). For example, EcoFactor sued Daikin, Schneider, and Johnson Controls before entering into patent license agreements with these companies, and both parties' damages experts agree that those licenses are comparable to the hypothetical negotiation in this case. For this reason, EcoFactor does not object to the jury learning that EcoFactor sued Daikin, Schneider and Johnson Controls or about the specific patents that EcoFactor asserted against those licensees' accused products. But the exception in *Rembrandt* for litigation that preceded comparable patent licenses does not extend to EcoFactor's other litigation against the *accused infringer*. Nor does it extend to rulings involving products that are not the licensees' products. Litigation outcomes between EcoFactor and other parties after the licensees settled and after their products were dismissed from those settled lawsuits are irrelevant to the license agreements.

## II.      MIL No. 2: To preclude evidence or argument regarding *inter partes* reviews, *ex parte* reexaminations, or other post-grant proceedings

ecobee should be precluded from referencing any *inter partes* reviews, *ex parte* reexaminations, or other post-grant proceedings concerning EcoFactor's patents, including the patents-in-suit. Sorting through those rulings and proceedings, explaining them to the jury, and/or allowing only certain proceedings to be discussed but not others would only confuse the jury, waste trial time, and result in undue prejudice. Fed. R. Evid. 401, 402, 403; *see Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-cv-911, 2016 WL 4718963, at *2 (E.D. Tex. July 12, 2016) ("*Core Wireless*"), *report and recommendation adopted sub nom*, ("GRANTED. The parties may not refer to the existence, pendency, or outcome of post-grant proceedings at the USPTO."); *Image Processing Tech., LLC v. Samsung Electronics Co., Ltd.*, No. 2:20-cv-00050-JRG-RSP, Dkt. 171,

at *2 (E.D. Tex. June 8, 2020) (precluding reference to PTAB and PTO post-grant proceedings); *Emerald City Mgmt., LLC v. Kahn*, No. 4:14-CV-00358, 2016 WL 3770960, at *4 (E.D. Tex. Jan. 14, 2016) ("Evidence of the proceedings with the USPTO is irrelevant in this lawsuit, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay.").

### III.     MIL No. 3: The parties shall not offer evidence or argument regarding no-longer asserted patents, dropped patent claims, non-asserted infringement theories, no-longer asserted non-infringement theories, and no-longer asserted invalidity theories

In accordance with this Court's Order (Dkt. No. 31), the parties have narrowed their disputes in advance of trial by reducing the number of asserted claims and invalidity theories. Parties routinely stipulate that neither side will offer evidence or argument related to no-longer asserted theories in accordance with the Court's procedures regarding narrowing. *See, e.g.*, *Google*, Dkt. No. 169 at 32; *Ikorongo Tech. LLC v. Bumble Trading LLC*, Case No. 6:20-cv-256-ADA, Dkt. No 180 at 2 (W.D. Tex. Feb. 14, 2022); *Appliance Computing III, Inc. v. Redfin Corp.*, Dkt. No. 196 at 25 (W.D. Tex. May 2, 2022); *Sunstone Information Defense, Inc., v. IBM,* Case No. 6:20-cv-01033-ADA, Dkt. No 141 at 15 (W.D. Tex. Aug. 15, 2022) ("*Sunstone*").

Yet, ecobee opposes this here. ecobee apparently intends to inform the jury about patents that ecobee voluntarily streamlined out in narrowing its case for trial (e.g., the '100 patent), as well as claims this Court found to be indefinite in the *Markman* phase of this action (e.g., in the '597 patent). Without the restrictions imposed by this MIL, ecobee could attempt to litigate any and every claim of every patent ever asserted in these two consolidated actions (eight patents total), as well as every non-infringement theory and invalidity theory ever raised—and also the motivations for the parties' streamlining decisions (e.g., improper suggestions that claims or theories narrowed out for trial were therefore meritless). ecobee's plans to discuss unasserted patents, unasserted

prior art references, and unasserted non-infringement theories will only serve to confuse the jury with irrelevant material about claims not at issue here, waste time by trudging through matters that the parties have already streamlined out of the case, and flout the spirit of this Court's rules requiring narrowing issues in advance of trial. *See* Fed. R. Evid. 401, 402, 403. This MIL is routinely granted and should be here. *E.g.*, *MV3*, Dkt. No 332 at 4 (granting MIL excluding references to "Narrowed Claims (Infringement Claims that were Asserted but Later Dropped)").

**IV.      MIL No. 4: To preclude evidence or argument regarding prior art not elected by ecobee for trial, including evidence or argument about how any such non-asserted prior art indicates that a claim element was known in the prior art**

Numerous courts, including this one, routinely exclude evidence and argument regarding non-elected prior art. *E.g.*, *CloudofChange, LLC v. NCR Corp.,* No. 6:19-cv-513-ADA, Dkt. No. 204 at 3 (W.D. Tex. Nov. 8, 2021) ("*CloudofChange*"); *Core Wireless*, at *2 (precluding LG from introducing "evidence or argument that non-elected prior art invalidates any claim" or introducing "any non-elected prior art as an exhibit"); *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2018 WL 10638138, at *2 (E.D. Tex. Apr. 26, 2018) (excluding non-asserted prior art and requiring Defendants to obtain leave before using "prior art that is outside of the previously elected prior art invalidity case in order to show relevant background information at trial"); *Metaswitch Networks Ltd. v. Genband US LLC*, Case No. 2:14-cv-744, 2016 WL 3618831, at *4 (E.D. Tex. Mar. 1, 2016) (granting motion to "[e]xclude any argument, testimony, evidence, or reference to prior art or prior art combinations that were not included in invalidity contentions or elected"); *Nobelbiz, Inc. v. Global Connect, L.L.C.*, No. 6:12-cv-244, 2015 WL 11072170, at *3 (E.D. Tex. Sept. 2, 2015) ("Dr. Perry can talk about the state of the art, but must avoid citing references that were not elected as prior art in his invalidity analysis.").

Despite having narrowed its prior art case to two theories per asserted claim, ecobee intends for its witnesses to testify about other references supposedly demonstrating that claim elements

were known in the prior art. For example, ecobee's exhibit list includes a dissertation by Jae Hwi Jang (DTX-182, produced as PRIOR_ART_00005439) and a dissertation by Xue Chen (DTX-183, produced as PRIOR_ART_00000506). ecobee did not elect either reference for its invalidity presentation at trial and should be limited to the references it elected. *See* Ex. A (ecobee Prior Art Elections). Any discussion of such non-elected references, whether by ecobee's experts or fact witnesses (e.g., Dr. Auslander, who ecobee now seeks to re-cast as a fact witness, as discussed above), undermines this Court's Order (Dkt. No. 31) and the parties' mutual agreement to narrow this case for trial, unfairly prejudicing EcoFactor and threatening to confuse the jury as to what prior art is proper for jury members to consider in evaluating validity. *See* Fed. R. Evid. 402, 403.

## V.     MIL No. 5: To preclude fact witnesses from offering expert evidence construing claim language or comparing it to ecobee products, EcoFactor products, or prior art

ecobee should not be permitted to elicit testimony from ***fact witnesses*** that improperly construes claim language or that draws comparisons between claim language and (i) products or (ii) prior art. For example, ecobee intends to introduce testimony from ***fact*** witnesses comparing claim language (e.g., "rate of change") to ***EcoFactor*** products (e.g., the S100 thermostat), such as deposition designations for EcoFactor employee Glen Kuo to this end. *E.g.*, Ex. B (5/15/2020 Kuo Tr.) at 172:2-4 ("Do you know whether the thermostat calculates the rate of change in temperature at a particular location?"), 170:1-25 ("Do you know whether the S100 collects temperature data?," "Q. Do you know whether the S100 measures the outside temperature?"), 171:20-22 ("you don't believe that the [S100] thermostat collects outside temperature; correct?").

As another example, ecobee intends to call Dr. David Auslander as a fact witness at trial, but they intend to elicit expert opinion testimony from him even though he has not served an expert report in this case. ecobee served deposition designations in this case from other cases where Dr. Auslander served as ecobee's expert witness confirm that ecobee wants Dr. Auslander to testify

about: (i) the prior art and the novelty of the claims in relation thereto, (ii) comparisons between the asserted claims and EcoFactor's products, or (iii) written description or enablement issues. In past cases between EcoFactor and ecobee, Dr. Auslander has only ever served as ecobee's expert witness on invalidity (in two prior ITC cases) or its expert on claim construction (as in both cases consolidated here, among numerous others). ecobee alleges that it will elicit factual testimony from Dr. Auslander relating to his experiences working with the founders of EcoFactor in 2007-2008, but ecobee's deposition designations indicate otherwise. *See* Ex. C (7/24/2020 Auslander Tr.) at 174:9-20 ("to understand your ***opinions*** in your report … the advanced math you refer to several times throughout this … ***enablement*** section"), 176:23-25 ("you're not ***opining*** that it's your ***opinion*** that they used the advanced -- the very advanced math to generate those results, are you?"), 188:17-23 ("The advanced math that you reference in your ***enablement*** section"); Ex. D (ecobee's deposition designations listing this testimony). Even in the absence of Dr. Auslander's repeat history as an ecobee expert witness on invalidity issues, it is inevitable that ecobee will elicit improper testimony from him that compares claim language to older EcoFactor products by asking him supposedly "factual" questions about the state of EcoFactor's products in 2007 or 2008.

The Court should preclude such evidence or argument by fact witnesses that construes the claim language[2] or that compares any asserted claim to any accused or non-accused product, including EcoFactor's products and system prior art. Only expert witnesses who have served reports in *this* case are qualified to make such comparisons using the claims as construed. Fact witnesses (e.g., ecobee employees, inventors, prior art witnesses) should be prohibited from

---

[2] Consistent with this Court's prior rulings and routine stipulations entered by the parties, EcoFactor proposed a stipulation that the parties shall not offer evidence or argument contrary to the court's claim construction rulings. EcoFactor understands that ecobee agrees in principle with this proposition, but ecobee declined to explicitly agree to such a stipulation. Davis Decl. ¶ 2.

comparing the claims of the asserted patents to non-accused products and services. Such evidence and argument must be excluded because it invites the jury to decide issues improperly. As the Federal Circuit has "repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent." *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994)[3]; *see also, e.g.*, *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l., Inc.*, No. C 03-1431 SBA, 2006 WL 1330002 at *3-4 (N.D. Cal. May 15, 2006) (striking testimony of lay witness comparing prior art to claims); *Cordis Corp. v. Boston Sci. Corp.*, 561 F. 3d 1319, 1338 (Fed. Cir. 2009) (upholding district court's exclusion of noninfringement testimony by lay witness as irrelevant and prejudicial).

The Federal Circuit has also made clear that "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008). "[A] witness not qualified in the pertinent art [may not] testify as an expert on obviousness, or any of the underlying technical questions, such as the nature of the claimed invention, the scope and content of the prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention." *Id.* at 1364. A party may not circumvent the rules by shrouding

---

[3] This Court has repeated substantially the same principle in its instructions to the jury that they "must not compare the Accused [Products] with a specific example set out in the patent, with the prior art, or with any other product. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you." *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA, Dkt. No. 215 at 20 (W.D. Tex. Sept. 23, 2022); *see also Caddo Sys., Inc. v. Microchip Tech. Inc.*, No. 6:20-cv-00455, Dkt. No. 230 at 19 (W.D. Tex. June 9, 2022); *Google*, Dkt. No. 209 at 21; *Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*, No. 6:20-cv-00018, Dkt. No. 226 at 17 (W.D. Tex. Nov. 4, 2021) ("*Jiaxing*"); *MV3*, Dkt. No. 379 at 18.

expert opinions as supposed lay witness testimony. Such testimony of a witness who was not disclosed as an expert, who did not prepare a written report, and who was not subject to expert discovery is inadmissible and "significantly prejudice[s]" the opposing party. *HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 690 (Fed. Cir. 2020) (finding the "district court abused its discretion by admitting lay witness testimony regarding obviousness," and reversing and remanding for new trial); *see also QPSX Devs. 5 Pty Ltd. v. Nortel Networks, Inc.*, Case No. 2:05-cv-268, 2008 WL 728201, at *3 (E.D. Tex. Mar. 18, 2008) (finding in a motion for a new trial that the expert "was not identified as an expert witness and did not file an expert report; therefore, the court properly precluded his opinion testimony"); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, Case No. 2:15-cv-1202-WCB, 2017 WL 959592, at *5 (E.D. Tex. Mar. 13, 2017) (granting MIL precluding witness from providing testimony consistent with his declaration because it "would constitute expert testimony, as the declaration consists of explanations of his scientific research and conclusions."). For these reasons, ecobee's attempts to sneak in expert testimony through fact witnesses should be excluded.

## VI.    MIL No. 6: To preclude evidence or argument regarding comparisons of accused products to prior art

Based on its expert reports, ecobee intends to argue it does not infringe or should not be held liable for infringement because its accused products practice the prior art. However, such arguments are legally improper. *E.g.*, *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365-69 (Fed. Cir. 2020) (improper for Defendant to claim it practiced prior art or obvious variations of the prior art); *In re Omeprazole Patent Litig.*, 536 F.3d 1361, 1377 (Fed. Cir. 2008) (rejecting defendant's non-infringement argument that because "its manufacturing process merely practices the prior art"); *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995) (improper for Defendants to argue the accused devices use only combined

teachings of prior art). In accordance with the Federal Circuit, this Court has granted MILs on similar topics. *See Jiaxing*, Dkt. No. 196 at 3 (granting plaintiff's MIL 10: "exclude evidence, argument, and testimony concerning comparisons of Accused Products or their components with either prior art or Super Lighting's products/component"); *CloudofChange*, Dkt. No. 204 at 3 (granting plaintiff's MIL 6: "Comparison of the Accused Products to Prior Art").

ecobee may argue that, for one of the asserted patents ('890 only), it intends to use its own earlier thermostat product as system prior art. But that does not change the law. Comparing accused products to prior art is not relevant to the claims at issue here and would only confuse the jury. Such comparisons should therefore be precluded. *See* Fed. R. Evid. 402, 403. If ecobee wishes to present its own system prior art for the '890 patent, then it must establish invalidity through an expert's comparison of the '890 patent claims to that system prior art—without any comparison of the accused products to ecobee's alleged prior art system.

**VII.     MIL No. 7: To preclude evidence or argument regarding equitable defenses not being decided by the jury**

ecobee should be precluded from offering evidence or argument to the jury relating to its equitable defenses of unclean hands, patent misuse, waiver, and laches. ecobee maintains that evidence about these defenses should go to the jury. The evidence ecobee has in mind is the ITC's adverse rulings on *different* EcoFactor patents in the parties' prior ITC litigation. ecobee should not even be permitted to maintain these defenses, as explained in EcoFactor's motion for summary judgment. *See* Dkt. Nos. 66, 108. But even if ecobee is allowed to maintain any of these defenses, there is no reason for them to be presented to the jury. *See Bailey v. Bailey*, 731 F. App'x 272, 277 (5th Cir. 2018) ("[T]he federal trial right … does not extend to equitable claims."); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 795 (5th Cir. 1999) ("It is well established that the right to trial by jury does not extend to matters historically cognizable in equity ….").

Courts routinely prevent parties from presenting evidence and argument relating to equitable or legal issues at trial, as they are not relevant to the issues the jury will decide. Further, such evidence and argument creates a substantial risk of unfair prejudice and of wasting time. Thus, these issues should be addressed, if at all, only to the Court. *See, e.g.*, *Google*, Dkt. No. 192 at 3 (granting MIL as to equitable and other defenses); *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG, 2017 WL 2931403, at *2 (E.D. Tex. Mar. 3, 2017) (granting MIL in part and holding that certain "defenses are equitable issues that the Court will address outside the presence of the jury"); *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-CV- 00068-JRG, 2013 WL 10253110, at *1 (E.D. Tex. Oct. 30, 2013) (granting MIL and ordering that "[e]quitable defenses shall be tried to the bench"); *eTool Dev., Inc. v. Nat'l Semiconductor Corp.,* No. 2:08-cv-196-WCB, 2011 WL 12677158 at *1 (E.D. Tex. Dec. 12, 2011) (bifurcating trial of equitable issues and trial of jury issues, because "allowing the presentation of evidence bearing on non-jury issues during the jury trial would result in the jury's consideration of evidence not relevant to the jury's task," which "in turn could result in confusion of the jury or, at minimum, some risk of prejudicing the jury's consideration of issues properly before it by exposing it to evidence bearing on other unrelated issues," and would also unnecessarily "extend the jury trial").

## VIII.    MIL No. 8: To preclude evidence or argument that is derogatory of the USPTO or its examiners, such as that they are mistake-prone or prone to error

Evidence or argument that is derogatory of the USPTO or its examiners creates a significant risk of unfair prejudice to EcoFactor, as ecobee may attempt to mislead the jury into believing that the USPTO is not worthy of respect, that patents are not entitled to a presumption of validity, or that patents generally are not worthy of protection under the law. EcoFactor does not object to referencing the "possibility that mistakes were made, or important information overlooked," and it does not object to telling the jury that "examiners have a lot of work to do, and

no process is perfect." Beyond these statements, however, there is a significant risk of unfair prejudice to EcoFactor that cannot be adequately ameliorated through jury instructions. *See, e.g.*, *Google*, Dkt. No. 192 at 3 (granting MIL No. 8); *MV3*, Dkt. No. 332 at 4 (granting MIL No. 3 to exclude "Disparaging Comments Regarding the Patent Office and its Examiners"); *CloudofChange*, Dkt. No. 204 at 4 (granting MIL No. 11 to exclude "Disparaging References to the PTO and its Examiners"). Indeed, EcoFactor cannot examine any witnesses on the skill or workload of the USPTO or its examiners, and so there is no way to reduce or cure the prejudice to EcoFactor if ecobee is permitted to advance evidence or argument that is derogatory of the USPTO or its examiners. And while ecobee has stated it is willing to agree not to use the specific phrases "overworked" and "lacking in expertise," ecobee has refused to agree not to refer to USPTO personnel as mistake-prone or prone to error, for example.

## IX.   MIL No. 9: To preclude evidence or argument that if the jury were to award EcoFactor the damages that it is seeking, this would increase the price of ecobee's products, put ecobee's manufacturers or partners out of business, or lead to lost jobs

ecobee refuses to stipulate that it will not argue to the jury that the damages EcoFactor is seeking would increase the price of ecobee's products to customers, put ecobee's manufacturers or partners out of business, or lead to the loss of jobs at ecobee. The downstream impact a damages award may have on ecobee's business practice is irrelevant to the question of infringement or the hypothetical negotiation. Any argument by ecobee as to the economic or business impacts of the requested damages award can only seek to confuse or prejudice the jury with speculation that lacks probative value and is inconsistent with the *Georgia-Pacific* factors. *E.g.*, *MV3*, Dkt. No. 332 at 2 (granting MIL No. 2 to exclude from *voir dire* and opening arguments any "[s]uggestions that a Damages Award may Increase the Price of [Defendant]'s Products, put [Defendant's] Manufacturers Out of Business, or Lead to the Loss of Jobs" and ordering Defendant to "notify the Court in advance for the Court's ruling on the topic" if Defendant "seeks to put on evidence

about this topic at trial"). Consistent with this Court's ruling in *MV3*, ecobee should be barred from suggesting to the jury that the damages sought by EcoFactor would increase ecobee's prices, threaten the businesses of ecobee's manufacturers and partners, or lead to the loss of jobs.

**X.      MIL No. 10: To preclude evidence or argument regarding EcoFactor's attorney fee agreements or payments to EcoFactor's litigation counsel, Russ August & Kabat**

Despite EcoFactor explaining to ecobee that this Court granted this MIL in *Google*, ecobee seeks to admit evidence regarding the financial interest of EcoFactor's litigation counsel in the outcome of this case.  Such evidence is not relevant, is highly prejudicial, and should be excluded. *See, e.g.*, *Google*, Dkt. No. 192 at 2 (granting MIL No. 1 on same facts); *CloudofChange*, Dkt. No. 204 at 4 (granting MIL No. 14 to exclude references to plaintiff's attorney fee agreements); *Rembrandt*, at *3 (granting motion to exclude "any references, evidence, testimony (including expert testimony), arguments regarding, or inquiries attempting to elicit testimony regarding contingent fees, fees incurred, the retention/fee agreements of any party's counsel in this case, and any fees obtained or potentially obtained by counsel as a result of this case").

To the extent ecobee contends that such argument and evidence is relevant to damages, that is incorrect for the same reasons as in *Google* where this same MIL was granted. *See Google*, Dkt. No. 153 at 1-3, Dkt. No. 192 at 2. EcoFactor's damages expert relies upon EcoFactor settlement and license agreements to support his reasonable royalty opinions. There is no reason to delve into trial counsel's fees merely because EcoFactor's counsel acted as its agent in sending the settlement offers to EcoFactor's licensees. It was EcoFactor, not Russ August & Kabat, who authorized the settlement offers. It was EcoFactor, not Russ August & Kabat, who ultimately agreed to and executed the licenses. The facts supporting EcoFactor's damages opinion are all in the record, including the license agreements and the per-unit rate they contain, the offers to license that substantiate that per-unit rate, and the testimony of EcoFactor's CEO substantiating that per-

unit rate. Just as in *Google*, ecobee will have the opportunity to cross-examine EcoFactor's CEO, Shayan Habib, who (unlike trial counsel) authorized the offers and signed the agreements. Because inquiries into attorney's fees would only serve to prejudice EcoFactor, this Court should follow its prior decisions and exclude evidence or argument regarding attorney fee agreements or regarding payments to EcoFactor's litigation counsel, Russ August & Kabat.

**XI.    MIL No. 11: To preclude evidence or argument regarding how often a party's experts have worked with the party's counsel outside the context of this action**

The parties should be precluded from presenting evidence or arguments regarding either party's experts' engagements by the parties or their law firms in matters other than the instant litigation. *See IPCom GmbH & Co. KG v. AT&T Inc.*, No. 2:20-cv-00322, Dkt. No. 307, at *12 (E.D. Tex. March 15, 2022) (granting MIL precluding both sides "from discussing the number of times any experts worked for either a law firm or a party in the case without prior leave of Court"). For example, if evidence of an EcoFactor expert's prior work for EcoFactor in other litigation were allowed, it could be used to backdoor the outcome of such prior litigation and necessitate extra time to explain the different infringement, validity, and damages issues—and ultimately risk confusing or misleading the jury. Any perceived value from making the jury aware of such prior litigations is substantially outweighed by the danger of unfair prejudice or misleading the jury. *See also Internet Machines v. Alienware Corp.*, 6:10-cv-23, Dkt. No. 423, at 5 (E.D. Tex. Feb. 7, 2012).

While EcoFactor maintains that this MIL should be granted in full, if the Court is not inclined to do so, the Court could adopt any number of less harmful alternatives to allowing any and all questioning about experts' other engagements. *See, e.g.*, Ex. E, *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-126, Dkt. No. 384, at *9 (granting similar MIL in part and stating: "This MIL does not preclude the Parties from questioning experts about how often they are retained by plaintiffs vs defendants. This MIL also does not preclude questioning whether the experts have

been retained by the current parties (not their counsel) in the past.").

XII.    **MIL No. 12: To preclude references to EcoFactor as "litigious," "troll," "pirate," "profiteer," "extortionist," "shell-company," "engaging in a shakedown," "in the business of filing lawsuits," "stick up," "hold up," or like terms**

The Court should exclude derogatory, disparaging, and/or pejorative references to EcoFactor and its business activities, such as terms like "litigious", "troll," "pirate," "profiteer," "extortionist," "shell-company," "engaging in a shakedown," "in the business of filing lawsuits," "stick up," "hold up," and other like terms. These pejoratives have no relevance to the claims at issue, because whether EcoFactor practices the asserted patents or is involved in other litigation is not relevant to the issues before the jury. And while ecobee may argue that such facts are relevant to damages, any probative value thereof is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and/or misleading the jury. *See* Fed. R. Evid. 402, 403. Courts—including this one—customarily exclude the use of similarly pejorative terms to refer to a patent owner. *See ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-44-ADA, Dkt. 149, at *1 (W.D. Tex. March 23, 2021) (precluding derogatory or inflammatory language regarding plaintiff and its owners, "including but not limited to 'troll,' 'shell,' 'litigious,' 'a company that doesn't make anything,' 'rich,' 'wealthy,' 'being in the business of filing lawsuits,' or 'a company that sues people for money'"); *Sunstone*, Dkt. No. 134, at *2 (precluding derogatory terms to describe plaintiff, such as "patent troll," "patent terrorist," etc.); *CloudofChange*, Dkt. 204, at *3 (same); *Core Wireless*, at *2 (same); *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-CV-621, 2016 WL 7743510, at *1 (E.D. Tex. Sept. 21, 2016) (precluding the use of pejorative terms such as "patent troll," "pirate," "bounty hunter," "privateer," "bandit," "paper patent," "submarine patent," "stick up," "hold up," "shakedown," and "playing the lawsuit lottery").

Date: January 31, 2023                 Respectfully submitted,


                                       */s/ Reza Mirzaie*
                                       Reza Mirzaie
                                       Marc A. Fenster
                                       Kristopher Davis
                                       James Pickens
                                       Minna Chan
                                       Jason Wietholter
                                       **Russ August & Kabat**
                                       12424 Wilshire Boulevard, 12th Floor
                                       Los Angeles, CA 90025
                                       Telephone: (310) 826-7474

                                       Matthew D. Aichele
                                       **Russ August & Kabat**
                                       800 Maine Ave SW, Suite 200
                                       Washington, DC. 20024
                                       Telephone: (202) 664-0623


                                       *Attorneys for Plaintiff EcoFactor, Inc.*

██████████████████████

### CERTIFICATE OF CONFERENCE

I hereby certify that my firm, including Kris Davis, conferred with Defendant's counsel regarding the foregoing Motions *in Limine* on January 30, 2023, following email correspondence identifying the proposed relief.

*/s/ Reza Mirzaie*

### CERTIFICATE OF SERVICE

I certify that this document is being served upon counsel of record for Defendant on January 31, 2023 via electronic service.

*/s/ Reza Mirzaie*

Reza Mirzaie