# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ECOBEE, INC.,<br><br>　　　　Defendant. | Case No. 6:20-cv-00078-ADA<br><br>**JURY TRIAL DEMANDED** |
| ECOFACTOR, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ECOBEE, INC.,<br><br>　　　　Defendant. | Case No. 6:21-cv-00428-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>**<u>LEAD CASE</u>** |

## ECOBEE'S OPPOSITION TO
## <u>PLAINTIFF ECOFACTOR, INC.'s OPPOSED MOTIONS *IN LIMINE*</u>

# TABLE OF CONTENTS

Page

ecobee's Opposition to MIL No. 1: ............................................................................................. 1

ecobee's Opposition to MIL No. 2: ............................................................................................. 3

ecobee's Opposition to MIL No. 3: ............................................................................................. 4

ecobee's Opposition to MIL No. 4: ............................................................................................. 5

ecobee's Opposition to MIL No. 5: ............................................................................................. 6

ecobee's Opposition to MIL No. 6: ............................................................................................. 7

ecobee's Opposition to MIL No. 7: ............................................................................................. 8

ecobee's Opposition to MIL No. 8: ............................................................................................. 9

ecobee's Opposition to MIL No. 9: ........................................................................................... 10

ecobee's Opposition to MIL No. 10: ......................................................................................... 11

ecobee's Opposition to MIL No. 11: ......................................................................................... 12

ecobee's Opposition to MIL No. 12: ......................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*,
   889 F.3d 735 (Fed. Cir. 2018) ................................................................................................8

*Applied Materials, Inc., v. Advanced Semiconductors Materials America, Inc.*,
   No. 92-20643, 1995 WL 261407 (N.D. Cal. Apr. 25, 1995) ...................................................10

*Britz Fertilizers, Inc. v. Bayer Corp.*,
   2009 U.S. Dist. LEXIS 57947 (E.D. Cal. June 17, 2009) .........................................................6

*Collins v. Wayne Corp.*,
   621 F.2d 777 (5th Cir. 1980) ..............................................................................................12, 13

*Contour IP Holding, LLC v. GoPro, Inc.*,
   No. 3:17-cv-04738, 2021 U.S. Dist. LEXIS 5055 (N.D. Cal. Jan. 8, 2021) ............................10

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
   No. 2:14-cv-911-JRG-RSP, 2016 WL 4718963 (E.D. Tex. July 12, 2016) ..........................5, 9

*Droplets, Inc. v. Yahoo!, Inc.*,
   No. 12-cv-03733-JST, 2022 WL 2670188 (N.D. Cal. Feb. 28, 2022) ......................................8

*Freeny v. Murphy Oil Corp.*,
   No. 2:13-cv-791-RSP, 2015 WL 5144347 (E.D. Tex. June 4, 2015) ........................................5

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ..................................................................................10, 14

*John Bean Tech. Corp. v. Morris & Assoc., Inc.*,
   988 F.3d 1334, 1337-38 (Fed. Cir. 2021) .................................................................................4

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ..................................................................................................................5

*TransData, Inc. v. Centerpoint Energy Houston Electric LLC*,
   No. 6:10-cv-557-RWS-JDL, 2016 WL 11677492 (E.D. Tex. July 1, 2016) ............................5

*Weatherford Tech. Holdings, LLC. V. Tesco Corp.*,
   No. 17-cv-00456-JRG (E.D. Tex. Nov. 14, 2018) .................................................................12

**Statutes**

35 U.S.C. § 101 ................................................................................................................................9

███████████████████████████████████████
         ██████████████████

35 U.S.C. § 102 ........................................................................................................................ 5

35 U.S.C. § 103 ........................................................................................................................ 5

35 U.S.C. § 112 ........................................................................................................................ 9

35 U.S.C. § 252 ........................................................................................................................ 4

35 U.S.C. § 307(b) ................................................................................................................... 4

Fed. R. Civ. P. 26(a)(2)(B)(vi) ............................................................................................... 12

Defendant ("ecobee") respectfully submits the following oppositions to EcoFactor, Inc.'s ("EcoFactor") Opposed Motions *in Limine* (each a "MIL") (-00428 Case, Dkt. No. 127).

**<u>ecobee's Opposition to MIL No. 1</u>:  To preclude references to litigation involving EcoFactor and ecobee other than EcoFactor's claims against ecobee at issue in this trial, and to preclude references to EcoFactor's litigation matters against other parties except for those settled by licenses.**

EcoFactor's MIL No. 1 ignores that EcoFactor has made its litigation history – including against ecobee – not only relevant, but **central**, to key issues in this case.  For example, EcoFactor contends that ecobee engaged in "induced," "contributory" and "willful" infringement—all of which require proof that ecobee *knew* it was infringing the asserted patents.  However, ecobee's successes in other litigations in which EcoFactor asserted *related patents* with *similar or identical claim language* is compelling evidence that refutes the allegation that any infringement was knowing, intentional or willful.  Accordingly, the litigation history between these parties bears directly on ecobee's defenses to *EcoFactor's* allegations in *this* case.

On this point, the ITC found in Inv. No. 337-TA-1185 (the "1185 Investigation") that ecobee's products at issue here (save two new ones) *do not infringe* because *ecobee does* not practice claim limitations *requiring receiving outside temperature measurements and calculating one or more rates of change in inside temperature*.  ecobee thus believed that the products in this case do not infringe the presently asserted '327 and '186 Patents for the exact same reason—i.e., because they contain the same unpracticed limitations.  ecobee's belief in this regard was bolstered by the non-infringement findings in a <u>***second***</u> ITC investigation filed by EcoFactor (i.e., Inv. No. 337-TA-1258, the "1258 Investigation"), which resulted in additional findings that ecobee does not practice limitations requiring receiving outside temperature measurements and predicting rates of change.  ecobee's state of mind is premised in part on those prior findings.

1

EcoFactor offensively uses the prior litigations in yet another way: its damages expert Mr. Kennedy applies a ▮▮▮▮▮ rate, which he derives from agreements that EcoFactor entered into with ▮▮▮▮▮ to settle the 1185 and 1258 ITC Investigations. 2022 Kennedy Rpt. (Ex. 1) ¶¶ 459-471, 479-483. Mr. Kennedy provides an incomplete and skewed discussion of those investigations that presents EcoFactor's patents as strong and worthy of a robust royalty. *See id.* ¶ 333 n. 365 and n. 367. Moreover, the DSJ Agreements covered EcoFactor's entire patent portfolio—not just the specific patents at issue here. To overcome this fact, Mr. Kennedy opines that, for *each* patent that EcoFactor *asserts*, EcoFactor can obtain a royalty equal in value to the rate paid for the *entire* portfolio. *Id.* ¶¶ 305-308, 335-338. The lynchpin is whether EcoFactor chooses to litigate the patent.

In any hypothetical negotiation, ecobee would respond that it was differently situated from ▮▮▮▮▮ because—as it proved in the ITC investigations—it did not infringe the patents that drove the value of the DSJ Agreements. Thus, ecobee would neither seek nor require a license to the *entire* EcoFactor portfolio. ecobee would also consider the fact that licensing the three specific patents in issue would not "buy peace" with EcoFactor because it is embroiled in three other district court litigations in which EcoFactor is asserting other patents.

Not only does EcoFactor use prior litigations when it helps its cause (e.g., ecobee willfully infringed based on the ITC investigations; the royalty rate is ▮▮▮▮▮), but it also intends to present evidence of the result in the Google trial in this Court involving related patents. The Courts should reject this hypocritical, sword and shield argument, which courts routinely reject.

Moreover, granting this MIL would prejudice *ecobee*. Absent explanation, the DSJ Agreements imply to the jury that EcoFactor has been a successful litigant and its patents are strong. The jury may even surmise that ecobee was found to infringe, otherwise why would

2

EcoFactor be pursing the instant cases concerning the same claim limitations? ecobee must be allowed permitted to correct these inferences by telling the full story behind those litigations.

Finally, EcoFactor waived this argument when it agreed that the record in this litigation would directly rely upon the extensive discovery taken in the ITC investigations. Having obtained the benefit of its bargain, EcoFactor now wants to restrict ecobee from referencing the investigations from which the evidence derives—and from cross-examining its experts based on their other opinions.[1] This would prejudice ecobee, which otherwise would not have agreed to the cross-use agreements, and violates principles of fairness and judicial economy.

**ecobee's Opposition to MIL No. 2:  To preclude evidence or arguments regarding *inter partes* reviews, *ex parte* reexaminations, or other post-grant proceedings**

The IPRs, *ex parte* re-examinations and post-grant proceedings of EcoFactor's patents are relevant for the same reason that EcoFactor's other litigations are relevant. As discussed in ecobee's opposition to MIL No. 1, they are directly relevant to matters such as induced infringement, contributory infringement, willful infringement and damages. The information concerning IPRs, *ex parte* re-examinations and post-grant proceedings also has particular relevance to damages because, as discussed in MIL No. 1, EcoFactor's licensing rate for any given asserted patent is based on the rate others have (supposedly) agreed to for a license to EcoFactor's entire *portfolio*. However, multiple patents in that portfolio have since been deemed invalid in IPR, *ex parte* and other post-grant proceedings. Consequently, in any hypothetical negotiation, ecobee would not have agreed to the same portfolio-based royalty rate knowing that various patents were invalidated.

---

[1] Additional issues regarding the impact of this MIL on cross-examination of EcoFactor's experts are discussed in ecobee's opposition to EcoFactor's MIL No. 11, infra, which is incorporated by reference.

Moreover, EcoFactor is attempting to hide from the jury that, on December 22, 2022, the PTO issued a final rejection of all claims of the asserted '327 patent. Thus, ***all claims of the '327 Patent stand finally rejected***. *See* Final Rejection (Ex. 2 hereto). Even assuming, *arguendo*, that EcoFactor can somehow overcome this rejection, there is likely to be a change in claim language that impacts a variety of issues including infringement, invalidity and damages—and which gives rise to intervening rights in favor of ecobee. *See* 35 U.S.C. §§ 252, 307(b); *John Bean Tech. Corp. v. Morris & Assoc., Inc.*, 988 F.3d 1334, 1337-38 (Fed. Cir. 2021). There is no justifiable reason to prevent the jury from hearing these facts.

**ecobee's Opposition to MIL No. 3: The parties shall not offer evidence or argument regarding no-longer asserted patents, dropped patent claims, non-asserted infringement theories, no longer asserted non-infringement theories, and no-longer asserted invalidity theories**

As with MIL Nos. 1 and 2 (ecobee's responses to which are incorporated by reference), MIL No. 3 seeks to prevent the jury from learning about EcoFactor's litigation campaign. To the extent MIL No. 3 is distinguishable from the prior two MILs, it seeks to prevent the jury from hearing that EcoFactor has withdrawn various claims from litigation—generally because they were deemed invalid and/or there was a lack of evidence to support a triable infringement theory. As discussed above, EcoFactor has made the parties' prior litigation history relevant and its post-discovery, pretrial withdrawal of claims with similar or identical claim limitations bears directly on ecobee's defenses to EcoFactor's induced, contributory and willful infringement claims. Similarly, the fact that EcoFactor's patent portfolio—i.e., the basis of Mr. Kennedy's supposed ▇▇▇▇▇▇ rate—includes patents that have been deemed invalid and/or that EcoFactor did not deem worthy of pursing to trial against ecobee bears on whether ecobee would agree to pay that rate in a hypothetical negotiation.

4

**ecobee's Opposition to MIL No. 4: To preclude evidence or argument regarding prior art not elected by ecobee for trial, including evidence or argument about how any such non-asserted prior art indicates that a claim element was known in the prior art**

On January 30, 2023, per a stipulation between the parties, ecobee narrowed its invalidity theories under 35 U.S.C. §§ 102 and 103 to two obviousness theories per asserted claim. MIL No. 4 improperly seeks to preclude ecobee from referencing, for any purpose, evidence concerning prior art other than the references that form these specific obvious combinations.

EcoFactor's motion should be denied because it ignores the role that the "state of the art" plays in a proper obviousness analysis. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("the background knowledge possessed by a person having ordinary skill in the art" is a relevant consideration in the obviousness analysis). Thus, courts often allow evidence of non-elected prior art references for background purposes.[2] *See Freeny v. Murphy Oil Corp.*, No. 2:13-cv-791-RSP, 2015 WL 5144347, at *2 (E.D. Tex. June 4, 2015) (denying motion to strike portions of expert report discussing non-elected prior art references after denying motion *in limine* on same grounds); *TransData, Inc. v. Centerpoint Energy Houston Electric LLC*, No. 6:10-cv-557-RWS-JDL, 2016 WL 11677492, at *1 (E.D. Tex. July 1, 2016) (allowing reference to publications outside of final election for background purposes). Here, too, ecobee should be permitted to present evidence of the state of the art and, in connection with that discussion, reference other art as appropriate (with the proviso that ecobee would not argue that any unelected prior art is part of an invalidating obviousness combination).

---

[2] The cases cited by EcoFactor are inapposite as they relate to restricting elected references to those disclosed in invalidity contentions or expert reports—and several expressly permit discussion of the state of the art. *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, No. 2:14-cv-911-JRG-RSP, 2016 WL 4718963, at *2 (E.D. Tex. July 12, 2016) ("However, LG's experts may discuss non-elected prior art when explaining the state of the art.").

**ecobee's Opposition to MIL No. 5:  To preclude fact witnesses from offering expert evidence construing claim language or comparing it to ecobee products, EcoFactor products, or prior art**

MIL No. 5 should be denied because EcoFactor identifies no testimony that warrants exclusion.  *First,* EcoFactor contends that certain deposition designations of Glen Kuo (a former employee of EcoFactor) contain testimony that improperly construes claim language or draws comparisons to patent claims.  Mot. at 6.  That is not so.  Mr. Kuo was asked about his *personal knowledge* regarding the operation of EcoFactor's products.  He was not asked to analyze any patents (much less the patents at issue in this case) or their claims.  In fact, Mr. Kuo testified that

*See* Mot. Ex. B at 171:20-172:7.  Consequently, Mr. Kuo's designated testimony is not expert testimony, as EcoFactor contends.

*Second,* EcoFactor wrongly argues that ecobee is seeking to elicit expert testimony from Dr. David Auslander.  Although Dr. Auslander has served as an expert witness in other EcoFactor cases, here he is a fact witness who has personal knowledge relevant to issues in this case.  As EcoFactor acknowledges, Dr. Auslander had direct and personal "experiences working with the founders of EcoFactor."  Mot. at 7.  For example, in or around 2007-2008, Ph.D. students working under Dr. Auslander's supervision developed the methodologies and algorithms relating to EcoFactor's theories, and he signed a document called "Remote Optimization of HVAC for Efficiency and Demand Response: 2007-2008 Global Field Trials of EcoFactor's Integrated Demand Side Management Solution."  His testimony regarding this work is not expert testimony; it is percipient testimony based on Dr. Auslander's firsthand experiences.  *See, e.g., Britz Fertilizers, Inc. v. Bayer Corp.,* 2009 U.S. Dist. LEXIS 57947, at *10 (E.D. Cal. June 17, 2009)

6

(holding that witnesses could testify as to personal knowledge even though they were designated as experts in prior actions).[3]

*Third,* EcoFactor argues, without explanation, that "ecobee employees" should be prohibited from providing expert testimony. Mot. at 7. On this point, however, EcoFactor provides no basis or analysis to support its motion. EcoFactor presents this MIL only in general and abstract terms; it does not identify any specific testimony to be excluded. To put a finer point on it, EcoFactor does not identify a single instance in which an ecobee employee purportedly sought to construe or analyze the patent claims. Consequently, EcoFactor can only be seeking to prevent ecobee from defending itself by presenting factual evidence concerning the operation of its accused products. Presumably, if an ecobee witness testifies that ecobee products do not, for example, use outdoor temperature measurements (a requirement of the '186 and '327 patents) EcoFactor will contend the witness is providing expert testimony. This is problematic because ecobee employees will testify regarding their knowledge of the design, development, operation and sale of ecobee's products. EcoFactor's overly broad MIL could be construed as preventing ecobee's employees from providing this highly relevant testimony about the functionality of ecobee's products merely because their testimony may use language or discuss terms that are present in the asserted patents. That would severely impede ecobee's ability to present its case at trial, which would be highly prejudicial to ecobee.

### ecobee's Opposition to MIL No. 6: To preclude evidence or argument regarding comparisons of accused products to prior art

EcoFactor's MIL No. 6 misconstrues ecobee's arguments, and the law, in an effort to

---

[3] EcoFactor's motion references instances in which ecobee's deposition designations encompassed attorney questions that refer to Dr. Aulander's prior expert opinions. To avoid any confusion by the jury, ecobee will agree to withdraw its designations at 174:9-20 and 188:13-189:11 of Dr. Auslander's July 24, 2020 deposition transcript.

7

restrict ecobee from presenting standard and necessary evidence to support its defenses. To be clear, ecobee is not arguing that it does not infringe because its accused products practice the prior art. However, ecobee has an obviousness defense for the '890 Patent based upon a combination of references, one of which is an ecobee prior art thermostat. That obviousness analysis is based upon a comparison between the prior art thermostat and the limitations of the asserted claims. There is nothing improper about ecobee's obviousness defense, as an accused defendant is permitted to "argu[e] that if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art." *01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018); *see also Droplets, Inc. v. Yahoo!, Inc.*, No. 12-cv-03733-JST, 2022 WL 2670188, at *1 (N.D. Cal. Feb. 28, 2022) (denying motion in limine to preclude evidence or argument that defendant's products practice the prior art). EcoFactor's motion seeks to unfairly prejudice ecobee by preventing it from presenting its invalidity defense.

Moreover, precluding ecobee from introducing any evidence comparing its accused products to its own prior art thermostats would prevent the jury from hearing relevant information related to other issues. For example, the similarities and differences between the ecobee products and features over the years are relevant to how ecobee's accused products and their relevant features were developed (which, in turn, is relevant to willfulness, secondary indicia of non-obviousness, and general background). This information is also relevant to damages, as it speaks to incremental and apportioned value of the accused features as compared to other features—and how that value has changed over time.

**ecobee's Opposition to MIL No. 7:  To preclude evidence or argument regarding equitable defenses not being decided by the jury**

ecobee agrees that, for purposes of this case, it is the Court and not the jury that should decide the ultimate issues of ecobee's equitable defenses of unclean hands, patent misuse, waiver

and laches. Thus, neither party should present *arguments* to the jury on these specific defenses. If EcoFactor seeks to exclude *evidence*, however, this MIL should be denied because it identifies no evidence that exclusively relates to equitable defenses and, therefore, warrants exclusion.

The only evidence even mentioned in EcoFactor's motion is the "ITC's adverse ruling" in prior matters. But while the ITC's rulings are relevant to ecobee's equitable defenses, they are also relevant to a host of other issues that EcoFactor affirmatively injected into this case. *See* ecobee's oppositions to EcoFactor's MIL Nos. 1, 2 and 3, above. Thus, MIL No. 8 highlights the litigation history's importance to a wide variety of jury and non-jury issues in this litigation.

**ecobee's Opposition to MIL No. 8: To preclude evidence or argument that is derogatory of the USPTO or its examiners, such as that they are mistake-prone or prone to error**

ecobee has no intention of disparaging the USPTO or its examiners. However, MIL No. 8 should be denied because it is overly broad and vague, as it fails to define which specific evidence or arguments would be "derogatory of the USPTO."

ecobee is entitled to argue invalidity, including arguments and evidence that the examiner made a mistake or failed to fully understand the existing prior art. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 4718963, at *2 (E.D. Tex. July 12, 2016) ("[Defendant] may offer evidence and argument that specific mistakes were made in connection with the prosecution of the asserted patents."). Similarly, ecobee has invalidity defenses based on the examiner allowing a patent that was ineligible and/or invalid under 35 U.S.C. §§ 101 and 112. The invalidity defenses inherently require the jury to consider whether the patents should have been issued in the first place and, by extension, whether the USPTO made a mistake in evaluating the patent application. This argument warrants an explanation that such things can and frequently do occur notwithstanding the hard work of the people at the USPTO.

9

The foregoing is particularly true if EcoFactor opens the door by offering argument or evidence about how the USPTO handles patent examination or by referencing the presumption of validity, in which case ecobee should be permitted to counter with argument or evidence regarding the USPTO's examination processes.  *See Applied Materials, Inc., v. Advanced Semiconductors Materials America, Inc.*, No. 92-20643, 1995 WL 261407, at *3 (N.D. Cal. Apr. 25, 1995); *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-04738, 2021 U.S. Dist. LEXIS 5055, at *5-6 (N.D. Cal. Jan. 8, 2021).  EcoFactor should not permitted to wield the inference of validity before the jury while immunizing the jury from hearing evidence about the fact that the USPTO and its examiners sometimes make mistakes and get things wrong.   Permitting EcoFactor to present such a case would prejudice ecobee.

**ecobee's Opposition to MIL No. 9: To preclude evidence or argument that if the jury were to award EcoFactor the damages that it is seeking, this would increase the price of ecobee's products, put ecobee's manufacturers or partners out of business, or lead to lost jobs**

This MIL is unnecessary because ecobee has not proffered testimony that any particular damages award would put ecobee's manufacturers and partners out of business or lead to lost jobs. In any event, ecobee should be permitted to present damages evidence relevant to the *Georgia-Pacific* factors—including the fifteenth factor, which requires consideration of "the amount which a prudent licensee . . . would have been willing to pay as a royalty and yet be able to make a reasonable profit." *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  It is a matter of simple economics that if a licensee must take on additional royalty payments, an increase in product price may be necessary in order to offset increased costs—and that would be considered by ecobee in any hypothetical negotiation.  Moreover, ecobee should be permitted to present testimony about the factors that drive its sales (including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).   ecobee should also be permitted to rebut EcoFactor's damages

10

arguments—including EcoFactor's argument that the royalty rate must account for ecobee supposedly taking sales away from EcoFactor and that EcoFactor (███████████████████) meaningfully competes with ecobee (███████████████).

**ecobee's Opposition to MIL No. 10:   To preclude evidence or argument regarding EcoFactor's attorney fee agreements or payments to EcoFactor's litigation counsel, Russ August & Kabat**

EcoFactor seeks to exclude from the jury the fact that ███████████████████ ███████████████████████████████████████████████████████████████ And, EcoFactor has placed its attorneys' credibility and bias into issue by, in support of its damages case, attempting to rely on settlement emails sent by its litigation attorneys.  This is another situation where EcoFactor seeks to limit evidence to only the uses that benefit it, while relying on generic arguments to exclude the context surrounding that evidence.

EcoFactor argues that ███████████████████████████████████ ███████████████████████. *See* D.I. 124 at 11-12.  EcoFactor supports this contention with parol evidence in the form of emails from settlement discussions between EcoFactor's litigation counsel and counsel for ████████████████.  *See* D.I. 124, Exhibits 8-10.

As explained in *ecobee's* MIL #6, EcoFactor should not be allowed to introduce these communications as evidence.  However, if EcoFactor is allowed to introduce communications from its litigation counsel to support the alleged ████████████, and thereby to present its litigation attorneys as fact witnesses, then the jury must be allowed to evaluate that evidence in its proper context.  This includes evaluating whether EcoFactor's counsel's references to a ████████ in his settlement communications accurately reflect the substance of the settlement discussions

and a fair and reasonable appraisal of the value of the patents.[4]  Or, on the other hand, the jury must consider the extent to which EcoFactor's counsel was biased due in part to his interest in the outcome of this case.  The relevance of EcoFactor's counsel's interest in this litigation outweighs any prejudice to EcoFactor in disclosing that financial interest to the jury—and EcoFactor should not be permitted to have it both ways by presenting its attorneys' communications as evidence while shielding the jury from hearing the circumstances surrounding those communications.

**ecobee's Opposition to MIL No. 11: To preclude evidence or argument regarding how often a party's experts have worked with the party's counsel outside the context of this action**

ecobee should be permitted to present evidence regarding EcoFactor's experts' prior work, opinions and compensation—because it bears directly on their biases and credibility.  Indeed, "the credibility of every witness is always a relevant issue…"  *Weatherford Tech. Holdings, LLC. V. Tesco Corp.*, No. 17-cv-00456-JRG (E.D. Tex. Nov. 14, 2018).  As an initial point, EcoFactor concedes that ecobee can question the experts about their retention by plaintiffs or defendants, and whether they have been retained by the current parties *in the past*.  Mot. at 14.

However, MIL 11 seeks to exclude information concerning the ***compensation*** EcoFactor's experts have received from EcoFactor in connection with other litigations.  Such evidence is relevant to the experts' bias and credibility.  *See* Fed. R. Civ. P. 26(a)(2)(B)(vi); *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980) ("[C]ross-examination to show the bias of a witness or his interest in a case is entirely proper. . . . A pecuniary interest in the outcome of a case may, of course, bias a witness.").  Here, to understand the full scope of EcoFactor's experts' compensation the jury must know the other, inter-related cases for which they are being paid by EcoFactor.  *See*

---

[4] Contrary to EcoFactor's assertions, cross-examining Mr. Habib regarding the ▮▮▮▮▮ is not enough for the jury to understand the full story regarding how the ▮▮▮▮▮ was generated—as he refused to answer such questions at his deposition (due, in part, to privilege objections) and claimed to lack the relevant information.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*id.* ("A showing of a pattern of compensation in past cases raises an inference of the possibility that the witness has slanted his testimony in those cases so he would be hired to testify in future cases."). The jury should know that EcoFactor's experts have a pecuniary interest in EcoFactor's campaign expanding, so they can charge for expert reports and testimony in more cases.

A second category that MIL No. 11 would exclude relates to: (1) the experts' ongoing cases for EcoFactor, including against ecobee, and (2) the experts' opinions in other matters. However, the experts' pattern of opining in favor of infringement—even when similar opinions were rejected by the ITC—bears on their credibility. This is particularly true where, as here, the current and prior opinions are indistinguishable on certain issues. Such evidence should not be excluded.

**ecobee's Opposition to MIL No. 12:** **To preclude references to EcoFactor as "litigations," "troll," "pirate," "profiteer," "extortionist," "shell-company," "engaging in a shakedown," "in the business of filing lawsuits," "stick up," "hold up," or like terms**

While there may have been a time that EcoFactor was attempting to compete in the smart thermostat market, the evidence demonstrates that is no longer the case. EcoFactor now seeks to falsely present itself as an active competitor so as to artificially increase its damages claim and is using this MIL to prevent the jury from hearing the truth.

ecobee has no intention to use the terms "troll," "pirate," "profiteer," "extortionist," "engaging in a shakedown," "stick up" or "hold up." However, ecobee must be permitted to accurately characterize EcoFactor's current business model, which involves filing many lawsuits (i.e., being litigious) and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This is relevant because EcoFactor is putting its business model in issue by depicting itself as a robust competitor of ecobee in order to increase damages. *See, e.g.*, 2022 Kennedy Report at ¶¶ 11-15, 22. For example, Mr. Kennedy opines that, "EcoFactor was a competitor to Ecobee at

13

the time of the Hypothetical Negotiation [i.e., in November 2019], and this Factor [i.e., *Georgia-Pacific* Factor 4] would therefore have an upwards effect on the reasonable royalty rate here." 2021 Kennedy Report (Ex. 3) ¶ 239; 2022 Kennedy Report ¶ 408.  Similarly, Mr. Kennedy opines that EcoFactor's unwillingness to accept increased competition or to forego business opportunities (2021 Kennedy Report ¶ 279) would drive the reasonable royalty upward—and goes so far as to contend that "each sale by made by Ecobee would reduce EcoFactor's own sales," so EcoFactor "would be unwilling to license their patents at a [relatively lower] rate" (2021 Kennedy Report ¶ 282).  ecobee must be permitted to rebut this by presenting evidence that EcoFactor is not a serious competitor; rather, its primary business is seeking royalties for its patent portfolio.

Dated: February 14, 2023                                    Respectfully submitted,

                                                            */s/  Jennifer Parker Ainsworth*
                                                            Jennifer Parker Ainsworth
                                                            Texas State Bar No. 00784720
                                                            WILSON, ROBERTSON & CORNELIUS, P.C.
                                                            909 ESE Loop 323, Suite 400
                                                            Tyler, Texas 75701
                                                            Telephone: (903) 509-5000
                                                            Fax: (903) 509-5092
                                                            jainsworth@wilsonlawfirm.com

                                                            Timothy J. Carroll
                                                            Steven M. Lubezny
                                                            VENABLE LLP
                                                            227 West Monroe Street, Suite 3950
                                                            Chicago, IL 60606
                                                            Telephone: (312) 820-3400
                                                            Fax: (312) 820-3401
                                                            TJCarroll@Venable.com
                                                            SMLubezny@Venable.com

>Manny J. Caixeiro
>VENABLE LLP
>2049 Century Park East, Suite 2300
>Los Angeles, CA 90067
>Telephone: (310) 229-9900
>Fax: (310) 229-9901
>MJCaixeiro@Venable.com
>
>Megan S. Woodworth
>VENABLE LLP
>600 Massachusetts Ave NW
>Washington, DC 20001
>Telephone: (202) 344-4507
>Fax: (202) 344-8300
>MSWoodworth@Venable.com
>
>Daniel A. Apgar
>VENABLE LLP
>1290 Avenue of The Americas
>New York, NY 10104
>Telephone:  (212) 218-2209
>Fax: (212) 218-2100
>DApgar@Venable.com
>
>*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically UNDER SEAL and immediately served via electronic service by e-mail on February 14, 2023, to all counsel of record.

>*/s/ Jennifer P. Ainsworth*
>Jennifer P. Ainsworth