**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**WACO DIVISION**

**FILED**

June 22, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Jennifer Clark_____

DEPUTY

| | |
|---|---|
| ECOFACTOR, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>ECOBEE, INC.,<br><br>                    Defendant. | Case No. 6:20-cv-00078-ADA<br><br>**JURY TRIAL DEMANDED** |
| ECOFACTOR, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>ECOBEE, INC.,<br><br>                    Defendant. | Case No. 6:21-cv-00428-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>**LEAD CASE** |

**FINAL JURY INSTRUCTIONS**

June 24, 2023

1

# <u>JURY INSTRUCTIONS FOR AFTER THE</u>

# <u>CLOSE OF EVIDENCE</u>

**JURY INSTRUCTION NO. 14: JURY CHARGE**

<u>MEMBERS OF THE JURY:</u>

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you is going to have your own printed copy of these final jury instructions that I am giving you now, so there is really no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for EcoFactor or ecobee in arriving at your verdict. After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it. Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result.

Again, your answers and your verdict must be unanimous.

## JURY INSTRUCTION NO. 15: EVIDENCE

The evidence you are to consider consists of the testimony of the witnesses here at trial or at a deposition that has been presented to you, the documents and exhibits that I admitted into evidence, and any facts the lawyers agreed or stipulated to. You are to apply any fair inferences and reasonable conclusions you can draw from the facts and circumstances that you believe have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all the evidence that you hear in this case, whether, direct, circumstantial, or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you received in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

The fact that a company brought a lawsuit and is in court seeking damages creates no inference that the company is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

**JURY INSTRUCTION NO. 16: WITNESSES**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only a less important detail. That being said, it is exclusively in your province to believe every word that any witness says, or to disregard anything they say or do, because you all are the exclusive judges of the facts in this case.

**JURY INSTRUCTION NO. 17: DEPOSITION TESTIMONY**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**JURY INSTRUCTION NO. 18: EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

**JURY INSTRUCTION NO. 19: NO INFERENCE FROM FILING SUIT**

The fact that a company brought a lawsuit and is in court seeking damages creates no inference that the company is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**JURY INSTRUCTION NO. 20: STIPULATIONS OF FACT**

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**JURY INSTRUCTION NO. 21: LIMITING INSTRUCTION**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

## JURY INSTRUCTION NO. 22: CHARTS AND SUMMARIES

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

**JURY INSTRUCTION NO. 23: DEMONSTRATIVE EXHIBITS**

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence. It is a party's description, picture, or model used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

## JURY INSTRUCTION NO. 24: BIAS – CORPORATE PARTY INVOLVED

Do not let bias, prejudice, or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**JURY INSTRUCTION NO. 25: PREPONDERANCE OF THE EVIDENCE**

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."

One type of burden of proof is "preponderance of the evidence." EcoFactor has the burden of proving its case for patent infringement and damages by a preponderance of the evidence. To prove by a preponderance of the evidence means to prove something is more likely true than not true.

**JURY INSTRUCTION NO. 26: SUMMARY OF CONTENTIONS**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, EcoFactor seeks money damages from ecobee for allegedly infringing the Asserted Patents by making, importing, using, selling, and offering for sale products that EcoFactor argues are covered by claims 1, 2, and 8 of the '327 patent and claims 3 and 10 of the '890 patent. These are known as the "Asserted Claims."

The products that are alleged to infringe are smart thermostat systems made, used, offered for sale, or sold by ecobee, including the ecobee Smart Thermostat Premium, ecobee Smart Thermostat Enhanced, ecobee3 lite, ecobee SmartThermostat with Voice Control, ecobee3, and ecobee4. The infringement contentions extend to systems where the products are combined with ecobee servers and ecobee's mobile applications. These may be called the "Accused Products."

ecobee denies that it has infringed the Asserted Claims of the Asserted Patents.

Your job is to decide whether EcoFactor has proved that ecobee has infringed the Asserted Claims of the Asserted Patents. If you decide that any Asserted Claim of the Asserted Patents have been infringed, then you will then need to decide the amount of money damages EcoFactor has proven should be awarded to compensate it for the infringement.

17

## JURY INSTRUCTION NO. 27: PATENT CLAIMS

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth—in words—a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim. The first step is to understand the meaning of the words used in the patent claim.

**JURY INSTRUCTION NO. 28: INDEPENDENT AND DEPENDENT CLAIMS**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, the following claims are independent claims:

- Asserted Claim 1 of the '327 Patent is an independent claim; and
- Claim 1 of the '890 Patent is an independent claim.

Asserted Claims 3 and 10 of the '890 Patent and Asserted Claims 2 and 8 of the '327 Patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

If any requirement of a dependent claim is not met, or if any requirement of the independent claim from which the dependent claim depends is not met, then the product is not covered by that dependent claim.

**JURY INSTRUCTION NO. 29: COMPRISING CLAIMS**

The preambles to each of the asserted claims of the EcoFactor Patent's use the word "comprising," for example in the phrases "A thermostat system comprising," or "A system for controlling the operational status of an HVAC system comprising." The word "comprising" means "including the following but not excluding others." A claim that includes the word "comprising" or "comprises" is not limited to products having only the elements recited in the claim, but also covers products that add additional elements.

For example, a claim wherein "a table comprises a tabletop, legs, and glue" would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

If you find that ecobee's products include all of the elements in a claim, even if ecobee's products include additional components or steps, you must find that ecobee's products infringe the claim.

But if a product is missing even one limitation or element of a patent claim, then that product is not covered by the claim and does not infringe. For example, a claim wherein "a table comprises a tabletop, legs, and glue" would not cover a table that includes a tabletop and legs, but no glue.

**JURY INSTRUCTION NO. 30: CLAIM INTERPRETATION**

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issue of infringement. You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions and definitions that I have given you.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement. These issues are yours to decide.

My claim constructions are as follows:

| Claim Term | Construction |
|---|---|
| "compare(s)" ('327 Patent, claim 1) | "analyze to determine one or more similarities or differences between" |
| "rate of change in inside temperature" ('327 Patent, claim 1) | "the difference between inside temperature measurements divided by the span of time between the measurements" |
| "temperature measurements from inside the structure"; "measurement of outside temperatures" ('327 Patent, claim 1) | Plain and ordinary meaning. |
| "outside temperature" ('890 Patent, claim 1) | Plain and ordinary meaning. |

| | |
|---|---|
| "setpoint" ('890 Patent, claim 1) | "A temperature setting for a thermostat to achieve or maintain" |
| "protect the compressor from rapid cycling" ('890 Patent, claim 1) | Plain and ordinary meaning. |

**JURY INSTRUCTION NO. 31: INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not EcoFactor has proven that ecobee has infringed the Asserted Claims of the Asserted Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

A patent owner has the right to prevent others from using the invention covered by his or her patent claims in the United States during the life of the patent. If any person makes, uses, sells or offers to sell within the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In this case, EcoFactor has alleged that ecobee directly infringes the Asserted Claims of the '327 and '890 patents. In order to prove infringement, EcoFactor must prove that the requirements for infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of infringement have been proved.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the accused system or process, and determine whether or not there is infringement. You should not compare the accused system or process with any specific example set out in the patent or with the prior art in reaching your decision on the issue of infringement. The only correct comparison is with the language of a claim itself, as I have explained its meaning to you. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

I will now explain infringement in more detail.

**JURY INSTRUCTION NO. 32: DIRECT INFRINGEMENT**

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In order to prove direct infringement, by literal infringement, EcoFactor must prove by a preponderance of the evidence, i.e., that it is more likely than not, that ecobee, made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim during the times the '327 and '890 patents were in force—and that ecobee did so without EcoFactor's permission. You must compare each Accused Product with each and every one of the requirements of each Asserted Claim of each Asserted Patent to determine whether all of the requirements of that claim are met. A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement. Even if the party independently creates the accused product or method, it can still infringe.

You must determine, separately for each Asserted Claim of each Asserted Patent, whether or not EcoFactor has proven infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

**JURY INSTRUCTION NO. 33: INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

If a company makes, uses, sells, offers to sell within, or imports into the United States a product that does not literally meet all of the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies the claim elements "under the doctrine of equivalents."

Under the doctrine of equivalents, an Accused Product infringes an Asserted Claim of an Asserted Patent if the Accused Product contains elements that literally meet or are equivalent to each and every element of the Asserted Claim. You may only find that an element or step is equivalent to an element of an Asserted Claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure or action: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. In order to prove infringement by "equivalents," EcoFactor must prove the equivalency of the structure or action to the asserted claim element by a preponderance of the evidence. Thus, each element of the Asserted Claim must be met by the Accused Product either literally or under the doctrine of equivalents for you to find infringement. EcoFactor alleges the doctrine of equivalents may apply to only the following claim elements of the Asserted Patents: 1[b], 1[c], and claim 2 of the '327 patent; 1[d], 1[k], 1[l] of the '890 patent. EcoFactor does not contend that the doctrine of equivalents applies to any other claim of any other Asserted Patent.

**JURY INSTRUCTION NO. 34: PERSON OF ORDINARY SKILL IN THE ART**

In deciding what the level of ordinary skill in the field of the invention is, you should consider all the evidence introduced at trial, including but not limited to:

(1) the levels of education and experience of the inventor and other persons actively working in the field;

(2) the types of problems encountered in the field;

(3) prior art solutions to those problems;

(4) the rapidity with which innovations are made; and

(5) the sophistication of the technology.

**JURY INSTRUCTION NO. 35: DAMAGES—INTRODUCTION**

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that ecobee infringed any Asserted Claim of the Asserted Patents, you must then consider what amount of damages to award to EcoFactor for the infringement of that Asserted Claim. If you find that EcoFactor has not proven that ecobee has infringed any claim of any patent, then EcoFactor is not entitled to any damages.

The damages you award must be adequate to compensate EcoFactor for the infringement you find. Damages are not meant to punish an infringer. Your damages award, if you reach this issue, should put EcoFactor in approximately the same financial position that it would have been in had the infringement not occurred.

EcoFactor has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that EcoFactor has established that it more likely than not has suffered. While EcoFactor is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, EcoFactor seeks a reasonable royalty. A reasonable royalty is defined as the money amount EcoFactor and ecobee would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. You must be careful to ensure that award is no more and no less than the value of the patented invention.

27

I will give more detailed instructions regarding damages shortly. Note, however, that EcoFactor is entitled to recover no less than a reasonable royalty for each act of infringement.

## JURY INSTRUCTION NO. 36: REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time just prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

**JURY INSTRUCTION NO. 37: REASONABLE ROYALTY—RELEVANT FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The value that the claimed invention contributes to the accused product.

(2)     The value that factors other than the claimed invention contribute to the accused product.

(3)     Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The so-called "*Georgia-Pacific*" factors, which can be considered to inform the hypothetical negotiations, include the following:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in- suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of

the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)   The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)   The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)   The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)   The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)   The opinion and testimony of qualified experts.

(15)   The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

**JURY INSTRUCTION NO. 38: DAMAGES – COMPARABLE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

## JURY INSTRUCTION NO. 39: DAMAGES – LUMP SUM VS. RUNNING ROYALTY

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Reasonable royalty awards can take the form of a running royalty or a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

Reasonable royalty awards may also take the form of a running royalty based on the volume of sales of licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.

**JURY INSTRUCTION NO. 40: DAMAGES - APPORTIONMENT**

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as ecobee's marketing, advertising, brand strength or market position. A royalty compensating EcoFactor for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features and aspects of the product is called apportionment.

Apportionment can be addressed in a variety of ways, including by careful selection of the royalty to reflect the value added by the patented feature or by adjustment of the royalty so as to discount for the product's non-patented features; or by a combination thereof. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

## JURY INSTRUCTION NO. 41: DAMAGES – DATE OF COMMENCEMENT OF DAMAGES

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that ecobee has both infringed and been notified of the alleged infringement of the '327 and '890 patents.

## JURY INSTRUCTION NO. 42: DUTY TO DELIBERATE

You are about to hear closing arguments of the parties, after which it will be your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

**JURY INSTRUCTION NO. 43: SOCIAL MEDIA INSTRUCTION**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog social media platform or website such as Facebook, LinkedIn, YouTube, Snapchat, WhatsApp, Instagram, Twitter or any other way to communicate. You may not communicate to anyone any information about this case or to conduct any research about this case until this case is over and I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.